ELDON S. EDSON (SBN 168896)
JAN L. POCATERRA (SBN 134247)
SELMAN BREITMAN LLP
11766 Wilshire Blvd., Sixth Floor
Los Angeles, CA 90025-6538
Telephone: 310.445.0800
Facsimile: 310.473.2525



FILED
CLERK, U.S. DISTRICT COURT

JAN 2 2 2014

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

Attorneys for Plaintiff
NATIONWIDE MUTUAL INSURANCE COMPANY

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

CV14-00522-GW(AGRx)

| NATIONWIDE MUTUAL INSURANCE COMPANY, | Case No: |
| Plaintiff, | COMPLAINT FOR DECLARATORY RELIEF; REIMBURSEMENT ; AND RESCISSION BY NATIONWIDE MUTUAL INSURANCE COMPANY |
| v. | |
| SHERVIN ILBEIG DBA DRAGON'S MARTIAL ARTS STUDIO, INC.; DRAGON'S MARTIAL ARTS STUDIO, INC.; SHERVIN ILBEIG; JASON COHEN, and DOES 1 through 10, inclusive, | |
| Defendants. | |

Plaintiff NATIONWIDE MUTUAL INSURANCE COMPANY alleges as follows:

### THE PARTIES

1.     At all times mentioned herein, plaintiff NATIONWIDE MUTUAL INSURANCE COMPANY (hereinafter "NATIONWIDE") is, and was, an insurance company organized under the laws of the State of Ohio, with its principal place of business in Columbus, Ohio. It is a citizen of Ohio, but is authorized to transact business and has transacted business in the State of California.

1

COMPLAINT FOR DECLARATORY RELIEF, RESCISSION AND REIMBURSEMENT

Selman Breitman LLP
ATTORNEYS AT LAW

588845.1 1080.35388

Selman Breitman LLP
ATTORNEYS AT LAW

2.      At all times mentioned herein, NATIONWIDE is informed and believes and thereon alleges that Defendant SHERVIN ILBEIG DBA DRAGON'S MARTIAL ARTS STUDIO, INC. is an individual doing business as an incorporated entity under the laws of the State of California having his principal place of business in Woodland Hills, California.  SHERVIN ILBEIG, DBA DRAGON'S MARTIAL ARTS STUDIO, INC. is a citizen of California, and NATIONWIDE is informed and believes that he is authorized to transact business and has transacted business in the State of California.

3.      At all times mentioned herein, NATIONWIDE is informed and believes and thereon alleges that Defendant DRAGON'S MARTIAL ARTS STUDIO, INC. is doing business as an incorporated entity under the laws of the State of California having its principal place of business in Woodland Hills, California.   DRAGON'S MARTIAL ARTS STUDIO, INC. is a citizen of California, and NATIONWIDE is informed and believes that it is authorized to transact business and has transacted business in the State of California.

4.      At all times mentioned herein, NATIONWIDE is informed and believes and thereon alleges that Defendant SHERVIN ILBEIG is an individual operating either as an individual on his own, or in some other fashion, and is a citizen of the State of California, under the laws of the State of California.  SHERVIN ILBEIG has his principal place of business as DRAGON'S MARTIAL ARTS STUDIO, INC. in Woodland Hills, California.  Defendants SHERVIN ILBEIG DBA DRAGON'S MARTIAL ARTS STUDIO, DRAGON'S MARTIAL ARTS STUDIO,INC., and SHERVIN ILBEIG  will hereinafter be referred to as "DRAGON'S/ILBEIG".

5.      At all times mentioned herein, NATIONWIDE is informed and believes and thereon alleges that Defendant JASON COHEN (hereinafter "COHEN") is a citizen of the State of California.

6.      The true names and capacities of Does 1 through 50, inclusive, whether individual, corporate, associate, partner, or otherwise, are unknown to plaintiff NATIONWIDE, who therefore sues said defendants by said fictitious names pursuant to

2

588845.1 1080.35368

1    the provisions of Plaintiff NATIONWIDE is informed and believes and thereon alleges

2    that DOES 1 through 50 are third parties who also may have certain insurance obligations

3    in concert with Plaintiff NATIONWIDE.  Plaintiff NATIONWIDE will pray leave of

4    Court to amend this Complaint and subsequent pleadings to assert the true names or

5    capacities of said fictitiously named Defendants when the same become known to

6    Plaintiff.

7         7.    Each Defendant herein was the agent of one or more of the other

8    Defendants herein, and the acts complained of were committed within the scope of such

9    agency, so that each Defendant is jointly and severally responsible for the acts

10   complained of herein.

11                              **JURISDICTION**

12        8.    This is an action for declaratory relief pursuant to 28 U.S.C. § 2201 and for

13   rescission under California Insurance Code § 359.  This Court has jurisdiction over this

14   action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship

15   between NATIONWIDE and Defendants DRAGON'S/ILBEIG and COHEN.  Further,

16   there is more than $75,000 in controversy in this action.

17                        **VENUE AND APPLICABLE LAW**

18        9.    Venue is proper in the United States District Court for the Central District

19   of California pursuant to 28 U.S.C. § 1391(a)(c).  Plaintiff NATIONWIDE sold and

20   issued an Insurance Certificate to the insured, SHERVIN ILBEIG dba DRAGON'S

21   MARTIAL ARTS STUDIO, INC. in this District.  DRAGON'S/ILBEIG has its

22   headquarters in this District and COHEN is a resident of this District.  Also, there is an

23   underlying lawsuit in this District brought by defendant COHEN against

24   DRAGON'S/ILBEIG entitled *Cohen v. DRAGON'S Marital Arts Studio, Inc.*, Los

25   Angeles County Superior Court, Case No. BC505985 (sometimes referred to as the

26   "COHEN Action").  Further, this District is the place of performance under the

27   NATIONWIDE Insurance Certificate issued to DRAGON'S/ILBEIG; thus, California

28   law governs the insurance coverage obligations, if any.

Selman Breitman LLP
ATTORNEYS AT LAW

3

588845.1 1080.35368

10.     NATIONWIDE is informed and believes and thereon alleges that an actual controversy has arisen and now exists between Plaintiff NATIONWIDE, on the one hand, and Defendant DRAGON'S/ILBEIG, on the other hand, with respect to whether Plaintiff NATIONWIDE has any coverage obligations under the DRAGON'S/ILBEIG Insurance Certificate to defend and/or indemnify DRAGON'S/ILBEIG in the COHEN Action.   On information and belief, Plaintiff NATIONWIDE thereon asserts that DRAGON'S/ILBEIG disputes that there is any bar to the coverage obligations of NATIONWIDE.  The construction of the NATIONWIDE Master Policy, the related Insurance Certificate, and the controversy existing between NATIONWIDE and DRAGON'S/ILBEIG may be determined by this Court's judgment under California law.

11.     By way of being a claimant against DRAGON'S/ILBEIG, Defendant COHEN has an interest in the ultimate determination of whether NATIONWIDE has or does not have any coverage obligations to indemnify DRAGON'S/ILBEIG under the insurance it issued to DRAGON'S/ILBEIG.

## APPLICATION FOR THE RENEWAL INSURANCE CERTIFICATE

12.     On or about November 18, 2011, K & K Insurance, a Managing General Underwriter ("MGU"), for NATIONWIDE as to the Sports, Leisure and Entertainment Risk Purchasing Group ("NATIONWIDE Master Policy"), received application materials requesting a renewal of DRAGON'S/ILBEIG'S  Insurance Certificate under the NATIONWIDE Master Policy, to be effective from November 19, 2011 to November 19, 2012.  The materials included an Application Enrollment Form for Martial Arts Schools & Programs with specific information provided for DRAGON'S/ILBEIG.  A true and correct copy of the Application Enrollment Form relating to the November 19, 2011 to November 19, 2012 NATIONWIDE Master Policy is attached hereto as Exhibit "1" and incorporated by reference as though fully set forth at length.

13.     DRAGON'S/ILBEIG provided its business address as 6100 Topanga Canyon Blvd., #2315 in Woodland Hills, California.  The DRAGON'S/ILBEIG contact

/ / /

Selman Breitman LLP
ATTORNEYS AT LAW

588845.1 1080.35368

1     name provided was Defendant SHERVIN ILBEIG with an indication that the martial arts

2     instruction offered by DRAGON'S/ILBEIG was karate.

3          14.     The Application Enrollment Form was completed and executed on behalf

4     of DRAGON'S/ILBEIG by DRAGON'S/ILBEIG'S insurance agent, Barry S. Cohen of

5     Delcourt Insurance Services. Mr. Cohen averred that he was a California licensed

6     insurance agent and provided his agency addressing information on the Application

7     Enrollment Form as Delcourt Insurance, 7625 Woodlake Avenue, West Hills, California,

8     91304.

9          15.     On page 7 of 14 of the Application Enrollment Form was the following

10     question:

11          1.     Do you have any activities that occur away from the

12     facility/premises other than competitions, demonstrations, parades or

13     fundraising activities?

14     If yes, please describe:_____(Activities held off-site

15     must be reported prior to occurring and approved by us except for

16     competitions, demonstrations, parades and fundraising activities.)

17          This question for DRAGON'S/ILBEIG, was answered "no."

18          16.     Also on page 7 of 14 of the Application Enrollment Form was the

19     following question:

20          Do you have camps/clinics?

21          This question for DRAGON'S/ILBEIG, was answered "no."

22          17.     The final page of the Application Enrollment Form, page 14 of 14, is titled

23     "Warranty and Disclosure Statement." This Application Enrollment Form states:

24          I understand that the insurance company, in

25     determining whether to provide insurance coverage, will rely

26     on the information contained in this form and all other

27     information being submitted. I hereby warrant, represent and

28     ///

COMPLAINT FOR DECLARATORY RELIEF, RESCISSION AND REIMBURSEMENT

588845.1 1080.35368

Selman Breitman LLP
ATTORNEYS AT LAW

confirm that, to the best of my knowledge, all information provided is complete, true and accurate.

\*        \*        \*

I am aware that the insurance company expects accurate reporting for my premium calculation. I understand that my books and records may be examined or audited by the insurance company at any time during the coverage period and up to three years thereafter. Intentional misrepresentation or misreporting may jeopardize coverage.

I further acknowledge that I have reviewed all information provided with this enrollment form and understand the exclusions which apply, as well as the activities and operations for which coverage is not provided.

Applicant or agent signature: Barry S. Cohen   Date: 11/18/11

Printed name:  Barry S. Cohen       Title: Broker/owner

If an agent: Check here to acknowledge you are signing on behalf of the named insured.                X

Named Insured (from page 6):  Shervin Ilbeig

18.    The "Warranty and Disclosure Statement" was dated and executed by DRAGON'S/ILBEIG'S insurance agent, Barry S. Cohen of Delcourt Insurance Services, on behalf of SHERVIN ILBEIG dba DRAGON'S MARTIAL ARTS STUDIO, INC.[1] (Exhibit 1, pg. 36).

## THE NATIONWIDE INSURANCE POLICY

19.    In reliance on the information provided in the Application Enrollment Form and on the "Warranty and Disclosure Statement," Plaintiff NATIONWIDE, through its

---

[1] A policyholder is responsible for misrepresentations, even if his broker prepared the application. *LA Sound USA, Inc. v. St. Paul Fire & Marine Ins. Co.*, (2007) 156 Cal.App.4th 1259, 1267.

COMPLAINT FOR DECLARATORY RELIEF, RESCISSION AND REIMBURSEMENT

588845.1  1080.35368

Selman Breitman LLP
ATTORNEYS AT LAW

MGU, K&K Insurance, calculated the premium and issued an Insurance Certificate under the NATIONWIDE Sports, Leisure and Entertainment Risk Purchasing Group Master Policy,  Number 6BMAS0000005070100, ("NATIONWIDE Master Policy"), to named insured SHERVIN ILBEIG dba DRAGON'S MARTIAL ARTS STUDIO INC., with effective dates November 19, 2011 to November 19, 2012.  A true and correct copy of the certified NATIONWIDE Master Policy, with the Insurance Certificate, is attached hereto as Exhibit "2" to the Complaint and incorporated by reference as though fully set forth at length.  (Exhibit 2, pg. 39).

      20.     The NATIONWIDE Master Policy includes the following insuring agreement in its Commercial General Liability Coverage Form ("CGL") which provides, in relevant part:

**SECTION I – COVERAGES**

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.    Insuring Agreement**

        a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

            *     *     *

        (2)    Our right and duty to defend end when we have used up the applicable Limit of Insurance in the payment of

COMPLAINT FOR DECLARATORY RELIEF, RESCISSION AND REIMBURSEMENT

Selman Breitman LLP
ATTORNEYS AT LAW

588845.1 1080.35368

1                   judgments or settlements under Coverage A or B or

2                   medical expenses under Coverage C.

3           No other obligation or liability to pay sums or perform acts or

4           services is covered unless explicitly provided for under

5           Supplementary Payments - COVERAGES A AND B.

6     b.     This insurance applies to "bodily injury" and "property

7           damage" only if:

8         (1)     The "bodily injury" or "property damage" is caused by

9                an "occurrence" that takes place in the "coverage

10               territory";

11         (2)     The "bodily injury" or "property damage" occurs

12                during the policy period; …

13     21.     The NATIONWIDE Master Policy's Coverage A contains relevant

14 definitions as set out below:

15     **SECTION V - DEFINITIONS**

16     "Bodily injury" means bodily injury, sickness or disease sustained by a

17 person, including death resulting from these at any time.

18                 *         *         *

19     "Occurrence" means an accident, including continuous or repeated

20 exposure to substantially the same general harmful conditions.

21     22.     The definition of "bodily injury" was modified in the Master Policy by the

22 Commercial General Liability Broadening Endorsement to include as follows:

23     "Bodily injury" means bodily injury, sickness or disease sustained by a

24     person. This includes mental anguish, mental injury, shock, fright,

25     humiliation, emotional distress or death resulting from bodily injury,

26     sickness or disease. (Exhibit 2, pg. 73).

27     23.     The NATIONWIDE Master Policy also contains an endorsement entitled

28 **LEGAL LIABILITY TO PARTICIPANTS,** Coverage D, which modifies the CGL

8

588845.1  1080.35368

Coverage Form set out above. (Exhibit 2, pgs. 85-86). In particular, Coverage D. adds an exclusion to the CGL Coverage A. for "bodily injury" to "participants." Also, it contains an insuring agreement which does cover "bodily injury" to "participants" under the terms, conditions and definitions. Coverage D. states in pertinent part:

**LEGAL LIABILITY TO PARTICIPANTS**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

A.    Additional Exclusions.

    1.    SECTION I – COVERAGES,  COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions,  The following is added:

    q.    Participants

    "Bodily injury" to a "participant"

B.    SECTION 1 – COVERAGES,  The following is added:

COVERAGE D – LIABILITY TO "PARTICIPANTS"

    1.    Insuring Agreement.

        a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" to any "participant."  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

        *    *    *

///

COMPLAINT FOR DECLARATORY RELIEF, RESCISSION AND REIMBURSEMENT

Selman Breitman LLP
ATTORNEYS AT LAW

588845.1  1080.35368

D.      SECTION V – DEFINITIONS, the following is added:

a.      "Participant" means

a person practicing, instructing, or participating in any physical exercises or games …. (Exhibit 2, pg. 86).

24.     Additionally, the NATIONWIDE Master Policy includes another endorsement to the CGL Form containing the following insuring agreement with terms, conditions and definitions in its Professional Liability Coverage Form, Coverage G.:

**PROFESSIONAL LIABILITY COVERAGE**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

**A.      Insurance does not apply to Professional Liability under the COMMERCIAL GENERAL LIABILITY COVERAGE PART except as provided in Coverage G.**

**B.**      The following is added to **SECTION I – COVERAGES**

**COVERAGE G – PROFESSIONAL LIABILITY**

**1.      INSURING AGREEMENT**

a.      We will pay those sums that the insured becomes legally obligated to pay as damages because of a "wrongful act" to which the insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "wrongful acts" to which this insurance does not apply.  We may, at our discretion, investigate any "wrongful act" and settle any claim or "suit" that may result.  But:

10

Selman Breitman LLP
ATTORNEYS AT LAW

588845.1  1080.35368

(1)     The amount we will pay for damages is limited as described in Section III – Limits of Insurance; and

(2)     Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage G.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

\*       \*       \*

For purposes of this endorsement, the following are added to **SECTION IV – DEFINITIONS:**

1.     Wrongful act" means any negligent act, negligent error, negligent omission, or negligent breach of duty in the discharge of covered activities or operations of the named insured.  Any negligent act, negligent error, negligent omission, or negligent breach of duty arising out of the same or related facts, circumstances, situations, transactions or events shall be deemed as arising out of the same "wrongful act." (Exhibit 2, pg. 93).

25.     The NATIONWIDE Master Policy also contains a **LIMITATION OF COVERAGE TO DESIGNATED PREMISES, ACTIVITIES OR OPERATIONS ENDORSEMENT** modifying the CGL Coverage Form (Coverage A.), the Legal

/ / /

11

COMPLAINT FOR DECLARATORY RELIEF, RESCISSION AND REIMBURSEMENT

Selman Breitman LLP
ATTORNEYS AT LAW

588845.1 1080.35368

1   Liability to Participants Coverage Form (Coverage D), and the Professional Liability

2   Form (Coverage G.) (Exhibit 2, pg. 88).  It states in pertinent part:

3   **THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ**

4   **IT CAREFULLY.**

5   **LIMITATION OF COVERAGE TO DESIGNATED PREMISES,**

6   **ACTIVITIES OR OPERATIONS**

7   This endorsement modifies insurance provided under the following:

8   **ALL LIABILITY COVERAGES**

9   This insurance applies only to:

10   **1.**      The ownership, maintenance or use of the premises shown in

11           the Schedule and operations necessary or incidental to those

12           premises; or

13   **2.**      The activities or operations shown in the Schedule.

14                       SCHEDULE

15   Premises:

16   Activities or Operations:

17   For those schools, organizations and programs reported to the company,

18   covered operations consists of premises, operations and activities involving

19   registered participants of those activity(s) under your direct supervision or

20   organized by you, which have been reported, paid for and approved by the

21   company along with any ancillary event or activity held directly with the

22   activity(s) at your location(s) or at approved off-site locations on your

23   behalf.

24   In addition, coverage can also be considered for birthday party(s)

25   supervised by you and related to the above described operations and

26   activities.

27   ///

28   ///

**Selman Breitman** LLP
ATTORNEYS AT LAW

12

588845.1  1080.35368

Non-rostered participants participating in hosted tournaments by the insured are included, if reported, approved and the appropriate premium has been paid prior to the event. (Exhibit 2, pg. 88).

### ACTIVITIES AT THE THIRD ANNUAL DRAGON'S/ILBEIG RETREAT

26.     On or about October 19, 2012 through October 21, 2012, DRAGON'S/ILBEIG hosted its Third Annual Retreat in Big Bear, California (the "Third Annual Big Bear Retreat"). DRAGON'S/ILBEIG had a Training Schedule for the Third Annual Big Bear Retreat. On information and belief, NATIONWIDE asserts that the document known to be the Training Schedule is attached hereto as Exhibit 3. One of the training sessions at the Third Annual Big Bear Retreat hosted by DRAGON'S/ILBEIG, included an exercise in disarming an assailant who possessed a firearm. It was during this weapon disarmament exercise that Underlying Plaintiff Jason COHEN was injured as more fully described in Paragraphs 26 and 31 below.

27.     Underlying Plaintiff Jason COHEN, acting as an instructor, was threatening to "attack" a student with a BB gun, which, unbeknownst to both instructor and student, proved to be loaded with a BB. During this weapon disarmament exercise, the BB gun discharged sending a BB into the right eye of Underlying Plaintiff Jason COHEN. This incident formed the basis on which Defendant COHEN filed his underlying complaint as noted in Paragraphs 30-32 below.

28.     At no time before the October 19-21, 2012 incident at the Third Annual Big Bear Retreat did DRAGON'S/ILBEIG or any one else from DRAGON'S/ILBEIG, or on behalf of DRAGON'S/ILBEIG, as required by the both the Application Enrollment Form and the **LIMITATION OF COVERAGE TO DESIGNATED PREMISES, ACTIVITIES OR OPERATIONS ENDORSEMENT,** provide information or report to NATIONWIDE, or its agent and MGU, K&K Insurance, regarding the activities, or ancillary event, to be hosted and conducted by DRAGON'S/ILBEIG at its Third Annual Big Bear Retreat in Big Bear, California on October 19-21, 2012.

///

COMPLAINT FOR DECLARATORY RELIEF, RESCISSION AND REIMBURSEMENT

588845.1 1080.35368

29.    At no time before the October 19-21, 2012 incident at the Third Annual Big Bear Retreat did DRAGON'S/ILBEIG. or any one else from DRAGON'S/ILBEIG, or on behalf of DRAGON'S/ILBEIG, seek approval for the location of the activities, or ancillary event, hosted and conducted by DRAGON'S/ILBEIG at the Third Annual Big Bear Retreat from NATIONWIDE, or from its third party agent and MGU, K&K Insurance.

30.    To be a covered operation or activity, the Third Annual Big Bear Retreat must have been disclosed and reported to NATIONWIDE, in the Application Enrollment Form completed and executed on behalf of DRAGON'S/ILBEIG by DRAGON'S/ILBEIG'S insurance agent.  (Exhibit 1, pg. 29).  If not disclosed on the Application Enrollment Form,  the Third Annual Big Bear Retreat  must have been subject to prior approval, as required by the **LIMITATION OF COVERAGE TO DESIGNATED PREMISES, ACTIVITIES OR OPERATIONS ENDORSEMENT** to the NATIONWIDE Master Policy. (Exhibit 2, pg. 88).  Neither DRAGON'S/ ILBEIG, nor its insurance agent, followed the required disclosure under the Application Enrollment Form, or made the required disclosure to NATIONWIDE under the **LIMITATION OF COVERAGE TO DESIGNATED PREMISES, ACTIVITIES OR OPERATIONS ENDORSEMENT.**

**THE UNDERLYING COHEN ACTION**

31.    On or about April 16, 2013, Underlying Plaintiff Jason COHEN filed a Complaint for Damages against DRAGON'S/ILBEIG in the California Superior Court, County of Los Angeles, identified as Case Number BC505985 (the "COHEN Complaint").  A true and correct copy of the COHEN Complaint is attached hereto as Exhibit "4" to this Complaint and incorporated by reference as though fully set forth at length. By incorporating the COHEN Complaint, Plaintiff NATIONWIDE does not admit the truth of the allegations contained therein, but rather incorporates the pleading as necessary for a defense and indemnity determination under the NATIONWIDE Policy.

/ / /

14

COMPLAINT FOR DECLARATORY RELIEF, RESCISSION AND REIMBURSEMENT

Selman Breitman LLP
ATTORNEYS AT LAW

588845.1  1080.35368

32.     In the COHEN Complaint, Underlying Plaintiff COHEN asserted the following relevant causes of action and allegations:

> On the weekend of October 19, 2012, Defendants ... conducted a marital arts training program in Big Bear, California.  As a part of the training exercises, Defendants conducted simulated weapons-related training. ... At all relevant times, Defendants supervised and controlled the subject BB pistol which caused injury to Plaintiff.... As a result of Defendants' negligence, Plaintiff was shot in the eye. ...   Plaintiff suffered severe injuries and damages. (Exhibit 4, pg. 128).

33.     Underlying Plaintiff Jason COHEN seeks wage loss, hospital and medical expenses, general damages and loss of earning capacity in the underlying COHEN Complaint.

## TENDER OF THE COHEN COMPLAINT

34.     After service of the April 16, 2013 COHEN Complaint, DRAGON'S/ILBEIG tendered its defense of and indemnity for the COHEN Complaint to Plaintiff NATIONWIDE.  Plaintiff NATIONWIDE agreed to defend DRAGON'S/ILBEIG subject to a complete reservation of rights forwarded to DRAGON'S/ILBEIG via correspondence by K&K Insurance dated May 31, 2013, including a reservation of the right to file a declaratory relief action.  A true and correct copy of the May 31, 2013, reservation of rights letter ("Reservation Letter") is attached hereto as Exhibit 5.

35.     The May 31, 2013 Reservation Letter reserved rights on exclusions in Coverage A and discussed the coverage form "Legal Liability to Participants" under Coverage D.  (Exhibit 5, pg. 131).

36.     In addition, the Reservation Letter set out the **"LIMITATION OF COVERAGE TO DESIGNATED PREMISES, ACTIVITIES OR OPERATIONS ENDORSEMENT,"** and specifically reserved the right to deny coverage on the basis of this exclusion. (Exhibit 5, pgs. 131-132),

///

15

588845.1  1080.35368

Selman Breitman LLP
ATTORNEYS AT LAW

37.     After the initial May 31, 2013 Reservation Letter, a supplemental reservation of rights letter was sent to personal counsel for DRAGON'S/ILBEIG, Edward C. Stark, Esq. of Cron, Israels & Stark, by Selman Breitman LLP on December 2, 2013. ("Supplemental Reservation Letter). A true and correct copy of the December 2, 2013, letter is attached hereto as Exhibit 6. (Letter is without exhibits).

## FIRST CAUSE OF ACTION FOR DECLARATORY RELIEF

### (Against Defendants SHERVIN ILBEIG DBA DRAGON'S MARTIAL ARTS STUDIO, INC.; DRAGON'S MARTIAL ARTS STUDIO, INC.; SHERVIN ILBEIG As Respects NATIONWIDE'S Coverage Obligations For The Cohen Action)

38.     Plaintiff NATIONWIDE refers to paragraphs 1 through 37 of this Complaint and incorporates the allegations set forth therein in full in this cause of action.

39.     Plaintiff NATIONWIDE contends that there is no potential of coverage for the COHEN Action under any liability coverage in the NATIONWIDE Master Policy. The liability coverages include Coverage A, Coverage D., and Coverage G, all of which have a coverage bar as related to the Insurance Certificate issued to DRAGON'S/ILBEIG. Thus, there has never been a duty to defend or a duty to indemnify DRAGON'S/ILBEIG as to the underlying COHEN Action filed against DRAGON'S/ILBEIG.

40.     Plaintiff NATIONWIDE  asserts that the Endorsement entitled **LIMITATION OF COVERAGE TO DESIGNATED PREMISES, ACTIVITIES OR OPERATIONS** applies to all liability coverages and bars all insurance for damages under Coverage A., Coverage D., and Coverage G. which arise out of any activities at DRAGON'S/ILBEIG Third Annual Big Bear Retreat, held in Big Bear, California on October 19-21, 2012.   On information and belief, Plaintiff NATIONWIDE thereon asserts that DRAGON'S/ILBEIG  disputes that there is any bar to the coverage obligations of NATIONWIDE

41.     This Court is vested with the power in the instant case, and Plaintiff NATIONWIDE hereby respectfully requests a judicial determination and declaratory judgment as to the insurance obligations under the DRAGON'S/ILBEIG Insurance

16

588845.1  1080.35368

Selman Breitman LLP
ATTORNEYS AT LAW

1   Certificate with respect to the lack of potential for coverage for the COHEN Action due

2   to the **LIMITATION OF COVERAGE TO DESIGNATED PREMISES,**

3   **ACTIVITIES OR OPERATIONS ENDORSEMENT**. NATIONWIDE respectfully

4   requests that the Court issue the following declarations:

5          1)    a declaration that NATIONWIDE does not have, nor ever had, a

6   duty to defend DRAGON'S/ILBEIG for the underlying COHEN Action under either

7   Coverage A., Coverage D., or Coverage G.;

8          2)    a declaration that NATIONWIDE does not have, nor ever had, a

9   duty to indemnify DRAGON'S/ILBEIG for the underlying COHEN Action under either

10  Coverage A., Coverage D., or Coverage G. in the NATIONWIDE Policy; and,

11         3)    a declaration that since there was never any potential of coverage for

12  the COHEN Action under the Insurance Certificate issued to DRAGON'S/ILBEIG

13  pursuant to the NATIONWIDE Master Policy, NATIONWIDE has the right to withdraw

14  from the defense of DRAGON'S/ILBEIG for the underlying COHEN Action.

15  42.    Such judicial declarations are necessary and appropriate at this time due to

16  the controversy and genuine dispute between Plaintiff NATIONWIDE on the one hand,

17  and Defendant DRAGON'S/ILBEIG on the other hand, as described above.

18  **SECOND CAUSE OF ACTION FOR DECLARATORY RELIEF**

19  **(Against Defendants SHERVIN ILBEIG DBA DRAGON'S MARTIAL ARTS**

20  **STUDIO, INC.; DRAGON'S MARTIAL ARTS STUDIO, INC.; SHERVIN ILBEIG**

21  **As Respects NATIONWIDE'S Coverage Obligations Under Coverage A.)**

22  43.    Plaintiff NATIONWIDE refers to paragraphs 1 through 42 of this

23  Complaint and incorporates the allegations set forth therein in full in this cause of action.

24  44.    Plaintiff NATIONWIDE contends that there is no potential of coverage for

25  the COHEN Action pursuant to the Insurance Certificate issued to DRAGON'S/ILBEIG

26  under the NATIONWIDE Master Policy's Coverage A. Accordingly, there is no duty to

27  defend or a duty to indemnify DRAGON'S/ILBEIG as to the underlying COHEN Action

28  filed against DRAGON'S/ILBEIG.

Selman Breitman LLP
ATTORNEYS AT LAW

17

45.     Plaintiff NATIONWIDE asserts that the **LEGAL LIABILITY TO PARTICIPANTS,** Coverage D, modifies the CGL Coverage Form set out above. In particular, Coverage D. adds an exclusion to the CGL Coverage A. for "bodily injury" to "participants." The definition of "participants" includes " a person practicing, instructing, or participating in any physical exercises or games ..." such as Underlying Plaintiff COHEN.

46.     Plaintiff NATIONWIDE contends that because Underlying Plaintiff COHEN was a "participant" as defined under Coverage D. at the time of the training exercise in which he allegedly received "bodily injury," insurance under Coverage A. is barred and there could never have been a duty to defend or indemnify DRAGON'S/ILBEIG for the underlying COHEN Action. On information and belief, Plaintiff NATIONWIDE thereon asserts that DRAGON'S/ILBEIG disputes that there is any bar to the coverage obligations of NATIONWIDE under Coverage A of the NATIONWIDE Master Policy.

47.     This Court is vested with the power in the instant case, and Plaintiff NATIONWIDE hereby respectfully requests a judicial determination and declaratory judgment as to the insurance obligations under Coverage A. of the NATIONWIDE Master Policy, including declarations as follows:

         1)     a declaration that NATIONWIDE does not have, nor ever had, a duty to defend DRAGON'S/ILBEIG for the underlying COHEN Action under Coverage A; and

         2)     a declaration that NATIONWIDE does not have, nor ever had, a duty to indemnify DRAGON'S/ILBEIG for the underlying COHEN Action under Coverage A.

48.     Such judicial declarations are necessary and appropriate at this time due to the controversy and genuine dispute between Plaintiff NATIONWIDE on the one hand, and Defendant DRAGON'S/ILBEIG on the other hand, as described above.

///

COMPLAINT FOR DECLARATORY RELIEF, RESCISSION AND REIMBURSEMENT

Selman Breitman LLP
ATTORNEYS AT LAW

588845.1  1080.35368

## THIRD CAUSE OF ACTION FOR DECLARATORY RELIEF

**(Against Defendants SHERVIN ILBEIG DBA DRAGON'S MARTIAL ARTS STUDIO, INC.; DRAGON'S MARTIAL ARTS STUDIO, INC.; SHERVIN ILBEIG As Respects A Declaration On The Right To Reimbursement Of Defense Expenses.)**

49.     Plaintiff NATIONWIDE refers to paragraphs 1 through 48 of this Complaint and incorporates the allegations set forth therein in full in this cause of action.

50.     Under the first cause of action for declaratory relief, if this Court determines and declares there was never a potential for coverage for the COHEN Action under the NATIONWIDE Master Policy which could have raised a duty to defend or a duty to indemnify DRAGON'S/ILBEIG., NATIONWIDE is entitled under *Scottsdale Ins. Co. v. MV Transportation*, (2005) 36 Cal. 4th 643, to full reimbursement of all defense fees and costs it expended on behalf of DRAGON'S/ILBEIG to defend the COHEN Action.

51.     On information and belief, Plaintiff NATIONWIDE asserts that DRAGON'S/ILBEIG disputes that there was never a potential for coverage for the COHEN Action under the NATIONWIDE Master Policy. On information and belief, Plaintiff NATIONWIDE asserts DRAGON'S/ILBEIG also disputes that NATIONWIDE is entitled under *Scottsdale Ins. Co. v. MV Transportation*, (2005) 36 Cal. 4th 643, to full reimbursement of all defense fees and costs it expended on behalf of DRAGON'S/ILBEIG to defend the COHEN Action.

52.     This Court is vested with the power in the instant case, and Plaintiff NATIONWIDE hereby respectfully requests a judicial determination and declaratory judgment as follows:

1)     a declaration that there was never a potential for coverage for the COHEN Action under the NATIONWIDE Master Policy, meaning that a duty to defend never existed; and,

2)     a declaration that NATIONWIDE is entitled to full reimbursement of all defense fees and costs it expended on behalf of DRAGON'S/ILBEIG.

19

588845.1 1080.35368

53. Such judicial declarations are necessary and appropriate at this time due to the controversy and genuine dispute between Plaintiff NATIONWIDE on the one hand, and Defendant DRAGON'S/ILBEIG on the other hand, as described above.

## FOURTH CAUSE OF ACTION FOR REIMBURSEMENT

**(Against Defendants SHERVIN ILBEIG DBA DRAGON'S MARTIAL ARTS STUDIO, INC.; DRAGON'S MARTIAL ARTS STUDIO, INC.;SHERVIN ILBEIG As Respects Reimbursement Of Defense Expenses)**

54. Plaintiff NATIONWIDE refers to paragraphs 1 through 53 of this Complaint and incorporates the allegations set forth therein in full in this cause of action.

55. Under the First Cause of Action for declaratory relief and/or the Fifth Cause of Action, right of rescission, as asserted below, if this Court determines and declares there was never a potential for coverage for the COHEN Action under the Master Policy and thus, never a duty to defend DRAGON'S/ILBEIG., NATIONWIDE has a right to enforce the California Supreme Court's ruling in *Scottsdale Ins. Co. v. MV Transportation*, (2005) 36 Cal. 4th 643 to obtain full reimbursement of all defense fees and costs it expended on behalf of DRAGON'S/ILBEIG to defend the COHEN Action.

56. This Court is vested with the power in the instant case, and Plaintiff NATIONWIDE hereby respectfully requests as follows:

1) an Order that there was never a potential for coverage for the COHEN Action, thus, NATIONWIDE never had a duty to defend DRAGON'S/ILBEIG for the underlying COHEN Action under the First Cause of Action above; and/or,

2) an Order that there was never a potential for coverage for the COHEN Action, thus, NATIONWIDE never had a duty to defend DRAGON'S/ILBEIG for the underlying COHEN Action under the Fifth Cause of Action below; and,

3) an Order for full reimbursement to NATIONWIDE for all defense fees and costs it expended on behalf of DRAGON'S/ILBEIG for the COHEN Action due to the lack of potential for coverage.

///

COMPLAINT FOR DECLARATORY RELIEF, RESCISSION AND REIMBURSEMENT

588845.1  1080.35368

57.     At the time of this Court's Order, or other dispositive adjudication, all facts necessary for calculation of the full amount sought by NATIONWIDE in reimbursement from DRAGON'S/ILBEIG will be available by evidencing the bills for the fees and costs paid by NATIONWIDE for the defense of DRAGON'S/ILBEIG in the COHEN Action.

### FIFTH CAUSE OF ACTION FOR RESCISSION

**(As Respects DRAGON'S/ILBEIG Failure To Disclose Off-Site Activities In Its Application Enrollment Form For The NATIONWIDE Insurance Certificate)**

58.     Plaintiff NATIONWIDE refers to paragraphs 1 through 57 of this Complaint and incorporates the allegations set forth therein in full in this cause of action.

59.     NATIONWIDE is informed and believes, and thereon alleges that, Defendant DRAGON'S/ILBEIG, and/or its California licensed insurance agent, on or about November 18, 2011, communicated with K & K Insurance, a Managing General Underwriter, for NATIONWIDE regarding obtaining a renewed Insurance Certificate as an enrollee under the NATIONWIDE Sports, Leisure and Entertainment Risk Purchasing Group Master Policy for the period of November 19, 2011 to November 19, 2012.

60.     Personnel at K&K Insurance received application materials requesting a renewal of DRAGON'S/ILBEIG Insurance Certificate from NATIONWIDE, to be effective from November 19, 2011 to November 19, 2012.  On DRAGON'S/ILBEIG behalf, its California licensed insurance agent completed the Application Enrollment Form by answering questions and providing information about DRAGON'S/ILBEIG which was required to obtain an Insurance Certificate as an enrollee under the NATIONWIDE Master Policy.

61.     NATIONWIDE  also required that either the insured, or the insured's agent, execute a "Warranty and Disclosure Statement" as part of the application process. NATIONWIDE expects accurate reporting by its insureds, and/or their insurance agents, because it relies upon the Application Enrollment Form, along with the warranty regarding accurate disclosures on the form, for appropriate underwriting and proper evaluation of premium to be charged for an enrollee's Insurance Certificate.

21

62.   Where the Application Enrollment Form requested DRAGON'S/ILBEIG to enter all information on "… activities that occur away from the facility/premises…", DRAGON'S/ILBEIG failed to disclose that it had hosted any Big Bear Annual Retreats in the past and failed to disclose that it planned to host the Third Annual Big Bear Retreat where off site activities, or an ancillary event, occurred in Big Bear, California, away from its place of business in Woodland Hills, California.  These off site activities and their location were never disclosed to NATIONWIDE, by DRAGON'S/ILBEIG, or by anyone on DRAGON'S/ILBEIG behalf, before their occurrence on October 19-21, 2012.

63.   Furthermore, no one from DRAGON'S/ILBEIG, or on behalf of DRAGON'S/ILBEIG, ever attempted to contact NATIONWIDE to obtain the required prior approval from NATIONWIDE for said off site activities, or ancillary event, hosted at the Third Annual Big Bear Retreat to be insured under the NATIONWIDE Insurance Certificate issued to DRAGON'S/ILBEIG.  Therefore, this ancillary event was never a covered operation or activity under the Insurance Certificate issued by NATIONWIDE to DRAGON'S/ILBEIG.

64.   NATIONWIDE is informed and believes, and thereon alleges that, Defendant DRAGON'S/ILBEIG, its insurance agent, and its personnel knew at the time the Application Enrollment Form was completed and executed that DRAGON'S/ILBEIG had previously conducted two prior Annual Big Bear Retreats at Big Bear, California.

65.   NATIONWIDE is also informed and believes, and thereon alleges that, Defendant DRAGON'S/ILBEIG, its insurance agent, and its personnel knew at the time the Application Enrollment Form was completed and executed that DRAGON'S/ILBEIG would be hosting  and conducting a Third Annual Big Bear Retreat in Big Bear, California, which DRAGON'S/ILBEIG thereafter did host during the NATIONWIDE Master Policy period.

66.   Through K&K Insurance, NATIONWIDE issued the Insurance Certificate under the NATIONWIDE Sports, Leisure and Entertainment Risk Purchasing Group  to DRAGON'S/ILBEIG.  Through K&K Insurance, NATIONWIDE computed the premium

22

COMPLAINT FOR DECLARATORY RELIEF, RESCISSION AND REIMBURSEMENT

1   for the DRAGON'S/ILBEIG  Insurance Certificate based on DRAGON'S/ILBEIG

2   representations and warranty in the "Warranty and Disclosure Statement" within the

3   Application Enrollment Form that there were to be no ancillary events, or "activities held

4   off-site."  (Exhibit 1, pgs. 28-36).

5           67.      Had NATIONWIDE known that DRAGON'S/ILBEIG  hosted and

6   conducted two prior Annual Big Bear Retreats at Big Bear, California in the past years,

7   and that DRAGON'S/ILBEIG would again host and conduct a Third Annual Big Bear

8   Retreat at Big Bear, California during the NATIONWIDE Master Policy period,

9   NATIONWIDE would have requested material information about such an ancillary event

10  held at an off site location.

11          68.      Had NATIONWIDE been given full, complete and material information on

12  the Application Enrollment Form about the training exercises for weapon disarmament,

13  with potentially live weapons such as a BB gun, to be conducted at the Third Annual Big

14  Bear Retreat, NATIONWIDE would have had the opportunity to evaluate whether to

15  provide insurance coverage to DRAGON'S/ILBEIG for this type of "off site" activity, or

16  ancillary event. Instead, in response to the pertinent questions, there was no disclosure of

17  the Third Annual Big Bear Retreat by either DRAGON'S/ILBEIG, or its insurance agent,

18  on the Enrollment Form.

19          69.      Under NATIONWIDE'S underwriting guidelines in place on or about

20  October 19-21, 2012, this ancillary event or off site activity would have been excluded

21  from coverage due, *inter alia*, to the weapon disarmament exercise with potentially live

22  weapons (guns) as noted on the DRAGON'S/ILBEIG  Training Schedule.  Under

23  NATIONWIDE'S underwriting guidelines, training with potentially live weapons or guns

24  would not have been a "covered operation or activity" at any location.

25          70.      NATIONWIDE issued the Insurance Certificate under the NATIONWIDE

26  Master Policy and computed the premium for the Insurance Certificate in reasonable

27  reliance upon DRAGON'S/ILBEIG'S misrepresentations and/or omissions of material

28  ///

COMPLAINT FOR DECLARATORY RELIEF, RESCISSION AND REIMBURSEMENT

588845.1 1080.35368

1   information. Therefore, NATIONWIDE became entitled to rescind the Insurance

2   Certificate NATIONWIDE issued to DRAGON'S/ILBEIG from the date of its issuance.

3       71.    As an alternative to the first cause of action for declaratory relief, this

4   complaint provides notice of rescission of the NATIONWIDE Insurance Certificate

5   issued to Defendant DRAGON'S/ILBEIG as rescission will nullify all obligations related

6   to defense and/or indemnity on behalf of DRAGON'S/ILBEIG as to the COHEN Action.

7       72.    In the alternative to the first cause of action for declaratory relief, if this

8   court finds that there are adequate grounds for rescission of the NATIONWIDE

9   Insurance Certificate, NATIONWIDE intends to return all premium

10  DRAGON'S/ILBEIG paid in consideration for issuance of the NATIONWIDE Insurance

11  Certificate, effective from November 19, 2011 to November 19, 2012.

12      73.    This Court is vested with the power in the instant case, and, in the

13  alternative to the first cause of action for declaratory relief, Plaintiff NATIONWIDE

14  hereby respectfully requests a judicial determination that it be granted the right to rescind

15  the NATIONWIDE Insurance Certificate entitling DRAGON'S/ILBEIG, as an enrollee,

16  to coverage under the NATIONWIDE Master Policy issued to Sports, Leisure and

17  Entertainment Risk Purchasing Group for the period of November 19, 2011 to November

18  19, 2012, *ab initio*. In accordance with the rescission, NATIONWIDE request an order

19  that it is entitled to full reimbursement of the defense fees and costs it expended in the

20  COHEN Action and may withdraw from the defense of DRAGON'S/ILBEIG.

21                                     **PRAYER FOR RELIEF**

22      WHEREFORE, Plaintiff NATIONWIDE prays for judgment as follows:

23      (1)    For judicial declarations under the First Cause of Action that there is no

24  potential for coverage, and never was any potential for coverage; thus NATIONWIDE

25  has no defense or indemnification duties for the COHEN Action under the

26  NATIONWIDE Master Policy and may withdraw from the defense of DRAGON'S/

27  ILBEIG;

28  / / /

**Selman Breitman** LLP
ATTORNEYS AT LAW

COMPLAINT FOR DECLARATORY RELIEF, RESCISSION AND REIMBURSEMENT

(2)    For judicial declarations under the Second Cause of Action that there is no potential for coverage under Coverage A, and never was any potential for such coverage; thus NATIONWIDE has no defense or indemnification duties for the COHEN Action under Coverage A of the NATIONWIDE Master Policy;

(3)    For judicial declarations that since there was no potential for coverage under the NATIONWIDE Master Policy, there were never any duties or obligations to defend and/or indemnify DRAGON'S/ILBEIG for the COHEN Action under the NATIONWIDE Master Policy and in accordance, NATIONWIDE is entitled to reimbursement of all defense fees and costs it expended in defense of the COHEN Action;

(4)    For an order that, it having been established NATIONWIDE has no duty to defend DRAGON'S/ILBEIG in the COHEN Action, NATIONWIDE is entitled by law to full reimbursement from DRAGON'S/ILBEIG for all defense expenses, including but not limited to attorneys fees and costs, NATIONWIDE has expended on behalf of DRAGON'S/ILBEIG in the defense of the COHEN Action;

(5)    In the alternative to the First Cause of Action, for a judicial declaration that rescission of the DRAGON'S/ILBEIG Insurance Certificate applies, *ab initio*, which precludes coverage for all claims, suits and other obligations, including any obligations to defend and/or indemnify DRAGON'S/ILBEIG for the COHEN Action under the NATIONWIDE Policy; and that NATIONWIDE is entitled to full reimbursement from DRAGON'S/ILBEIG for all defense expenses, including but not limited to attorneys fees and costs, which NATIONWIDE has expended on behalf of DRAGON'S/ILBEIG in the defense of the COHEN Action and may withdraw from the defense of DRAGON'S/ILBEIG;

(6)    For an order that NATIONWIDE is also entitled to the legal rate of interest on such defense fees and costs that DRAGON'S/ILBEIG owes to NATIONWIDE;

/ / /

/ / /

COMPLAINT FOR DECLARATORY RELIEF, RESCISSION AND REIMBURSEMENT

588845.1  1080.35368

1     (7)     For the costs of suit incurred herein; and

2     (8)     For such other further relief as this Court may deem just and proper.

3

4   DATED: January 22, 2014     SELMAN BREITMAN LLP

5

6

7                By: _____

8                    ELDON S. EDSON
                    JAN L. POCATERRA

9               Attorneys for Plaintiff
              NATIONWIDE MUTUAL INSURANCE
              COMPANY

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DECLARATORY RELIEF, RESCISSION AND REIMBURSEMENT

Selman Breitman LLP
ATTORNEYS AT LAW

588845.1  1080.35368

# EXHIBITS

EXHIBIT 1



**Enrollment Form**
**Martial Arts Schools & Programs**
Valid for effective dates from 5/1/11 through 12/31/11

Completion of this enrollment form confirms your desire to obtain insurance through the Sports, Leisure and Entertainment Risk Purchasing Group. The submission of this enrollment form and/or acceptance of payment does not guarantee coverage. Certain operations are not eligible for coverage by this program. K&K reserves the right to decline any request for coverage.

**TO AVOID PROCESSING DELAYS, PLEASE:**
1. Complete all sections (print legibly)
2. Sign and date where required
3. Remit completed enrollment form (pages 6 - 14) with payment

### GENERAL INFORMATION

○ I am a new account    ● I am renewing my coverage

Named insured (as it should appear on the policy): Shervin Ilbeig
(the legal name of the business or organization; an individual name is acceptable if you are a sole proprietor)

Doing business as (DBA): Dragon's Martial Arts Studio Inc
(additional name(s) under which the named insured operates)

Mailing address: 6100 Topanga Canyon Blvd #2315

City: Woodland Hills                State: CA        Zip: 91367

Contact name: Shervin Ilbeig                        Phone: ( 818  ) 888 1158

Cell: ( 818  ) 454 7510                        Fax: ( 818  ) 347 7300

E-mail: bcis@aol.com                Website:

### LOCATIONS

List operating locations if different from mailing address.

Location 1:
        Street Address                City                State        Zip
Location 2:
        Street Address                City                State        Zip

### DATES

Coverage will begin the day after the completed enrollment form and premium are received and approved by K&K, or on a later date you specify below.  (If renewing coverage, please provide the expiration date of your current policy).

        ☞ Start my coverage on this date: 11 / 19 / 2011    Renewal 11/19 ✓

### BUSINESS INFORMATION

Styles of martial arts offered and any other types of operations/activities provided by your operation. (check all that apply)

○ Aikido                    ○ Haganah*              ○ Kickboxing (cardio/fitness only)    ○ Shaolinquan
○ Brazilian jiu jitsu        ○ Hapkido               ○ Kickboxing (contact/sparring)      ○ Taekwondo
○ Capoeira                  ○ Jeet kune do          ○ Krav maga                          ○ Tai chi
○ Chi kun                   ○ Judo                  ○ Kung fu                            ○ Taijiquan
○ Dim mak*                  ○ Jujitsu               ○ Mixed martial arts*                ○ Tang soo do
○ Fitness boxing            ○ Kali/escrima*         (ultimate/extreme/cage fighting)     ○ Thai boxing/muay thai*
  (non-contact)             ● Karate          OK per _____  ○ Savate*                    ○ Wushu
○ Goju-ryu                  ○ Kenjitsu              ○ Sayoc kali*

○ Other (please describe, subject to approval): _____

*Note: Coverage for these styles apply only to instruction/training type programs. Events/competitions/tournaments in which the insured's members participate with these styles are excluded and not covered under this program.

K&K Insurance Group, Inc. • P.O. Box 2338 • Fort Wayne, IN 46801-2338 • 1-800-648-6406 • Fax 1-260-459-5940
• www.kandkinsurance.com • CA #0334819

1020 5/11

EX. 1 - 28

**BUSINESS INFORMATION CONTINUED**

Do you have any climbing devices exceeding 10 feet in height?         ○ Yes  ● No

If yes, please provide:

The maximum height of the climbing device:_____

A description of the device:_____

Is a safety harness required?         ○ Yes  ○ No

(If over 10 feet, please include pictures of the device with this submission for review. Prior approval is required for climbing walls exceeding 10 feet with no safety harness utilized.)

Do you have any activities that occur away from the facility/premises         ○ Yes  ● No
other than competitions, demonstrations, parades or fundraising activities?

If yes, please describe: _____

(Activities held off-site must be reported prior to occuring and approved by us except for competitions, demonstrations, parades and fundraising activities.)

Do you have camps/clinics?         ○ Yes  ● No

If yes, describe the type of camps/clinics you have along with the events/activities taking place at the camps/clinics:_____

(Non-registered members of your school are excluded from coverage, unless you purchased the non-registered member activity coverage.)

**FOR NEW ACCOUNTS ONLY**

1. What is the name of your current insurance carrier(s) and the expiration date(s) of coverage?
   Name(s):_____         Expiration date(s):_____

2. Is your current carrier non-renewing your coverage?   ○ Yes  ○ No

3. Please list and describe any liability or medical claims that have been paid under your insurance coverage for the past three (3) years, including the amount paid. (If you have loss information, please provide a copy.)
   _____

**PROGRAM PREMIUM CALCULATION**

### Program Rating

Premium is determined by applying the appropriate option and rate for your school or organization to the greatest number of students/registered members that your program could have annually.  **If the total program premium is less than the minimum premium, the total premium due is the minimum premium.**

Select one option:

| Options | Rates/Premium Calculation | Program Premium |
|---|---|---|
| ● Option 1 $1,000,000 CGL Limit | $ 17.50 x 60 _____ = $ 1050<br>number of students | Minimum Premium = $750.00<br>$ 1050 (A) |
| ○ Option 2 $2,000,000 CGL Limit | $ 22.35 x _____ = $ _____<br>number of students | Minimum Premium = $1,125.00<br>$ _____ (A) |

1020  5/11

**OPTIONAL COVERAGES PREMIUM CALCULATION CONTINUED**

## Non-registered Member Activity and Birthday Party Coverage

Please select all of the activities and/or birthday parties you have at your school or organization and report the total number of non-registered or separately enrolled participants in each of the activities listed below along with the number of birthday parties. Use the rate for the same limit selected above.

| | Type of Activity | No. of Participants | X | $1 Mil Rate | $2 Mil Rate | = | Premium |
|---|---|---|---|---|---|---|---|
| ○ | Basketball and/or volleyball programs or classes | | X | $13.25 | $17.78 | = | $ |
| ○ | Camps/Clinics | | X | $13.25 | $17.78 | = | $ |
| ○ | Exercise and/or yoga classes | | X | $13.25 | $17.78 | = | $ |
| ○ | Exhibitions, seminars or demonstrations (involving guest participation) | | X | $13.25 | $17.78 | = | $ |
| ○ | Other (please describe): _____ Note: This is subject to approval by K&K | | X | $13.25 | $17.78 | = | $ |
| ● | Birthday parties | No. of parties held annually 3 | X | $16.50 | $22.00 | = | $49.50 |
| | **Non-registered Activity and Birthday Parties Premium** (add all lines above) | | | | | | $49.50   (B) |

## Abuse, Molestation, Harassment or Sexual Conduct Defense Cost Reimbursement Coverage

Coverage is contingent upon underwriting approval and review of the following questionnaire.

1. Are all prospective employees/volunteers required to complete a written application?   ● Yes   ○ No
2. Does your employment/volunteer application ask the applicant if they have ever been convicted of a crime?   ● Yes   ○ No
3. Are references obtained and checked prior to hiring a staff member?   ● Yes   ○ No
4. Do you have frequent discussions with your staff on the importance of providing a safe environment for the children in your care?   ● Yes   ○ No
5. Do you have written procedures for responding to a reported abuse incident?   ● Yes   ○ No
6. Is a copy of the written procedure provided to each member of your staff?   ● Yes   ○ No
7. Is mandatory notification to local law enforcement included in your written procedures?   ● Yes   ○ No
8. Is suspension of the accused employee/volunteer part of your written procedure?   ● Yes   ○ No
9. Has any member of your organization ever been involved in an incident which resulted in an allegation of abuse or molestation?   ○ Yes   ● No

| | Rate / Premium Calculation | Premium Due |
|---|---|---|
| ○ | $500.00 x _____ Number of Locations | $ _____ N/a (D) |

1020 5/11

EX. 1 - 30

**Equipment and Contents Coverage (Inland Marine)** This coverage is not available in New Jersey.

TO AVOID A CO-INSURANCE PENALTY, YOU MUST INSURE 100% OF THE REPLACEMENT COST OF YOUR EQUIPMENT AND CONTENTS FOR ALL OF YOUR LOCATIONS.

**Step 1:** Fill in the values to determine your total replacement cost amount for **ALL locations**

Individually list any items with values over $5,000                          Value

_____        $_____
_____        $_____
_____        $_____
_____        $_____

Provide values for categories below
(DO NOT include those values already shown above)

Supplies & Inventory (office supplies, items held for sale)              $_____
Equipments & Contents (athletic equipment, electronics, furniture,       $_____
phone/fax system, office contents, etc.)
Improvements & Betterments (items you have installed or altered          $_____
at your expense, such as flooring, mirrors, ceiling tile, window
treatments, lighting, shelving, etc.) Receipt of purchase is required at
the time of loss to show verification of purchase.
Signs (indoor or outdoor)                                               $_____
Misc. Equipment - please describe: _____          $_____
_____

Total replacement value for all location(s) (add all lines above)       $_____

**Step 2:** List physical addresses where equipment and contents are stored
              P.O. boxes cannot be accepted
Location 1: _____

                 Address                         City                          State       Zip
Location 2: _____

                 Address                         City                          State       Zip

**Step 3:** Calculate premium
          (If total calculated premium is less than the minimum premium, the total premium due is the minimum premium)

| Equipment and Contents Premium |
|---|

○ **My total replacement value is between $1 - $10,000**
  ($250 deductible will apply)

  $.03 x $_____ = $_____        $_____ (E)
         Total Replacement Value                         Equipment and Contents Premium
                                                          ($100.00 minimum premium applies)

○ **My total replacement value is over $10,000**
  ($1,000 deductible applies to values from $10,001 - $100,000 and a $2,500 deductible applies to values over $100,000)

  $.026 x $_____ = $_____       $_____ (E)
          Total Replacement Value                        Equipment and Contents Premium
                                                          ($100.00 minimum premium applies)

1020  5/11

OPTIONAL COVERAGES PREMIUM CALCULATION CONTINUED

EX. 1 - 31

| TOTAL PREMIUM SUMMARY | | | |
|---|---|---|---|
| Program Premium (from page 7) | | $ 1050 | (A) |
| Non-registered Member and/or Birthday Party Premium (from page 8) | | $ 49.50 | (B) |
| Liability Premium (add lines above) | | $ 1099.50 | |
| Use this section if purchasing limits above $2,000,000: <br> If no additional limits are needed, skip this section and add the Liability Premium to the Total Liability Premium line, Line D <br><br> If the total $2,000,000 Liability Premium is the minimum premium, $1,125.00 <br>    For Additional $1,000,000 ($3,000,000 Total CGL Limit), Add $250.00 ○ <br>    For Additional $2,000,000 ($4,000,000 Total CGL Limit), Add $500.00 ○ <br>    For Additional $3,000,000 ($5,000,000 Total CGL Limit), Add $750.00 ○ <br><br> If the total $2,000,000 Liability Premium is above $750.00, contact K&K for more details and a quote. | | $ <br> Additional amount due | |
| Total Liability Premium (add all lines above) | | $ 1099.50 | (C) |
| Optional Coverages: | | | |
| Abuse, Molestation, Harassment or Sexual Conduct Defense Cost Reimbursement Premium | | $ | (D) |
| Equipment and Contents Premium | | $ | (E) |
| Total Premium Due (add lines C, D & E above) | | $ 1099.50 | (F) |
| Florida Applicants <br> Florida applicants need to add a 1.3% state mandated Hurricane Catastrophe Fund assessment fee to the amount due. | | | |
| Total Premium Due (total premium due, Line F x 1.013) | | $ | |

**DOCUMENT DELIVERY**

You will receive a certificate showing evidence that coverage has been bound. This coverage document will be delivered via e-mail, unless otherwise indicated below. If you have an insurance agent, all documents will be delivered to your agent only. Additional certificate requests will be issued to the same person. Please select only one option.

● E-mail to: bcis@aol.com _____ attn: Barry Cohen _____
    (selecting this option confirms your consent for coverage documents to be delivered via e-mail)

○ Fax to: _____ attn: _____

○ Mail to: _____ attn: _____

1020 5/11

EX. 1 - 32

Complete this section to request additional certificates.  Provide separate requests for each additional certificate needed.

This certificate is for our: ○ Program coverage (commercial general liability)   ○ Equipment and contents coverage

Check the type of certificate you are requesting:

○ Additional insured   ○ Evidence of coverage   ○ Loss payee

Certificate holder information:

Entity name: _____

Mailing address: _____

City: _____  State: _____  Zip: _____

Relationship to named insured:

○ Owner/lessor of premises   ○ Sponsor   ○ Co-promoter   ○ Mortgagee

○ Franchisor   ○ Lessor of equipment and contents

○ Other (please identify/explain): _____

Special certificate language needed (please explain/attach): _____

Date certificate needed by: _____ / _____ / _____

If applicable:

RE:   Date(s) of event/activity: _____ / _____ / _____   to _____ / _____ / _____

Hours of event/activity: _____ A.M./P.M. to _____ A.M./P.M.

Type of event/activity: _____

Name of event/activity: _____

Location of event/activity: _____

For loss payee:

Type of equipment (please describe): _____

Limit: _____

**CERTIFICATE REQUESTS**

---

**TO BE COMPLETED ONLY IF LICENSED INSURANCE AGENT IS SUBMITTING THIS FORM**

Agency name:  Delcourt Insurance

Agency mailing address: 7625 Woodlake Ave

City: West Hills                                State: CA   Zip: 91304

Agent/contact name:  Barry Cohen

Agency telephone: (818  ) 347 7800                Agency fax: (818  ) 347 7300

Agent/contact e-mail address: bcis@aol.com                      Tax ID #: 356381796

Note: Agents do not have authority to issue binders or a certificate of insurance on behalf of this program. A 10% commission is available to licensed agents for this program.  Please remit net payment.

**AGENTS ONLY**

1020  5/11

EX. 1 - 33

**PREMIUMS ARE 20% FULLY EARNED AND NON-REFUNDABLE ONCE COVERAGE BEGINS**

Select Payment Plan:  Check one:

○ 100% Plan       ○ 30% / 70% Plan       ☞ 25% + 3 Plan

- 100% of the total premium is due to bind coverage
- 30% of the total premium is due to bind coverage
- Florida Applicants must also include the entire 1.3% state mandated Hurricane Catastrophe Fund assessment fee to bind coverage
- The balance of the premium (70%) will be due within 30 days of the effective date
- 25% of the total premium is due to bind coverage
- Florida Applicants must also include the entire 1.3% state mandated Hurricane Catastrophe Fund assessment fee to bind coverage
- The balance of the premium will be due in (3) consecutive monthly installments

☞ Check here if you prefer to be mailed an invoice for any future balances/installments.

If paying by credit card, any outstanding balances or installments will be charged to the same card number provided below, unless you have checked the box above.

**NT INFORMATION**

**FOR K&K USE ONLY**

| | | |
|---|---|---|
| Rec: 11 / 18 / 11 | Status: N Ⓕ | Broker: Ⓨ N    Comm: 10 % |
| Exp Policy #: MAS - 47515 | Exp Dates: 11 / 19 / 10 to 11 / 19 / 11 | |
| Cert #: 147 | Insured #: 1018 5108 | |
| Option: | Premium: $ 1099.50 | Pay Plan: 100 30/70 25/3   Bill: AB AⒹ CBG |
| Eff/Exp: 11 / 19 / 11 to 11 / 19 / 12 | Delivery: M F Ⓔ | Date: 11 /22 /11 |
| Opt: A&M IM D&O EX WC | Opt Form: 2026 2011 2404 8016 8018 876 | |
| Policy #: 50701 | Cert #: 2260 | Comments: received at binding |
| | | N2/11 - NEW |

Send Invoice

1020 5/11

EX. 1 - 34

**GENERAL FRAUD STATEMENT**

Any person who knowingly and with intent to defraud any insurance company or another person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime and subjects the person to criminal and [NY: substantial] civil penalties. (Not applicable in CO, DC, FL, HI, KS, MA, MN, NE, OH, OK, OR, VT or WA; in LA, ME, TN, and VA, insurance benefits may also be denied)

**APPLICABLE IN COLORADO** It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policy holder or claimant for the purpose of defrauding or attempting to defraud the policy holder or claimant with regard to a settlement of award payable from insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.

**APPLICABLE IN THE DISTRICT OF COLUMBIA** WARNING: It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits, if false information materially related to a claim was provided by the applicant.

**APPLICABLE IN FLORIDA** Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

**APPLICABLE IN HAWAII** For your protection, Hawaii law requires you to be informed that presenting a fraudulent claim for payment of a loss or benefit is a crime punishable by fines or imprisonment, or both.

**APPLICABLE IN KANSAS** Any person who, knowingly and with intent to defraud, presents, causes to be presented or prepares with knowledge or belief that it will be presented to or by an insurer, purported insurer, broker or any agent thereof, any written statement as part of, or in support of, an application for the issuance of, or the rating of an insurance policy for personal or commercial insurance, or a claim for payment or other benefit pursuant to an insurance policy for commercial or personal insurance which such person knows to contain materially false information concerning any fact material thereto; or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act.

**APPLICABLE IN MASSACHUSETTS, NEBRASKA, OREGON AND VERMONT** Any person who knowingly and with intent to defraud any insurance company or another person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading information concerning any fact material thereto, may be committing a fraudulent insurance act, which may be a crime and may subject the person to criminal and civil penalties.

**APPLICABLE IN MINNESOTA** Any person who files a claim with intent to defraud or helps commit a fraud against an insurer is guilty of a crime.

**APPLICABLE IN OHIO** Any person who, with intent to defraud or knowing that he/she is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deception statement is guilty of insurance fraud.

**APPLICABLE IN OKLAHOMA** WARNING: Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony.

**APPLICABLE IN WASHINGTON** It is a crime to knowingly provide false, incomplete, or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines, and denial of insurance benefits.

1020 5/11

## READ AND SIGN

**COVERAGE EXCLUSIONS**

The following exclusions are contained in the commercial general liability coverage provided by this program. Abuse, molestation, harassment or sexual conduct; Acupuncture and acupressure; Aircraft/hot air balloon; Airport; Amusement devices (the ownership, operation, maintenance or use of: any mechanical or non-mechanical ride, slide, or water slide, any inflatable recreational device, any bungee operation or equipment, or dunk tank. Amusement devices do not include any video or computer games or any device that is specifically designated for the training or instruction of the activity for which you are enrolled.); Animals (injury or death to, or injury, death or property damage caused by any animal owned, rented or hired by you); Asbestos; Commercial general liability standard exclusions (CG0001 12/04 edition); Communicable diseases; Employment-related practices; Fireworks; Fungi or bacteria; Haunted attractions; Lead; Nuclear energy liability; Non-registered participants at events/tournaments hosted by the named insured; Performers (injury or death to any performer or entertainer during any activity, event or exhibition including but not limited to any stunt, concert, show or theatrical event. This exclusion does not apply to participants in any activity, event or exhibition that are part of the designated operations for which you are enrolled); Rodeos; Saddle animals; Snowmobiles; The sale or distribution of herbal, medicinal and/or nutritional products; Tournaments or competitions involving the following styles: Muay thai/Thai boxing; Kali/escrima; Savate; Sayoc kali; Dim mak; Haganah; Full contact and submission mixed martial arts, including but not limited to: cage events, extreme fighting and ultimate fighting; Transportation of athletes/participants; Use of bladed weapons; Those operations listed as ineligible: Boxing (contact/sparring); Training programs for law enforcement, military or public safety personnel; Vertical climbing devices or equipment used for climbing (either permanently affixed or temporarily erected) exceeding ten (10) feet with no safety harness system, unless reported/approved by us; Wrestling

**WARRANTY AND DISCLOSURE STATEMENT**

I understand that the insurance company, in determining whether to provide insurance coverage, will rely on the information contained in this form and all other information being submitted. I hereby warrant, represent and confirm that, to the best of my knowledge, all information provided is complete, true and correct.

K&K Insurance Group, Inc. as managing general underwriter for the insurance company, receives compensation from the insurance company in consideration for its performance of insurance services that include, but are not limited to: underwriting, policy/certificate issuance, administration and claims handling. The insurance company compensates K&K, based on a predetermined calculation of thirty-three percent of the total premium.

I understand that subject to applicable laws, K&K Insurance Group, Inc. will invest the premium and, in accordance with the permission of the insurer, will receive any interest or other income that the premium generates prior to remittance to the insurer.

I am aware that the insurance company expects accurate reporting for my premium calculation. I understand that my books and records may be examined or audited by the insurance company at any time during the coverage period and up to three years thereafter. Intentional misrepresentation or misreporting may jeopardize coverage.

I further acknowledge that I have reviewed all information provided with this enrollment form and understand the exclusions which apply, as well as the activities and operations for which coverage is not provided.

Applicant or agent signature: _Barry Cohen_     Date: __11/18/11__

Printed name: __Barry S. Cohen__     Title: __Broker/owner__

If an agent: Check here to acknowledge you are signing on behalf of the named insured. ●

Named insured (from page 6): __Shervin Ilbeig__

1020 5/11

EX. 1 - 36

EXHIBIT 2

# ACORD  CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YYYY) 11/22/2011

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| | |
|---|---|
| PRODUCER<br>K&K Insurance Group, Inc.<br>1712 Magnavox Way<br>Fort Wayne IN 46804 | CONTACT NAME: Mass Merchandising<br>PHONE (A/C, No. Ext): 1-800-648-6406   FAX (A/C, No): 1-260-459-5940<br>E-MAIL ADDRESS: info@martialartsinsurance-kk.com<br>PRODUCER CUSTOMER ID #: 10185108 |

| | INSURER(S) AFFORDING COVERAGE | NAIC # |
|---|---|---|
| INSURED                      CP# 226<br>Shervin Ilbeig<br>DBA: Dragon's Martial Arts Studio Inc<br>6100 Topanga Canyon Blvd, #2315<br>Woodland Hills, CA 91367<br>A Member of the Sports, Leisure & Entertainment RPG | INSURER A: Nationwide Mutual Insurance Company | 23787 |
| | INSURER B: | |
| | INSURER C: | |
| | INSURER D: | |

## COVERAGES   CERTIFICATE NUMBER: 2000035330   REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YY) | POLICY EXP (MM/DD/YY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | GENERAL LIABILITY<br>X COMMERCIAL GENERAL LIABILITY<br>CLAIMS-MADE [X] OCCUR | | | 6BMAS0000005070100 | 11/19/11<br>12:01 AM | 11/19/12<br>12:01 AM | EACH OCCURRENCE | $1,000,000 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $500,000 |
| | | | | | | | MED EXP (Any one person) | $5,000 |
| | | | | | | | PERSONAL & ADV INJURY | $1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER:<br>[ ] POLICY [ ] PROJECT [ ] LOC | | | | | | GENERAL AGGREGATE | $5,000,000 |
| | | | | | | | PRODUCTS-COMP/OP AGG | $1,000,000 |
| | | | | | | | PROFESSIONAL LIABILITY | $1,000,000 |
| | | | | | | | LEGAL LIAB TO PARTICIPANTS | $1,000,000 |
| A | AUTOMOBILE LIABILITY<br>[ ] ANY AUTO<br>[ ] ALL OWNED AUTOS<br>[ ] SCHEDULED AUTOS<br>X HIRED AUTOS<br>X NON-OWNED AUTOS<br>X Not provided while in Hawaii | | | 6BMAS0000005070100 | 11/19/11<br>12:01 A.M. | 11/19/12<br>12:01 A.M. | COMBINED SINGLE LIMIT (Ea Accident) | $1,000,000 |
| | | | | | | | BODILY INJURY (Per person) | |
| | | | | | | | BODILY INJURY (Per accident) | |
| | | | | | | | PROPERTY DAMAGE (Per accident) | |
| | [ ] UMBRELLA LIAB [ ] OCCUR<br>[ ] EXCESS LIAB [ ] CLAIMS-MADE<br>[ ] DEDUCTIBLE<br>[ ] RETENTION | | | | | | EACH OCCURRENCE | |
| | | | | | | | AGGREGATE | |
| | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY   Y/N<br>ANY PROPRIETOR/PARTNER/ EXECUTIVE OFFICER/MEMBER EXCLUDED?<br>(Mandatory in NH)<br>If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | | | | | [ ] WC STATU-TORY LIMITS   [ ] OTHER | |
| | | | | | | | E.L. EACH ACCIDENT | |
| | | | | | | | E.L. DISEASE – EA EMPLOYEE | |
| | | | | | | | E.L. DISEASE – POLICY LIMIT | |
| A | MEDICAL PAYMENTS FOR PARTICIPANTS | | | 6BMAS0000005070100 | 11/19/11<br>12:01 A.M. | 11/19/12<br>12:01 A.M. | PRIMARY MEDICAL | |
| | | | | | | | EXCESS MEDICAL | $150,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (Attach ACORD 101, Additional Remarks Schedule, if more space is required)

| | |
|---|---|
| CERTIFICATE HOLDER<br><br>Evidence of Coverage | CANCELLATION<br><br>SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.<br>AUTHORIZED REPRESENTATIVE<br><br>*Scott Rutherford* |

Coverage is only extended to U.S. events and activities.
NOTICE TO TEXAS INSUREDS: The Insurer for the purchasing group may not be subject to all the insurance laws and regulations of the State of Texas.

ACORD 25 (2009/09)

© 1988-2009 ACORD CORPORATION. All rights reserved.
The ACORD name and logo are registered marks of ACORD

EX. 2 - 37



# POLICYHOLDER DISCLOSURE

## DISCLOSURE OF PREMIUM AND FEDERAL PARTICIPATION

The Terrorism Risk Insurance Act establishes a program within the Department of the Treasury, under which the federal government shares, with the insurance industry, the risk of loss from future terrorist attacks.  The Act applies when the Secretary of the Treasury certifies that an event meets the definition of an act of terrorism.  The Act provides that, to be certified, an act of terrorism must cause losses of at least five million dollars and must have been committed by an individual or individuals as a part of an effort to coerce the government or population of the United States.

In accordance with the Terrorism Risk Insurance Act, we are required to offer you coverage for losses resulting from an act of terrorism **that is certified under the federal program** as an act of terrorism.  The policy's other provisions will still apply to such an act

### DISCLOSURE OF PREMIUM

The premium for terrorism coverage is $  Included .

### DISCLOSURE OF FEDERAL PARTICIPATION IN PAYMENT OF TERRORISM LOSSES

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program.  The federal share equals 85% of that portion of the amount of such insured losses that exceeds the applicable insurer retention.

NW 26654

01/2008

EX. 2 - 38


Nationwide

# BLANKET PROTECTOR
# COMMON DECLARATIONS

ISSUED BY:   K & K INSURANCE GROUP, INC.

| POLICY NUMBER |
| --- |
| 6BMAS0000005070100 |

Named Insured   Sports, Leisure and Entertainment RPG
DBA: Martial Arts Schools & Programs
Mailing Address   1712 Magnavox Way
Fort Wayne, IN 46804

POLICY PERIOD: From _____ 05/01/11 _____ to _____ 01/01/14 _____ at _____
12:01 A.M. Standard Time at your mailing address

Form of Business:   Other

Description of Business:   Martial Arts Schools & Programs

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE
AGREE TO PROVIDE YOU WITH THE INSURANCE AS STATED IN THIS POLICY.

This policy consists of the coverages indicated as included.  The premium may be subject to adjustment.

| | Included | Not Included |
| --- | --- | --- |
| Commercial Property Coverage | | X |
| Commercial General Liability Coverage | X | . |
| Commercial Crime Coverage | | X |
| Mechanical, Electrical and pressure Equipment Coverage | | X |
| Commercial Inland Marine Coverage | | X |
| Commercial Auto Coverage | | X |
| Garage Coverage | | X |
| Farm Coverage | | X |
| Other Coverages   Hired Auto & Employers Nonownership Liability | X | |

Total Advance Premium See SRPG17348-1  Premium Payable At Inception See SRPG17348-1

In the event of cancellation by you, we shall receive and retain not less than 20% as the minimum premium.

Forms in common to all Coverage:
SRPG17348(12/02)     IL0017(11/98)        CAS3228          SRPG26148(09/08)     SRPG0021(09/08)
IL0272(09/07)        IL0985(01/08)

Date of Issue:        May 1, 2011                     Issuing Office: _____
Countersignature Date: _____            Agency At: _____

THE UNDERSIGNED CERTIFIES THAT THIS  Agent: _____
PHOTOCOPY WITH THE ENDORSEMENTS
ATTACHED IS A TRUE AND CORRECT COPY                    Scott [signature]
OF THE POLICY.

CAS 3200A (1-87)        SIGNATURE                DATE

EX. 2 - 39

**POLICY NUMBER:**   6BMAS0000005070100                                          **DECLARATIONS EXTENSION**

With respect to CAS3200-A, Blanket Protector Common Declarations, and wherever else it may appear, the Named Insured, Policy Period, Total Advance Premium and Premium Payable at Inception are amended as follows:

**Named Insured:**
Sports, Leisure and Entertainment Risk Purchasing Group and its enrolled member Martial Arts schools and programs who have enrolled in the insurance program and have been approved by the company and for which an appropriate premium has been paid and to whom a certificate of insurance has been issued.

**Policy Period:**  May 1, 2011 – January 1, 2014
Coverage for each enrolled member becomes effective the date after the enrollment form and premium payment are received by the program administrator, or on a later date that is specified, and will remain in effect for one year.

Florida applicants must add the required state mandated hurricane catastrophe fund assessment fee to the total premium.

**Advance Premium:**
The minimum advance premium for each enrolled member martial arts school is:

$1,000,000 limit option = $  750.00
$2,000,000 limit option = $1,125.00
$3,000,000 limit option = $1,375.00
$4,000,000 limit option = $1,625.00
$5,000,000 limit option = $1,875.00

**Hosted Tournaments - Optional Coverage:**

| 1 - 50 participants | $1,000,000 Limit | $185.37 per tournament |
|---|---|---|
|  | $2,000,000 Limit | $278.06 per tournament |
|  | $3,000,000 Limit | $324.40 per tournament |
|  | $4,000,000 Limit | $352.20 per tournament |
|  | $5,000,000 Limit | $372.59 per tournament |
| 51 - 100 participants | $1,000,000 Limit | $368.42 per tournament |
|  | $2,000,000 Limit | $552.63 per tournament |
|  | $3,000,000 Limit | $664.74 per tournament |
|  | $4,000,000 Limit | $700.00 per tournament |
|  | $5,000,000 Limit | $740.52 per tournament |
| 101 - 500 participants | $1,000,000 Limit | $553.79 per tournament |
|  | $2,000,000 Limit | $830.69 per tournament |
|  | $3,000,000 Limit | $969.13 per tournament |
|  | $4,000,000 Limit | $1052.20 per tournament |
|  | $5,000,000 Limit | $1113.12 per tournament |
| 500 + participants | $1,000,000 Limit | $1.10 per part./per tournament |
|  | $2,000,000 Limit | $1.65 per part./per tournament |
|  | $3,000,000 Limit | $1.93 per part./per tournament |
|  | $4,000,000 Limit | $2.09 per part./per tournament |
|  | $5,000,000 Limit | $2.21 per part./per tournament |

Schedule 1                                          Page 1 of 2

SRPG17348                                                                                    12/02

**$100,000 Abuse, Molestation, Harassment or Sexual Conduct Defense Costs Reimbursement**
Optional Coverage:   The minimum advance premium is $500.00 per operating location

**Premium Payable at Inception:**
Is based on the payment plan requested on the enrollment form and received by the program administrator.

For Hosted Tournaments Coverage - 100% of the premium is due upon binding and is fully earned & non-refundable once the tournament begins.

Schedule 1                              Page 2 of 2

EX. 2 - 41

**POLICY NUMBER:**  6BMAS0000005070100

INTERLINE
IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and re-cords as they relate to this policy at any time during the policy period and up to three years after-ward.

**D. Inspections And Surveys**

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

IL 00 17 11 98

Copyright, Insurance Services Office, Inc., 1998

Page 1 of 1



POLICY NUMBER: 6BMAS0000005070100

Nationwide Mutual Insurance Company
Nationwide Mutual Fire Insurance Company
Nationwide Property and Casualty Insurance Company
Home Office: Columbus, Ohio 43215-2220

# MANDATORY ENDORSEMENT

### POLICYHOLDER MEMBERSHIP IN THE COMPANY

(Applicable Only in the Nationwide Mutual Insurance Company or the Nationwide Mutual Fire Insurance Company in All States Except Those Specifically Provided For)

Because this policy is issued by a mutual insurance company, you are a member of the company while this or any other policy is in force. While a member you are entitled to a vote only - either in person or by proxy - at meetings of the company. You are entitled to any dividends which are declared by the Board of Directors and are applicable to coverages in your policy.

The annual meeting of the members of the company issuing your policy (the company is indicated on the Declarations Page) will be held at the Nationwide Plaza in Columbus, Ohio, on the first Thursday of April. The time of the meeting for the Nationwide Mutual Fire Insurance Company is 9:30 A.M. and the time of the meeting for the Nationwide Mutual Insurance Company is 10:00 A.M. We will mail notice of any change in meeting dates, times or place to you at your address last known to us at least ten days prior to the rescheduled meeting date.

This policy is non-assessable, meaning that you are not subject to any assessment beyond the premiums we require for each policy term.

### POLICYHOLDER MEMBERSHIP IN THE COMPANY

(Applicable Only in the Nationwide Mutual Insurance Company or the Nationwide Mutual Fire Insurance Company When This Policy is Issued in The State of Texas)

1. **MUTUALITY – MEMBERSHIP AND VOTING NOTICE.** You are notified that by virtue of this policy you are a member of the Nationwide Mutual Insurance Company of Columbus, Ohio or the Nationwide Mutual Fire Insurance Company of Columbus, Ohio as shown on the Declarations Page of this Policy, and you are entitled, as is lawfully provided in the charter, constitution, or by-laws to only one vote regardless of the number of policies owned either in person or by proxy, in any or all meetings of the company. The annual meetings are held at the Home Office at Columbus, Ohio, on the first Thursday of April, in each year, at 9:30 A.M. for the Nationwide Mutual Fire Insurance Company and 10:00 A.M. of the same day for the Nationwide Mutual Insurance Company.

2. **MUTUALS - PARTICIPATION CLAUSE WITHOUT CONTINGENT LIABILITY.** No Contingent Liability: This policy is non-assessable. You are a member of the company and shall participate, to the extent and upon the conditions fixed and determined by the Board of Directors in the distribution of dividends so fixed and determined provided such determinations are in accordance with the provisions of the Texas Insurance Code and other applicable law, which includes the rules and regulations of the State Board of Insurance.

IN WITNESS WHEREOF: Nationwide Mutual Insurance Company, Nationwide Mutual Fire Insurance Company or Nationwide Property and Casualty Insurance Company, whichever is the issuing company, as designated on the Declarations, has caused this policy to be signed by its President and Secretary at Columbus, Ohio, and countersigned by a duly authorized representative of the company.

ATTEST:

_Secretary_                                                      _President_

CAS 3228

POLICY NUMBER:  6BMAS0000005070100

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## EARNED PREMIUM

This endorsement modifies insurance provided under the following:

ALL LIABILITY COVERAGES

The following is in effect only when indicated by X

_____   Premium fully earned at inception

__X\_\_\_   Premium fully earned at inception          _____20%\_\_\_\_
                                                      (Percentage of Policy Term Premium)

_____   Premium fully earned as follows:

          % of total premium in the event of cancellation prior to

       Total policy premium is fully earned in the event of cancellation after   _____

__X\_\_\_   Event premiums

       The following premiums apply to each category of event indicated and are fully earned as of the beginning of
       each event:

|          **EVENT**          |  **PREMIUM PER EVENT**  |
|-----------------------------|-------------------------|
| Hosted tournaments for which optional coverage was applied for and the appropriate premium paid. | As scheduled |

SRPG26148                                                                 09/08

EX. 2 - 44

POLICY NUMBER:  6BMAS0000005070100

SRPG 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
HIRED AUTO AND EMPLOYERS' NONOWNERSHIP LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1.  The insurance does not apply:

    A.  Under any Liability Coverage, to "bodily injury" or "property damage":

        (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

        (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    B.  Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

    C.  Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

        (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

        (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

        (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2.  As used in this endorsement:

    "Hazardous properties" includes radioactive, toxic or explosive properties.

    "Nuclear material" means "source material", "special nuclear material" or "by-product material".

Includes copyrighted material of ISO Properties, Inc. with its permission.
Copyright, ISO Properties, Inc., 2007

EX. 2 - 45

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or ex-posed to radiation in a "nuclear reactor".

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

    (a) Any "nuclear reactor";

    (b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

    (c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

    (d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

Includes copyrighted material of ISO Properties, Inc. with its permission.
Copyright, ISO Properties, Inc., 2007

**POLICY NUMBER:** 6BMAS0000005070100

INTERLINE
IL 02 72 09 07

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# INDIANA CHANGES – CANCELLATION
# AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2. Cancellation Of Policies In Effect**

**a. 90 Days Or Less**

If this policy has been in effect for 90 days or less, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

**(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium;

**(2)** 20 days before the effective date of cancellation if you have perpetrated a fraud or material misrepresentation on us; or

**(3)** 30 days before the effective date of cancellation if we cancel for any other reason.

**b. More Than 90 Days**

If this policy has been in effect for more than 90 days, or is a renewal of a policy we issued, we may cancel this policy, only for one or more of the reasons listed below, by mailing or delivering to the first Named Insured written notice of cancellation at least:

**(1)** 10 days before the effective date of cancellation if we cancel for nonpayment of premium;

**(2)** 20 days before the effective date of cancellation if you have perpetrated a fraud or material misrepresentation on us; or

**(3)** 45 days before the effective date of cancellation if:

**(a)** There has been a substantial change in the scale of risk covered by this policy;

**(b)** Reinsurance of the risk associated with this policy has been cancelled; or

**(c)** You have failed to comply with reasonable safety recommendations.

© ISO Properties, Inc., 2006

EX. 2 - 47

**B.** The following is added to the Common Policy Conditions and supersedes any provision to the contrary.

**NONRENEWAL**

1. If we elect not to renew this policy, we will mail or deliver to the first Named Insured written notice of nonrenewal at least 45 days before:

    a. The expiration date of this policy, if the policy is written for a term of one year or less; or

    b. The anniversary date of this policy, if the policy is written for a term of more than one year.

2. We will mail or deliver our notice to the first Named Insured's last mailing address known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

© ISO Properties, Inc., 2006

POLICY NUMBER:  6BMAS0000005070100

INTERLINE
IL 09 85 01 08

**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY IN RESPONSE TO THE DISCLOSURE REQUIREMENTS OF THE TERRORISM RISK INSURANCE ACT. THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE PURSUANT TO TERRORISM RISK INSURANCE ACT

## SCHEDULE

Terrorism Premium (Certified Acts) $0

**This premium is the total Certified Acts premium attributable to the following Coverage Part(s), Coverage Form(s) and/or Policy(s):**

**Additional information, if any, concerning the terrorism premium:**

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Disclosure Of Premium**

In accordance with the federal Terrorism Risk Insurance Act, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to coverage for terrorist acts certified under the Terrorism Risk Insurance Act. The portion of your premium attributable to such coverage is shown in the Schedule of this endorsement or in the policy Declarations.

**B. Disclosure Of Federal Participation In Payment Of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 85% of that portion of the amount of such insured losses that exceeds the applicable insurer retention. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31), the Treasury shall not make any payment for any portion of the amount of such losses that exceeds $100 billion.

**C. Cap On Insurer Participation In Payment Of Terrorism Losses**

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

© ISO Properties, Inc., 2007

EX. 2 - 49



# BLANKET PROTECTOR
## COMMERCIAL GENERAL LIABILITY
## COVERAGE PART DECLARATIONS

**ISSUED BY:**   K & K INSURANCE GROUP, INC.

| POLICY NUMBER |
|---|
| 6BMAS0000005070100 |

POLICY PERIOD: From _____ 05/01/11 _____ to _____ 01/01/14 _____ at
12:01 A.M. Standard Time at your mailing address.

**LIMITS OF INSURANCE**

| | | |
|---|---|---|
| General Aggregate Limit (Other Than Products-Completed Operations) | See SRPG17348-2 | |
| Products-Completed Operations Aggregate Limit | See SRPG17348-2 | |
| Each Occurrence Limit | See SRPG17348-2 | |
| Personal & Advertising Injury Limit | See SRPG17348-2 | Any One Person or Organization |
| Medical Expense Limit | See SRPG17348-2 | Any One Person |
| Damage To Premises Rented To You Limit | See SRPG17348-2 | Any One Premises |
| Additional Coverages | | |
| Legal Liability for Participants | See SRPG17348-2 | |
| Professional Liability | See SRPG17348-2 | |
| Medical Payments to Participants | See SRPG17348-2 | |
| OPTIONAL COVERAGE: Abuse, Molestation, Harassment or Sexual Conduct Defense Cost Reimbursement | See SRPG17348-2 | |

**RETROACTIVE DATE** (Applies to CG 00 02, Claims Made Coverage, only)

Coverage A of this insurance does not apply to "bodily injury" or "property damage" which occurs before the Retroactive Date, if any, shown below.
Retroactive Date:       None

(Enter Date or "None" if no Retroactive Date applies.)

**Retroactive Date** (Applies to CG 00 34, Claims Made Coverage, Liquor Liability)
Retroactive Date:       None

(Enter Date or "None" if no Retroactive Date applies.)

Location of All Premises You Own, Rent or Occupy:
   1) As reported and on file with the company
   2) Various

| | | | Advance Premium | |
|---|---|---|---|---|
| Classification | Code No. | Premium Basis | Products/ Completed Operations | All Other |
| | | SEE SRPG17486, LIABILITY SCHEDULE & PREMIUM RECAP | | |

Commercial General Liability Advance Premium   See SRPG17348-1

Forms Applicable to Commercial General Liability Coverage Part:

| | | | | |
|---|---|---|---|---|
| SRPG17348(12/02) | SRPG17486(12/02) | CG0001(12/04) | CAS3880(08/97) | CAS4487(06/93) |
| SRPG115(03/10) | SRPG157(09/08) | SRPG2146(09/08) | IL1201(11/85) | SRPG8015(09/08) |
| SRPG26055(09/08) | SRPG26072(09/08) | SRPG26117(09/08) | SRPG26131(09/08) | IL1201(11/85) |
| SRPG26143(09/08) | SRPG26147CG(09/08) | SRPG26154(09/08) | IL1201(11/85) | SRPG26503(09/08) |
| SRPG26583(09/08) | CG2011(01/96) | CG2026(07/04) | CG2028(07/04) | SRPG26503(09/08) |
| CG2147(07/98) | CG2167(12/04) | CG2170(01/08) | CG2504(05/09) | CG2029(11/85) |

Cas 3203-A (3-05)

EX. 2 - 50

**POLICY NUMBER:**   6BMAS0000005070100                                    **DECLARATIONS EXTENSION**

With respect to CAS3203-A, Blanket Protector Commercial General Liability Coverage Part Declarations, the following options are available:

Coverage and limits of insurance apply to each enrolled member as submitted, approved and held on file with the company and for which the appropriate premium has been paid.

**Option 1:**

| | |
|---|---|
| General Aggregate Limit (other than Products-completed Operations) | $5,000,000 per location |
| Products-Completed Operations Aggregate Limit | $1,000,000 |
| Each Occurrence Limit | $1,000,000 |
| Personal & Advertising Injury Limit - any one person or organization | $1,000,000 |
| Medical Expense Limit - any one person | $     5,000 |
| Damage to Premises Rented to You Limit - any one premises | $   500,000 |
| Legal Liability to Participants - per occurrence | $1,000,000 |
| Professional Liability - per wrongful act | $1,000,000 |
| Medical Payments for Participants, per participant, | $   150,000 |
| $250 deductible/per claim | |

**Option 2:**

| | |
|---|---|
| General Aggregate Limit (other than Products-completed Operations) | $5,000,000 per location |
| Products-Completed Operations Aggregate Limit | $2,000,000 |
| Each Occurrence Limit | $2,000,000 |
| Personal & Advertising Injury Limit - any one person or organization | $2,000,000 |
| Medical Expense Limit - any one person | $     5,000 |
| Damage to Premises Rented to You Limit - any one premises | $   500,000 |
| Legal Liability to Participants - per occurrence | $2,000,000 |
| Professional Liability - per wrongful act | $2,000,000 |
| Medical Payments for Participants, per participant, | $   150,000 |
| $250 deductible/per claim | |

**Option 3:**

| | |
|---|---|
| General Aggregate Limit (other than Products-completed Operations) | $5,000,000 per location |
| Products-Completed Operations Aggregate Limit | $3,000,000 |
| Each Occurrence Limit | $3,000,000 |
| Personal & Advertising Injury Limit - any one person or organization | $3,000,000 |
| Medical Expense Limit - any one person | $     5,000 |
| Damage to Premises Rented to You Limit - any one premises | $   500,000 |
| Legal Liability to Participants - per occurrence | $3,000,000 |
| Professional Liability - per wrongful act | $3,000,000 |
| Medical Payments for Participants, per participant, | $   150,000 |
| $250 deductible/per claim | |

SRPG17348                                                                              12/02

EX. 2 - 51

**Option 4:**

| | |
|---|---|
| General Aggregate Limit (other than Products-completed Operations) | $5,000,000 per location |
| Products-Completed Operations Aggregate Limit | $4,000,000 |
| Each Occurrence Limit | $4,000,000 |
| Personal & Advertising Injury Limit - any one person or organization | $4,000,000 |
| Medical Expense Limit - any one person | $    5,000 |
| Damage to Premises Rented to You Limit - any one premises | $  500,000 |
| Legal Liability to Participants - per occurrence | $4,000,000 |
| Professional Liability - per wrongful act | $4,000,000 |
| Medical Payments for Participants, per participant, | $  150,000 |
| $250 deductible/per claim | |

**Option 5:**

| | |
|---|---|
| General Aggregate Limit (other than Products-completed Operations) | $5,000,000 per location |
| Products-Completed Operations Aggregate Limit | $5,000,000 |
| Each Occurrence Limit | $5,000,000 |
| Personal & Advertising Injury Limit - any one person or organization | $5,000,000 |
| Medical Expense Limit - any one person | $    5,000 |
| Damage to Premises Rented to You Limit - any one premises | $  500,000 |
| Legal Liability to Participants - per occurrence | $5,000,000 |
| Professional Liability - per wrongful act | $5,000,000 |
| Medical Payments for Participants, per participant, | $  150,000 |
| $250 deductible/per claim | |

**Abuse, Molestation, Harassment or Sexual Conduct Reimbursement - Optional Coverage - Limits of Insurance:**

| | |
|---|---|
| Defense Cost Reimbursement | $  100,000 |

**Hosted Tournaments - Optional Coverage - Limits of Insurance:**
(limits must coincide with the limit option chosen for their martial arts plan)

**Option 1:**

| | |
|---|---|
| General Aggregate Limit (other than Products-completed Operations) | $5,000,000 |
| Products-Completed Operations Aggregate Limit | $1,000,000 |
| Each Occurrence Limit | $1,000,000 |
| Personal & Advertising Injury Limit - any one person or organization | $1,000,000 |
| Medical Expense Limit - any one person | $    5,000 |
| Damage to Premises Rented to You Limit - any one premises | $  500,000 |
| Legal Liability to Participants - per occurrence | $1,000,000 |
| Professional Liability - per wrongful act | $1,000,000 |

**Option 2:**

| | |
|---|---|
| General Aggregate Limit (other than Products-completed Operations) | $5,000,000 |
| Products-Completed Operations Aggregate Limit | $2,000,000 |
| Each Occurrence Limit | $2,000,000 |
| Personal & Advertising Injury Limit - any one person or organization | $2,000,000 |
| Medical Expense Limit - any one person | $    5,000 |
| Damage to Premises Rented to You Limit - any one premises | $  500,000 |
| Legal Liability to Participants - per occurrence | $2,000,000 |
| Professional Liability - per wrongful act | $2,000,000 |

Schedule 2                                    Page 2 of 3

SRPG17348

12/02

EX. 2 - 52

**Option 3:**

| | |
|---|---|
| General Aggregate Limit (other than Products-completed Operations) | $5,000,000 |
| Products-Completed Operations Aggregate Limit | $3,000,000 |
| Each Occurrence Limit | $3,000,000 |
| Personal & Advertising Injury Limit - any one person or organization | $3,000,000 |
| Medical Expense Limit - any one person | $    5,000 |
| Damage to Premises Rented to You Limit - any one premises | $  500,000 |
| Legal Liability to Participants - per occurrence | $3,000,000 |
| Professional Liability - per wrongful act | $3,000,000 |

**Option 4:**

| | |
|---|---|
| General Aggregate Limit (other than Products-completed Operations) | $5,000,000 |
| Products-Completed Operations Aggregate Limit | $4,000,000 |
| Each Occurrence Limit | $4,000,000 |
| Personal & Advertising Injury Limit - any one person or organization | $4,000,000 |
| Medical Expense Limit - any one person | $    5,000 |
| Damage to Premises Rented to You Limit - any one premises | $  500,000 |
| Legal Liability to Participants - per occurrence | $4,000,000 |
| Professional Liability - per wrongful act | $4,000,000 |

**Option 5:**

| | |
|---|---|
| General Aggregate Limit (other than Products-completed Operations) | $5,000,000 |
| Products-Completed Operations Aggregate Limit | $5,000,000 |
| Each Occurrence Limit | $5,000,000 |
| Personal & Advertising Injury Limit - any one person or organization | $5,000,000 |
| Medical Expense Limit - any one person | $    5,000 |
| Damage to Premises Rented to You Limit - any one premises | $  500,000 |
| Legal Liability to Participants - per occurrence | $5,000,000 |
| Professional Liability - per wrongful act | $5,000,000 |

# LIABILITY SCHEDULE AND PREMIUM RECAP

**POLICY NUMBER:** 6BMAS0000005070100

| LOC. NO | SUBLINE | CLASS CODE | * DESCRIPTION | **PREMIUM BASE ACT. EXPOSURE | | RATES | PREMIUMS |
|---------|---------|------------|---------------|----------|----------|-------|----------|
| | 347 | 40066 | Athletic Programs – other than not-for-profit Martial Arts Schools & Programs | | | | |
| | 347 | 40067 | Athletic Programs – not-for-profit Martial Arts Schools & Programs | | | | |
| | 347 | 40066 40067 | Athletic Programs Martial Arts | U | Per student / member | * As on file | As submitted |
| | 347 | 40066 40067 | Athletic Programs Non-registered member activity coverage | U | Per participant | * As on file | As submitted |
| | 347 | 40066 40067 | Athletic Programs Birthday Parties | U | Per party | * As on file | As submitted |
| | 347 | 40066 40067 | Athletic Programs Hosted Tournament – Under 50 non-member participants | U | Per tournament | * As on file | As submitted |
| | 347 | 40066 40067 | Athletic Programs Hosted Tournament – 51-100 non-member participants | U | Per tournament | * As on file | As submitted |
| | 347 | 40066 40067 | Athletic Programs Hosted Tournament – 101-500 non-member participants | U | Per tournament | * As on file | As submitted |
| | 347 | 40066 40067 | Athletic Programs Hosted Tournament – Over 500 non-member participants | U | Per non-member participant | * As on file | As submitted |
| | 347 | 40066 40067 | Athletic Programs - $100,000 Abuse, Molestation, Harassment or Sexual Conduct Defense Costs Reimbursement | U | Per location | $500.00 | As submitted |
| | | | * As on file with the company | | | | |
| | | | | | **TOTAL PREMIUMS** | | As submitted |

*SUBLINE KEY
332 - Liquor Liability
334 - Premises/Operations
335 - Owners/Contractors Protective or Principals Protective
336 - Products/Completed Operations
350 - Pollution Liability
345 - Other Composite Rated/Premises/Operations ONLY
346 - Other Composite Rated/Product/Completed Operations ONLY
347 - Other Composite Rated - BOTH Premises/Operations AND Product/Completed Operations or type in subline

**PREMIUM/EXPOSURE BASE KEY
A - Area (per 1,000 square feet)
C - Total Cost (per $1,000)
E - Admissions (per head)
M - Admissions (per 1,000)
P - Payroll (per $1,000)
R - Receipts (per $100)
S - Gross Sales (per $1,000)
U - Units (per unit) or type in base

12/02

EX. 2 - 54

POLICY NUMBER:  6BMAS0O00005070100

**COMMERCIAL GENERAL LIABILITY**
**CG 00 01 12 04**

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V –Definitions.

## SECTION I – COVERAGES

## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1.  Insuring Agreement**

    **a.**  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        **(1)**  The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

        **(2)**  Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

    **b.**  This insurance applies to "bodily injury" and "property damage" only if:

        **(1)**  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        **(2)**  The "bodily injury" or "property damage" occurs during the policy period; and

        **(3)**  Prior to the policy period, no insured listed under Paragraph **1.** of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

    **c.**  "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

    **d.**  "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

        **(1)**  Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

        **(2)**  Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

        **(3)**  Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

© ISO Properties, Inc., 2003

EX. 2 - 55

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

2. **Exclusions**

This insurance does not apply to:

a. **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

c. **Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

d. **Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e. **Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© ISO Properties, Inc., 2003

EX. 2 - 56

**f.  Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

© ISO Properties, Inc., 2003

EX. 2 - 57

(2) Any loss, cost or expense arising out of any:

    (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

    (b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

    (a) Less than 26 feet long; and

    (b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of:

    (a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

    (b) the operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

© ISO Properties, Inc., 2003

EX. 2 - 58

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

© ISO Properties, Inc., 2003

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

2. **Exclusions**

This insurance does not apply to:

a. **Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

b. **Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

c. **Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

d. **Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

e. **Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

f. **Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

g. **Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

h. **Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

i. **Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

j. **Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of web-sites for others; or

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

k. **Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

l. **Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

EX. 2 - 60

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

(1) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## COVERAGE C MEDICAL PAYMENTS

**1. Insuring Agreement**

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

**a. Any insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage **A**.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a. All expenses we incur.

b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

© ISO Properties, Inc., 2003

EX. 2 - 61

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All costs taxed against the insured in the "suit".

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section I – Coverage A – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

**SECTION II – WHO IS AN INSURED**

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

© ISO Properties, Inc., 2003

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

**2.** Each of the following is also an insured:

**a.** Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

**(1)** "Bodily injury" or "personal and advertising injury":

**(a)** To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

**(b)** To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **(1)(a)** above;

**(c)** For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs **(1)(a)** or **(b)** above; or

**(d)** Arising out of his or her providing or failing to provide professional health care services.

**(2)** "Property damage" to property:

**(a)** Owned, occupied or used by,

**(b)** Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

**b.** Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

**c.** Any person or organization having proper temporary custody of your property if you die, but only:

**(1)** With respect to liability arising out of the maintenance or use of that property; and

**(2)** Until your legal representative has been appointed.

**d.** Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

**3.** Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

**a.** Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

**b.** Coverage **A** does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage **B** does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

**1.** The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.** Insureds;

**b.** Claims made or "suits" brought; or

**c.** Persons or organizations making claims or bringing "suits".

 © ISO Properties, Inc., 2003

EX. 2 - 63

2.  The General Aggregate Limit is the most we will pay for the sum of:

   a.  Medical expenses under Coverage **C**;

   b.  Damages under Coverage **A**, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c.  Damages under Coverage **B**.

3.  The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4.  Subject to **2.** above, the Personal and Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5.  Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a.  Damages under Coverage **A**; and

   b.  Medical expenses under Coverage **C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6.  Subject to **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7.  Subject to **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

**1.  Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2.  Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a.  You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1)  How, when and where the "occurrence" or offense took place;

      (2)  The names and addresses of any injured persons and witnesses; and

      (3)  The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b.  If a claim is made or "suit" is brought against any insured, you must:

      (1)  Immediately record the specifics of the claim or "suit" and the date received; and

      (2)  Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c.  You and any other involved insured must:

      (1)  Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

      (2)  Authorize us to obtain records and other information;

      (3)  Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

      (4)  Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   d.  No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3.  Legal Action Against Us**

   No person or organization has a right under this Coverage Part:

   a.  To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

EX. 2 - 64

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

### 4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

a. **Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

b. **Excess Insurance**

This insurance is excess over:

(1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** – Coverage **A** – Bodily Injury And Property Damage Liability.

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

c. **Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

### 5. Premium Audit

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

EX. 2 - 65

6.  **Representations**

By accepting this policy, you agree:

a.  The statements in the Declarations are accurate and complete;

b.  Those statements are based upon representations you made to us; and

c.  We have issued this policy in reliance upon your representations.

7.  **Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a.  As if each Named Insured were the only Named Insured; and

b.  Separately to each insured against whom claim is made or "suit" is brought.

8.  **Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

9.  **When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V – DEFINITIONS

1.  "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

a.  Notices that are published include material placed on the Internet or on similar electronic means of communication; and

b.  Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2.  "Auto" means:

a.  A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

b.  Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

3.  "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4.  "Coverage territory" means:

a.  The United States of America (including its territories and possessions), Puerto Rico and Canada;

b.  International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in **a.** above; or

c.  All other parts of the world if the injury or damage arises out of:

(1)  Goods or products made or sold by you in the territory described in **a.** above;

(2)  The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; or

(3)  "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

5.  "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6.  "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7.  "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8.  "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a.  It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b.  You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

a.  The repair, replacement, adjustment or removal of "your product" or "your work"; or

© ISO Properties, Inc., 2003

**b.** Your fulfilling the terms of the contract or agreement.

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

© ISO Properties, Inc., 2003

EX. 2 - 67

(1) Equipment designed primarily for:

   (a) Snow removal;

   (b) Road maintenance, but not construction or resurfacing; or

   (c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

  **a.** False arrest, detention or imprisonment;

  **b.** Malicious prosecution;

  **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

  **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

  **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

  **f.** The use of another's advertising idea in your "advertisement"; or

  **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

**15.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.** "Products-completed operations hazard":

  **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

    (1) Products that are still in your physical possession; or

    (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

      (a) When all of the work called for in your contract has been completed.

      (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

      (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

    Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

  **b.** Does not include "bodily injury" or "property damage" arising out of:

    (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

    (2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

    (3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

  **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

© ISO Properties, Inc., 2003

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

**a.** Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

(2) The providing of or failure to provide warnings or instructions.

**POLICY NUMBER:** 6BMAS0000005070100

# ASBESTOS LIABILITY EXCLUSION

The following exclusion is added:

"This insurance does not apply to bodily injury, property damage, personal injury or advertising injury arising out of asbestos or goods containing asbestos or real property containing asbestos.  This exclusion applies whether the bodily injury, property damage, personal injury or advertising injury is caused solely by asbestos or goods containing asbestos or real property containing asbestos, or is caused by other means in conjunction or separately with asbestos or goods containing asbestos or real property containing asbestos."

CAS3880 (08/97)

POLICY NUMBER:  6BMAS0000005070100

---

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## LEAD EXCLUSION ENDORSEMENT

---

This endorsement modifies insurance provided under the following:

     COMMERCIAL GENERAL LIABILITY COVERAGE PART
     COMMERCIAL AUTO COVERAGE PART
     BUSINESSOWNERS POLICY
     CONTRACTORS POLICY
     FARM COVERAGE PART
     SCHOOL DISTRICT LIABILITY POLICY
     COMMERCIAL UMBRELLA LIABILITY POLICY
     BUSINESS PROVIDER POLICY
     PROFESSIONAL LIABILITY POLICY
     NATIONWIDE RURAL ELECTRIC COMMERCIAL ACCOUNT POLICY

This insurance does not apply to:

1.  "Bodily Injury," "property damage," "personal injury," "advertising injury" or medical payments arising out of or relating to the exposure to lead or any claims from lead; including but not limited to the ingestion, inhalation or absorption of lead in any form.

2.  Any loss, cost or expense rising out of any request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of lead; or

3.  Any loss, cost or expenses arising out of any claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing or in any way responding to, or assessing the effects of lead.

For purposes of this endorsement, lead means lead and lead compounds in any form.

POLICY NUMBER: 6BMAS0000005070100

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# COMMERCIAL GENERAL LIABILITY BROADENING ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

The following is a summary of the Limits of Insurance and coverage provided by this endorsement. These coverages apply separately to each of your premises described in the Declarations.

If you purchase additional limits for any of these coverages at a specified location, the limits shown below will apply in excess of the insurance purchased separately. We will not pay more under this endorsement than the Limits of Insurance shown below under the Summary of Additional Coverages.

### Summary of Additional Coverages

| LIMITS OF INSURANCE | SUBJECTS OF INSURANCE |
|---|---|
| $ 300,000   per occurrence | Damage to Premises Rented to You |
| $ 25,000 | Emergency Real Estate Consultant Fee |
| $ 25,000 | Identity Theft Exposure |
| $ 50,000 | Key Individual Replacement Cost |
| $ 2,500 | Lease Cancellation Moving Expense |
| $ 2,500 | Supplementary Payments—Bail Bonds |
| $ 500   per day | Supplementary Payments—Loss of Earnings |
| $ 25,000 | Temporary Meeting Space |
| $ 25,000 | Terrorism Travel Reimbursement |
| $ 25,000 | Workplace Violence Counseling |

I.  The Commercial General Liability Coverage Part is amended as follows:

    **A.** The following replaces **SECTION I—COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, a.:**

        **a.  Expected or Intended Injury**

        "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to

        "bodily injury" or "property damage resulting from the use of reasonable force to protect persons or property.

    **B.** The following replaces **SECTION I—COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, g.(2):**

        **(2)** A watercraft you do not own that is:

            **(a)** Less than fifty-eight (58) feet long; and

            **(b)** Not being used to carry persons or property for a charge;

    **C.** The following replaces **SECTION I—COVERAGES, COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions, b.** and **c.:**

SRPG115 (03-2010)                    Page 1 of 4

EX. 2 - 72

b. Material Published With Knowledge of Falsity

"Personal and advertising injury" arising out of publication of material, including, but not limited to, oral, written, televised, videotaped or electronically transmitted publication of material, if done at the direction of the insured with knowledge of its falsity;

c. Material Published Prior To Policy Period

"Personal and advertising injury" arising out of publication of material, including, but not limited to, oral, written, televised, videotaped or electronically transmitted publication of material, whose first publication took place before the beginning of the policy period;

**D.** The following replaces **SUPPLEMENTARY PAYMENTS—COVERAGES A.** and **B., 1.b.** and **d.:**

b. Up to $2,500 for the cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit," including actual loss of earnings up to $500 a day because of time off from work.

**E.** The following replaces **SECTION II—WHO IS AN INSURED, 4.a.:**

a. Coverage under this provision is afforded only until the one hundred eightieth (180th) day after you acquire or form the organization or the end of the policy period, whichever is earlier.

**F.** The following are added to **SECTION IV— COMMERCIAL GENERAL LIABILITY CONDITIONS, 2.**

**Duties In The Event of Occurrence, Offense, Claim or Suit:**

e. Knowledge of the "occurrence," offense, claim or "suit" by the agent, servant, or "employee" of an insured shall not in itself constitute your knowledge unless one of your officers, manager or partners has received notice of the "occurrence," offense, claim or "suit."

f. Failure by the agent, servant or "employee" of an insured (other than an officer, manager or partner) to notify us of an "occurrence" shall not constitute a failure to comply with Items **a.** and **b.** of this condition.

**G.** The following are added to **SECTION IV—COMMERCIAL GENERAL LIABILITY CONDITIONS:**

**10. Unintentional Error or Omission**

Any unintentional error or omission in the description of or failure to completely describe, any premises or operations intended to be covered by this Coverage Part will not invalidate or affect coverage for those premises or operations. However, you must report such error or omission to us as soon as practicable after its discovery.

**11. Waiver of Right of Recovery**

We waive all rights of recovery when you have agreed to waive your rights of recovery when required by a written contract. However, this provision only applies if the written contract was executed prior to the date of the "occurrence."

**H.** The following replaces **SECTION V—DEFINITIONS, 3. and 14:**

**3.** "Bodily Injury" means bodily injury, sickness or disease sustained by a person. This includes mental anguish, mental injury, shock, fright, humiliation, emotional distress or death resulting from bodily injury, sickness or disease.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury," arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution or abuse of process;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

EX. 2 - 73

d. Any publication of material including, but not limited to oral, written, televised, videotaped or electronically transmitted publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Any publication of material, including but not limited to oral, written, televised, videotaped or electronically transmitted publication of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement;" or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement."

I. **Broadened Coverage—Damage to Premises Rented to You**

1. The word **fire** is replaced with the phrase **fire, lightning, explosion, smoke and leaks from sprinklers** where it appears in:

   a. **SECTION 1, Coverage A., 2. Exclusions, j. Damage to Property;**

   b. **SECTION 1, Coverage A., 2. Exclusions, last paragraph;**

   c. **SECTION III, Limits of Insurance, Item 6.;**

   d. **SECTION IV, Conditions, 4. Other Insurance, Item b.(1)(a)(ii).**

2. The limit of Insurance applicable to Damage to Premises Rented to You is $300,000 unless a higher limit is specified on the Declarations.

II. The following are **Additional Coverages:**

**Emergency Real Estate Consultant Fee ($25,000 Aggregate)**

We will reimburse you up to $25,000 in any one policy year for any realtor's fee or real estate consultant's fee required by the Named Insured's need to relocate due to the imminent danger of loss of life or harm to occupants of the Named Insured's premises scheduled on the Declarations.

**Identity Theft Expense**

(1) **Coverage**

We will pay for reimbursement of any present director or officer of the Named Insured for expenses incurred as the direct result of any "Identity Theft" occurring, discovered and reported during the policy period.

(2) **Limit of Insurance**

We will pay up to $25,000 as a Limit of Insurance under this **Additional Coverage—Identity Theft Expense.**

(3) "Identity Theft" means the act of knowingly transferring or using, without lawful authorization, the identity of any officer or director of the Named Insured with the intent to commit, or to aid or abet another to commit, any unlawful activity that constitutes a violation of federal law or a felony under any applicable state or local law.

(4) "Identity Theft Expenses" means:

   (a) Costs of notarizing documents required by financial institution or similar creditors as testaments to fraud.

   (b) Costs for certified mail to law enforcement agencies, credit agencies, financial institutions or similar creditors.

   (c) Loan application fees for reapplying for loan(s) when the original application is rejected solely because of incorrect credit information.

**Key Individual Replacement Expenses**

We will pay up to $50,000 as a Limit of Insurance per policy year under this **Additional Coverage—Key Individual Replacement Expenses** for expenses incurred by the Named Insured to replace the Chief Executive Officer or Executive Director if that officer or director suffers an injury during the policy period which results in the loss of life during the policy period.

"Key Individual Replacement Expenses" means:

(1) Costs of advertising the employment position opening;

(2) Travel, lodging, meal and entertainment expenses incurred in interviewing job applicants for the employment position opening; and

EX. 2 - 74

(3) Miscellaneous extra expenses incurred in finding, interviewing and negotiating with the job applicants, including, but not limited to, overtime pay, costs to verify the background and references of the applicants and legal expenses incurred to draw up employment contracts.

### Lease Cancellation Moving Expenses

We will reimburse the Named Insured up to $2,500 for moving expenses incurred when moving is made necessary by the cancellation of a lease at premises occupied by the Named Insured and described in the Declarations.

### Temporary Meeting Space

We will reimburse you up to $25,000 as a Limit of Insurance in any one policy year under this Additional Coverage—Temporary Meeting Space for expenses incurred due to the temporary unavailability of the Named Insured's primary office space due to the failure of a climate control system, or leakage of a hot water heater during the policy period. Expenses will be reimbursed only for the rental of temporary meeting space required for meeting with parties who are not insured under this Policy. No deductible applies to this **Additional Coverage—Temporary Meeting Space.**

### Terrorism Travel Reimbursement

We will reimburse you up to $25,000 as a Limit of Insurance in any one policy year for "Emergency Travel Expenses" incurred by a director or officer of the Named Insured due to the occurrence of a "Certified Act of Terrorism."

"Emergency Travel Expenses" are additional travel expenses incurred to reschedule comparable transport due to the cancellation of scheduled transport within forty-eight (48) hours of a "Certified Act of Terrorism."

"Certified Act of Terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in that Act for a "Certified Act of Terrorism" include the following:

   a. the act resulted in aggregate losses in excess of $5 million; and

   b. the act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the Policy or affect the conduct of the United States Government by coercion.

### Workplace Violence Counseling

We will reimburse you up to $25,000 as a Limit of Insurance in any one policy year under this **Additional Coverage—Workplace Violence Counseling** for expenses you incur for the counseling of employees of the Named Insured when that counseling is necessary due to an incident of "Workplace Violence."

"Workplace Violence" means the intentional use of, or threat to use deadly force by any person with the intent to cause harm and that results in bodily injury or death of a person while on the Named Insured's premises.

EX. 2 - 75

**POLICY NUMBER:**  6BMAS0000005070100                              COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSUREDS
## OWNERS, MANAGERS AND/OR LESSORS OF PREMISES, SPONSORS OR CO-PROMOTERS

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Is amended to include as an additional Insured any person or organization of the types designated below, but only with respect to liability caused in whole or in part by your operations:

    1.  Owners, managers and/or lessors of the premises leased, rented, or loaned to you, subject to the following additional exclusions:

        A.  This insurance applies only to an occurrence which takes place while you are a tenant in the premises;

        B.  This insurance does not apply to Bodily Injury or Property Damage resulting from structural alterations, new construction or demolition operations performed by or on behalf of the owner, manager and/or lessor of the premises;

        C.  This insurance does not apply to any design defect or structural maintenance of the premises by or on behalf of the owner, manager and/or lessor.

    2.  Sponsors.

    3.  Co-Promoters.

With respect to any additional insured included under this policy, this insurance does not apply to the sole negligence of such additional insured.  Further, we will have no duty to defend such additional insured against any suit to which this insurance does not apply.

SRPG157                                                                                                      09/08

**POLICY NUMBER:** 6BMAS0000005070100

# ABUSE, MOLESTATION, HARASSMENT OR SEXUAL CONDUCT
# DEFENSE COSTS REIMBURSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

This insurance does not apply to:

(a) The actual, threatened, or alleged abuse, molestation, harassment or sexual conduct by anyone of any person in your care, custody and control; or

(b) The negligent:

      (i) Employment;

      (ii) Investigation;

      (iii) Supervision, hiring or training;

      (iv) Reporting to the proper authorities, or failure to so report,

      (v) Retention; or

      (vi) Referral

of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by (a) above.

This endorsement does not change any other provision of this policy.

Notwithstanding the foregoing, the Company will reimburse you for "defense costs" incurred by you which result from a claim subject to (a) and (b) above. We have no obligation or duty to defend against any claim arising out of (a) and (b) above.

In order to be reimbursed for your "defense costs" you must:

    a.  See to it that we receive written notice of the claim or "suit" as soon as practicable; and

    b.  Submit your "defense costs" for reimbursement with sufficient detail to verify compliance with the definition of "defense costs."

The most we will reimburse you for "defense costs" is $100,000.

"Defense costs" are defined as all reasonable fees and expenses including cost of litigation, and claim investigation or legal expenses, resulting from the investigation, adjustment, defense, or appeal of a claim or potential claim, incurred by you. In addition, we will reimburse all reasonable costs that you incur, including up to $250 per day for actual loss of earnings for up to a maximum of 20 days.

"Defense costs" do not include:

    a.  Prejudgment and postjudgment interest on any judgment.

    b.  Any obligation to apply for, furnish or provide collateral for any appeal bonds or bonds to release property that are being used to secure a legal obligation.

    c.  Any fees and expenses incurred by you prior to the date any claim is first reported to us in writing.

Premium charge for this endorsement: $500.00 per location

EX. 2 - 77

POLICY NUMBER:  6BMAS0000005070100

INTERLINE
IL 12 01 11 85

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# POLICY CHANGES

Policy Change
Number  1

| POLICY NUMBER<br>6BMAS0000005070100 | POLICY CHANGES EFFECTIVE<br>05/01/11 | COMPANY<br>Nationwide Mutual Insurance Company |
|---|---|---|
| NAMED INSURED<br>Sports, Leisure and Entertainment RPG<br>DBA: Martial Arts Schools & Programs | | AUTHORIZED REPRESENTATIVE<br>K&K Insurance Group, Inc. |

COVERAGE PARTS AFFECTED

   COMMERCIAL GENERAL LIABILITY COVERAGE

CHANGES

Coverage provided by form SRPG2146, Abuse, Molestation, Harassment or Sexual Conduct Defense Cost Reimbursement, applies only to those enrolled members who apply and pay the appropriate premium charge for the optional Abuse, Molestation, Harassment or Sexual Conduct Defense Cost Reimbursement.

If this optional additional coverage is applied for, approved and paid for by the enrolled member, form SRPG8015, Abuse, Molestation, Harassment or Sexual Conduct Exclusion is removed for the enrolled member.

_____
Authorized Representative Signature

IL 12 01 11 85

Copyright, Insurance Services Office, Inc.,  1983
Copyright, ISO Commercial Risk Services, Inc.,   1983

Page 1 of 1

EX. 2 - 78

**POLICY NUMBER:** 6BMAS0000005070100                    COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## ABUSE, MOLESTATION, HARASSMENT OR SEXUAL CONDUCT EXCLUSION

This insurance does not apply to:

(a)  the actual, threatened or alleged abuse, molestation, harassment or sexual conduct by anyone of any person in your care, custody and control; or

(b)  the negligent:

       (i)   employment,

       (ii)  investigation;

       (iii) supervision, hiring or training;

       (iv) reporting to the proper authorities, or failure to so report;

       (v)  retention; or

       (vi) referral

of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by (a) above.

This endorsement does not change any other provision of the policy.

SRPG8015                                                        09/08

EX. 2 - 79

**POLICY NUMBER:** 6BMAS0000005070100

**COMMERCIAL GENERAL LIABILITY**

### THIS ENDORSEMENT CHANGES THE POLICY.   PLEASE READ IT CAREFULLY.

## EXCLUSION - DESIGNATED OPERATIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

### SCHEDULE

**Description of Designated Operation(s):**

1) Acupuncture and Acupressure;
2) The use of bladed weapons;
3) The sale or distribution of Herbal, Medicinal and/or Nutritional products;
4) Boxing (contact/sparring);
5) Wrestling;
6) Training programs for law enforcement, military or public safety personnel;
7) Vertical climbing devices or equipment used for climbing (either permanently affixed or temporarily erected) exceeding 10 feet with no safety harness system (unless reviewed and approved by the program administrator);
8) Non-registered participants at events/tournaments hosted by the named insured;
9) Tournaments or competitions involving the following styles:  muay thai/thai boxing; kali/escrima; savate; sayoc kali; dim mak; haganah; and full contact mixed martial arts, including but not limited to: cage events, extreme and ultimate fighting.

**Specified Location (If Applicable):**

This insurance does not apply to the operations described in the Schedule of this endorsement, regardless of whether such operations are conducted by you or on your behalf or whether the operations are conducted for yourself or for others.

Unless a "location" is specified in the Schedule, this exclusion applies regardless of where such operations are conducted by you or on your behalf.  If a specific "location" is designated in the Schedule of this endorsement, this exclusion applies only to the described operations conducted at that "location".

For the purpose of this endorsement, "location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, water way or right-of-way of a railroad.

**SRPG26055**

Includes copyrighted material of
Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1994.

09/08

EX. 2 - 80

**POLICY NUMBER:** 6BMAS0000005070100                    COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## COMMUNICABLE DISEASE EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

This insurance does not apply to any loss, claim or "suit" caused or alleged to have been caused by a communicable disease.

Communicable disease, as used in this endorsement, shall mean any infectious disease, including but not limited to, diseases transmitted by bacteria, viruses, fungi, protozoa, a combination of the foregoing, or unknown causes.

SRPG26072                                                                                          09/08

**POLICY NUMBER:** 6BMAS0000005070100

**COMMERCIAL GENERAL LIABILITY**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## FIREWORKS EXCLUSION

This endorsement modifies the insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

This insurance does not apply to any loss, claim or "suit" arising out of fireworks.

For purposes of this endorsement, fireworks means any display of explosive or burning devices, material, or pyrotechnics.

SRPG26117

09/08

POLICY NUMBER:  6BMAS0000005070100                                          GENERAL LIABILITY

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION -- SPORTS/LEISURE/ENTERTAINMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

This insurance does not apply to:

**Aircraft/Hot Air Balloon**

The ownership, operation, maintenance, use, loading, or unloading of any flying craft or vehicle, including, but not limited to, any aircraft, hot air balloon, glider, parachute, helicopter, missile or spacecraft.

**Airport**

The ownership, operation, maintenance or use of any airfield or airport facility or premises.

**Amusement Devices**

The ownership, operation, maintenance or use of:  any mechanical or non-mechanical ride, slide, or water slide, any inflatable recreational device, any bungee operation or equipment, any vertical device or equipment used for climbing- either permanently affixed or temporarily erected, or dunk tank.

Amusement devices do not include any video or computer games.

**Animals**

1.  Injury or death to any animal.
2.  Injury, death or property damage caused by any animal owned, rented or hired by you.

**Haunted Attractions**

The ownership, operation, maintenance or use of any haunted attractions.

**Performer**

Injury or death to any performer or entertainer during any activity, event or exhibition including but not limited to any stunt, concert, show or theatrical event.

**Rodeo**

Any rodeo activity, including, but not limited to, bronco or bull riding, steer roping, team roping, barrel racing or horseback riding.

**Saddle Animal**

The ownership, operation, maintenance, use, loading or unloading of any saddle animal, including, but not limited to, riding on any saddle animal or riding on any vehicle which is drawn or powered by any animal.

**Snowmobile**

The ownership, operation, maintenance, use, loading or unloading of any snowmobile.

SRPG26131                                                                                    09/08

**POLICY NUMBER:** 6BMAS0000005070100

**INTERLINE**
**IL 12 01 11 85**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# POLICY CHANGES

Policy Change
Number  2

| POLICY NUMBER<br>6BMAS0000005070100 | POLICY CHANGES EFFECTIVE<br>05/01/11 | COMPANY<br>Nationwide Mutual Insurance Company |
|---|---|---|
| NAMED INSURED<br>Sports, Leisure and Entertainment RPG<br>DBA: Martial Arts Schools & Programs | | AUTHORIZED REPRESENTATIVE<br>K&K Insurance Group, Inc. |

COVERAGE PARTS AFFECTED

   COMMERCIAL GENERAL LIABILITY COVERAGE

CHANGES

Form SRPG26131, Exclusion – Sports/Leisure/Entertainment, Amusement Devices and Performer, is amended as follows:

**Amusement Devices**
The ownership, operation, maintenance or use of: any mechanical or non-mechanical ride, slide, or water slide, any inflatable recreational device, any bungee operation or equipment, or dunk tank.

Amusement devices do not include any video or computer games or any device that is specifically designed for the training or instruction of the activity for which you are enrolled.

**Performer**
Injury or death to any performer or entertainer during any activity, event or exhibition including but not limited to any stunt, concert, show or theatrical event.  This exclusion does not apply to participants in any activity, event or exhibition that are part of the designated operations for which you are enrolled.

Authorized Representative Signature

Copyright, Insurance Services Office, Inc.,  1983
Copyright, ISO Commercial Risk Services, Inc.,  1983

EX. 2 - 84

POLICY NUMBER: 6BMAS0000005070100         **COMMERCIAL GENERAL LIABILITY**

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## LEGAL LIABILITY TO PARTICIPANTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**A.** Additional Exclusions.

1. SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, The following is added:

    q. Participants

    "Bodily Injury" to a "participant"

**B.** SECTION I – COVERAGES, The following is added:

COVERAGE D - LIABILITY TO "PARTICIPANTS"

1. Insuring Agreement.

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" to any "participant". We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

    But:

    (1) The amount we will pay for damages is limited as described in Section C - Limits of Insurance in this endorsement; and

    (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements.

    b. This insurance applies to "bodily injury" only if:

    (1) The "bodily injury" is caused by an "occurrence" that takes place in the "coverage territory"; and

    (2) The "bodily injury" occurs during the policy period.

2. Exclusions.

    This insurance does not apply to:

    a. "Bodily injury" that is excluded under SECTION I - COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions. Paragraphs a., b., c., d., e., f., g., h., i., and o.

**SUPPLEMENTARY PAYMENTS – COVERAGES A & B is amended to also apply to Coverage D.**

EX. 2 - 85

**C.** Limits of Insurance.

    **1.** SECTION III--LIMITS OF INSURANCE, The following is added:

        **d.** Damages under Coverage D.

    **2.** The following is added to SECTION III--LIMITS OF INSURANCE:

        **8.** Subject to **2.** above, the Liability to Participants Limit shown in the Declarations is the most we will pay for the sum of all damages under Coverage D because of all "bodily injury" to "participants" arising out of any one "occurrence".

    **D.** SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS, 4. Other Insurance is amended to apply to Coverage D also.

**D.** SECTION V – DEFINITIONS, The following is added:

    **a.** "Participant" means

    a person practicing, instructing, or participating in any physical exercises or games, sports, or athletic contests, or any person engaged in the activities of your day camp operations.

EX. 2 - 86

POLICY NUMBER:  6BMAS0000005070100

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## AMENDMENT OF LIMITS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

The Limits of Insurance shown in the Declarations Page, or wherever they may appear, apply separately to each enrolled member.

The Limits of Insurance do not apply separately to the following:

The individual persons, subsidiaries, affiliates or other entities that are a part of the enrolled member.

If more than one policy or certificate, issued to the same enrolled member, could apply to the same occurrence the most we will pay for that occurrence is the highest limit of liability and aggregate limit of liability on any one policy or certificate issued to that enrolled member.

SRPG26147CG

09/08

**POLICY NUMBER:** 6BMAS0000005070100                     COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LIMITATION OF COVERAGE TO DESIGNATED PREMISES, ACTIVITIES OR OPERATIONS

This endorsement modifies insurance provided under the following:

   ALL LIABILITY COVERAGES

This insurance applies only to:

1.   The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or

2.   The activities or operations shown in the Schedule.

SCHEDULE

Premises:

Activities or Operations:

For those schools, organizations and programs reported to the company, covered operations consists of premises, operations and activities involving registered participants of those activity(s) under your direct supervision or organized by you, which have been reported, paid for and approved by the company along with any ancillary event or activity held directly with the activity(s) at your location(s) or at approved off-site locations on your behalf.

In addition, coverage can also be considered for birthday party(s) supervised by you and related to the above described operations and activities.

Non-rostered participants participating in hosted tournaments by the insured are included, if reported, approved and the appropriate premium has been paid prior to the event.

SRPG26154                                                                          09/08

POLICY NUMBER:  6BMAS0000005070100

**INTERLINE**
**IL 12 01 11 85**

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# POLICY CHANGES

Policy Change
Number  3

| POLICY NUMBER<br>6BMAS0000005070100 | POLICY CHANGES EFFECTIVE<br>05/01/11 | COMPANY<br>Nationwide Mutual Insurance Company |
|---|---|---|
| NAMED INSURED<br>Sports, Leisure and Entertainment RPG<br>DBA: Martial Arts Schools & Programs | | AUTHORIZED REPRESENTATIVE<br>K&K Insurance Group, Inc. |
| COVERAGE PARTS AFFECTED<br>  COMMERCIAL GENERAL LIABILITY COVERAGE | | |

| CHANGES |
|---|
| Form SRPG26503(09/08), Medical Payments for Participants, does not extend to non-rostered participants/members participating in your hosted tournament. |

Authorized Representative Signature

IL 12 01 11 85

Copyright, Insurance Services Office, Inc.,  1983
Copyright, ISO Commercial Risk Services, Inc.,  1983

Page 1 of 1

EX. 2 - 89

POLICY NUMBER:  6BMAS0000005070100 **COMMERCIAL GENERAL LIABILITY**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## MEDICAL PAYMENTS FOR PARTICIPANTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**A.** Additional Insuring Agreement

The following is added to SECTION I - COVERAGES:

COVERAGE E - MEDICAL PAYMENTS FOR "PARTICIPANTS"

1. Insuring Agreement

   a. We will pay medical expenses as described below for "bodily injury" to a "participant" caused by an accident provided that:

      (1) The accident takes place in the "coverage territory" and during the policy period;

      (2) The expenses are incurred within 104 weeks of the date of the accident; and

      (3) The injured "participant" submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

   b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

      (1) First aid administered at the time of an accident;

      (2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

      (3) Necessary ambulance, hospital, professional nursing and funeral services.

2. Exclusions

   a. This insurance does not apply to "bodily injury" that is excluded under SECTION I – COVERAGES, COVERAGE A., 2. Exclusions a. b. c. d. e. f. g. h. i. and o.

   b. This insurance does not apply to expenses for "bodily injury" that is excluded under SECTION I – COVERAGES, COVERAGE C., 2. Exclusions a. b. c. d. f. and g.

**B.** Limits of Insurance

1. SECTION III - LIMITS OF INSURANCE, 2. the following is added:

   e. Medical expenses under Coverage E.

2. Subject to 2. above, the Medical Payments for "Participants" Limit shown in the Declarations is the most we will pay under Coverage E for all medical expenses because of "bodily injury" sustained by any one "participant".

**C.** Conditions

With respect to Coverage E only, the following is added to SECTION IV, COMMERCIAL GENERAL LIABILITY, CONDITION 4. Other Insurance, b. Excess Insurance (1):

(e.) Any insurance which provides coverage for medical expenses including any ERISA governed plan.

EX. 2 - 90

**D.** Definitions

For purposes of this endorsement only:

**1.** "Participant" means a person injured while practicing, instructing or participating in any physical exercises or games, sports or athletic contests. Participant does not include any compensated member of your staff including employees or independent contractors.

**E.** Deductible

Our obligation under Coverage E - Medical Payments for Participants to pay medical expenses on your behalf applies only to amount of expenses in excess of any deductible amount stated in the Declarations

Covered medical expenses paid or payable under any other insurance policy or plan:

☒ -will reduce the deductible amount; or

☐ -will not reduce the deductible amount.

Includes copyrighted material of
Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1998.

POLICY NUMBER:  6BMAS0000005070100

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY

## PROFESSIONAL LIABILITY COVERAGE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**A. Insurance does not apply to Professional Liability under the COMMERCIAL GENERAL LIABILITY COVERAGE PART except as provided in Coverage G**

B.  The following is added to **SECTION I – COVERAGES:**

**COVERAGE G – PROFESSIONAL LIABILITY**

    **1.  INSURING AGREEMENT**

       a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of a "wrongful act" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "wrongful acts" to which this insurance does not apply. We may, at our discretion, investigate any "wrongful act" and settle any claim or "suit" that may result. But:

          (1) The amount we will pay for damages is limited as described in Section III – Limits of Insurance; and

          (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage G.

        No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments.

       b.  This insurance applies only if:

          (1) The "wrongful act" takes place within the "coverage territory" and during the policy period; and

          (2) The "wrongful act" occurs during the course and scope of duties by or on behalf of the named insured.

    **2.  EXCLUSIONS**

      This insurance does not apply to:

       a.  "Bodily injury" and "property damage" that is excluded under SECTION I - COVERAGES, COVERAGE A, 2. Exclusions, Paragraphs a., c., e., g., i., and o.

       b.  Any liability arising out of advising, providing or selling any type of dietary supplements, diet plans, dieting information, weight reduction plans or information, or prescription medications, including but not limited to, herbs, dietary pills, energy supplements, steroids, human growth hormones, or weight loss or gain substances.

       c.  Any liability arising out of providing or failing to provide professional health care services.

       d.  Any liability arising out of any dishonest, fraudulent or criminal act committed by any insured.

       e.  Any liability of others assumed by any insured under any contract or agreement.

       f.  Any claim or "suit" arising out of improper or inappropriate fees, dues or charges for the insured's services or membership.

       g.  Any non-compensatory amounts, including but not limited to, punitive, exemplary or multiplication of damages, fines, taxes or penalties, in whatever form assessed.

       h.  (1) Any injury, "damages" or loss which would not have occurred in whole or in part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time; or

Page 1 of 2
Includes copyrighted material of
Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1998.

(2) Any loss, cost or expense arising out of any:

    (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

    (b) Claim or "suit" by or on behalf of a governmental authority for any damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants."

i. Any claim or "suit" that arises out of alleged violations of any law that prohibits the monopolization or unlawful restraint of trade, business or profession.

j. Any obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law.

k. Any liability caused by, resulting from, or arising out of or in any way related to asbestos or lead.

l. Any liability to:

  (1) A person arising out of any:

    (a) Refusal to employ that person;

    (b) Termination of that person's employment; or

    (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, supervision, training, defamation, harassment, humiliation or discrimination directed at that person; or

  (2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

  (1) Whether the insured may be liable as an employer or in any other capacity; and

  (2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**3. SUPPLEMENTARY PAYMENTS - COVERAGES A AND B** is amended to also apply to Coverage G

C. For purposes of this endorsement, the following replaces **SECTION II - WHO IS AN INSURED:**

**SECTION II - WHO IS AN INSURED**

1. If you are an individual, you.

2. If you are an organization other than an individual, any individual conducting covered activities or operations on behalf of the named insured.

D. **SECTION III, LIMITS OF INSURANCE**, Item 2., the following is added:

2.d.    Damages under Coverage G.

E. For purposes of this endorsement, the following is added to **SECTION III - LIMITS OF INSURANCE:**

8. Subject to 2. above, the Coverage G Limit of Insurance-Per Wrongful Act limit shown in the Declarations is the most we will pay under Coverage G because of all damages arising out of any one "wrongful act".

F. **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS, 4. Other Insurance is amended to apply to Coverage G also.**

G. For purposes of this endorsement, the following are added to **SECTION V – DEFINITIONS:**

1. "Wrongful act" means any negligent act, negligent error, negligent omission, or negligent breach of duty in the discharge of covered activities or operations of the named insured.   Any negligent act, negligent error, negligent omission, or negligent breach of duty arising out of the same or related facts, circumstances, situations, transactions or events shall be deemed as arising out of the same "wrongful act".

Page 2 of 2
Includes copyrighted material of
Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1998.

POLICY NUMBER:  6BMAS0000005070100

COMMERCIAL GENERAL LIABILITY
CG 20 11 01 96

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – MANAGERS OR LESSORS OF PREMISES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**1.** Designation of Premises (Part Leased to You):
As Requested and Endorsed

**2.** Name of Person or Organization (Additional Insured):
As Requested and Endorsed

**3.** Additional Premium:    None

(If no entry appears above, the information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule and subject to the following additional exclusions:

This insurance does not apply to:

**1.** Any "occurrence" which takes place after you cease to be a tenant in that premises.

**2.** Structural alterations, new construction or demolition operations performed by or on behalf of the person or organization shown in the Schedule.

CG 20 11 01 96

Copyright, Insurance Services Office, Inc., 1994

Page 1 of 1

EX. 2 - 94

POLICY NUMBER:  6BMAS0000005070100

COMMERCIAL GENERAL LIABILITY
CG 20 26 07 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) |
|---|
| As Requested and Endorsed. |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf:

**A.** In the performance of your ongoing operations; or

**B.** In connection with your premises owned by or rented to you.

© ISO Properties, Inc., 2004

EX. 2 - 95

POLICY NUMBER:  6BMAS0000005070100

**COMMERCIAL GENERAL LIABILITY**
**CG 20 28 07 04**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED – LESSOR OF
# LEASED EQUIPMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

| Name Of Additional Insured Person(s) Or Organization(s) |
|---|
| As requested and endorsed. |
| |
| |
| |
| |
| |
| |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A. Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your maintenance, operation or use of equipment leased to you by such person(s) or organization(s).

**B.** With respect to the insurance afforded to these additional insureds, this insurance does not apply to any "occurrence" which takes place after the equipment lease expires.

© ISO Properties, Inc., 2004

EX. 2 - 96

POLICY NUMBER: 6BMAS0000005070100

COMMERCIAL GENERAL LIABILITY
CG 20 29 11 85

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED – GRANTOR OF FRANCHISE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

## SCHEDULE

**Name of Person or Organization:**
As requested and endorsed

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured the person(s) or organization(s) shown in the Schedule, but only with respect to their liability as grantor of a franchise to you.

Copyright, Insurance Services Office, Inc., 1984

EX. 2 - 97

POLICY NUMBER:  6BMASG000005070100

COMMERCIAL GENERAL LIABILITY
CG 21 47 07 98

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability:

This insurance does not apply to:

"Bodily injury" to:

(1) A person arising out of any:

(a) Refusal to employ that person;

(b) Termination of that person's employment; or

(c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

B. The following exclusion is added to Paragraph 2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

This insurance does not apply to:

"Personal and advertising injury" to:

(1) A person arising out of any:

(a) Refusal to employ that person;

(b) Termination of that person's employment; or

(c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Copyright, Insurance Services Office, Inc., 1997

EX. 2 - 98

POLICY NUMBER: 6BMAS0000005070100

COMMERCIAL GENERAL LIABILITY
CG 21 67 12 04

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. The following exclusion is added to Paragraph 2. Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability:

2. Exclusions

This insurance does not apply to:

**Fungi Or Bacteria**

a. "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

b. Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

B. The following exclusion is added to Paragraph 2. Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:

2. Exclusions

This insurance does not apply to:

**Fungi Or Bacteria**

a. "Personal and advertising injury" which would not have taken place, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury.

b. Any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

C. The following definition is added to the Definitions Section:

"Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

© ISO Properties, Inc., 2003

EX. 2 - 99

POLICY NUMBER: 6BMAS0000005070100

COMMERCIAL GENERAL LIABILITY
CG 21 70 01 08

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

© ISO Properties, Inc., 2007

EX. 2 - 100

POLICY NUMBER:  6BMAS0000005070100

COMMERCIAL GENERAL LIABILITY
CG 25 04 05 09

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# DESIGNATED LOCATION(S)
# GENERAL AGGREGATE LIMIT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

**Designated Location(s):**
Each enrolled member location on file with the company.

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

A. For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section I – Coverage A, and for all medical expenses caused by accidents under Section I – Coverage C, which can be attributed only to operations at a single designated "location" shown in the Schedule above:

  1. A separate Designated Location General Aggregate Limit applies to each designated "location", and that limit is equal to the amount of the General Aggregate Limit shown in the Declarations.

  2. The Designated Location General Aggregate Limit is the most we will pay for the sum of all damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard", and for medical expenses under Coverage C regardless of the number of:

    a. Insureds;

    b. Claims made or "suits" brought; or

    c. Persons or organizations making claims or bringing "suits".

  3. Any payments made under Coverage A for damages or under Coverage C for medical expenses shall reduce the Designated Location General Aggregate Limit for that designated "location". Such payments shall not reduce the General Aggregate Limit shown in the Declarations nor shall they reduce any other Designated Location General Aggregate Limit for any other designated "location" shown in the Schedule above.

  4. The limits shown in the Declarations for Each Occurrence, Damage To Premises Rented To You and Medical Expense continue to apply. However, instead of being subject to the General Aggregate Limit shown in the Declarations, such limits will be subject to the applicable Designated Location General Aggregate Limit.

CG 25 04 05 09

© Insurance Services Office, Inc., 2008

Page 1 of 2

EX. 2 - 101

B. For all sums which the insured becomes legally obligated to pay as damages caused by "occurrences" under Section I – Coverage A, and for all medical expenses caused by accidents under Section I – Coverage C, which cannot be attributed only to operations at a single designated "location" shown in the Schedule above:

1. Any payments made under Coverage A for damages or under Coverage C for medical expenses shall reduce the amount available under the General Aggregate Limit or the Products-completed Operations Aggregate Limit, whichever is applicable; and

2. Such payments shall not reduce any Designated Location General Aggregate Limit.

C. When coverage for liability arising out of the "products-completed operations hazard" is provided, any payments for damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard" will reduce the Products-completed Operations Aggregate Limit, and not reduce the General Aggregate Limit nor the Designated Location General Aggregate Limit.

D. For the purposes of this endorsement, the Definitions Section is amended by the addition of the following definition:

"Location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

E. The provisions of Section III – Limits Of Insurance not otherwise modified by this endorsement shall continue to apply as stipulated.

© Insurance Services Office, Inc., 2008

EX. 2 - 102



Policy Number:  6BMAS0000005070100

Hired Auto and Employers'
Nonownership Liability
Coverage Declarations

ITEM ONE - NAMED INSURED AND ADDRESS
Sports, Leisure and Entertainment RPG
DBA: Martial Arts Schools & Programs
1712 Magnavox Way
Fort Wayne, IN 46804

FORM OF BUSINESS:   ☐ Corporation   ☐ Partnership   ☐ Individual   ☐ Limited Liability Company   ☒ Other

ITEM TWO - SCHEDULE OF COVERAGE

This insurance provides only those coverages where the box next to the coverage is marked and a premium is charged.
The limit of liability shown is the most we will pay for any one "accident".

| | COVERAGES | LIMIT OF LIABILITY | CLASS CODE | ESTIMATED COST OF HIRE/STATE | RATES EACH $100 COST OF HIRE | LIABILITY PREMIUM |
|---|---|---|---|---|---|---|
| X | Hired "Auto" Liability | See SRPG17348-3 | 6619 | If any/various | incl. | INCLUDED |
| X | Employer's Nonownership Liability | See SRPG17348-3 | | Total number of employees  0-25 | | INCLUDED |
| | | | | PREMIUM FOR ENDORSEMENTS | | |
| | | | | ESTIMATED TOTAL PREMIUM | | INCLUDED |

ENDORSEMENTS ATTACHED TO THIS COVERAGE
SRPG17348(12/02)        SRPG17865YS(09/04)        SRPG26147NOHA(09/08)

SRPG 17864            Copyright, Insurance Services Office, Inc., 1985            12/02

EX. 2 - 103

POLICY NUMBER:   6BMAS0000005070100                          DECLARATIONS EXTENSION

This coverage does not apply in the state of Hawaii.

As respects form SRPG17864, Hired Auto and Employers' Nonownership Liability Coverage Declarations, the following limits apply.  The same option/limit must apply for this coverage as purchased for your commercial general liability coverage.

<u>Limits Of Insurance Options:</u>
$1,000,000 - Hired "Auto" Liability
$1,000,000 - Employers' Nonownership Liability per "Accident"

$2,000,000 - Hired "Auto" Liability
$2,000,000 - Employers' Nonownership Liability per "Accident"

$3,000,000 - Hired "Auto" Liability
$3,000,000 - Employers' Nonownership Liability per "Accident"

$4,000,000 - Hired "Auto" Liability
$4,000,000 - Employers' Nonownership Liability per "Accident"

$5,000,000 - Hired "Auto" Liability
$5,000,000 - Employers' Nonownership Liability per "Accident"

Schedule 3

EX. 2 - 104

POLICY NUMBER:  6BMAS0000005070100

# Hired Auto and Employers' Nonownership Liability Coverage Part

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties, and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the named insured shown in the declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section IV - Definitions.

## SECTION I - COVERED AUTOS

Item Two of the declarations shows the type of "autos" that are covered "autos". If the applicable box is marked and a premium is shown for the coverage, the following types of "autos" are covered "autos".

DESCRIPTION OF COVERED AUTOS

HIRED "AUTOS". Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent or borrow from any of your employees or partners or members of their households.

NONOWNED "AUTOS". Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your employees or partners or members of their households but only while used in your business or your personal affairs.

## SECTION II - LIABILITY COVERAGE

A.  COVERAGE

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance, or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We have the right and duty to defend any "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend "suits" for "bodily injury" or "property damage" or a "covered pollution cost or expense" not covered by this Coverage form. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

1.  WHO IS AN INSURED

The following are "insureds":

a.  You for any covered "auto".

b.  Member associations and their clubs, leagues, teams, employees, volunteers, executive officers, directors, stockholders therein, but only while the "auto" is being used in the business of the named insured with permission except:

(1)  The owner or anyone else from whom you hire or borrow a covered "auto".

(2)  Your employee if the covered "auto" is owned by that employee or a member of his or her household.

(3)  Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing or parking "autos" unless that business is yours.

(4)  Anyone other than your employees, partners, a lessee or borrower or any of their employees, while moving property to or from a covered "auto".

(5)  A partner of yours for a covered "auto" owned by him or her or a member of his or her household.

(6)  "Participants", parents, managers, coaches, umpires, officials, referees, of the insured or volunteers using any "auto" (personally owned, leased, borrowed or employer furnished) in the transportation of youth and adult "participants" to and from athletic games or athletic events, including but not limited to practices, exhibitions, post season, scheduled events or any non-athletic event.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
Copyright, Insurance Services Office, Inc., 1990

EX. 2 - 105

c. Anyone liable for the conduct of an "insured" described above, but only to the extent of that liability.

2. COVERAGE EXTENSIONS

a. Supplementary Payments.

In additional to the Limit of Insurance, we will pay for the "insured":

(1) All expenses we incur.

(2) Up to $250 for cost of bail bonds (including bonds for related traffic law violations) required because of an "accident" we cover. We do not have to furnish these bonds.

(3) The cost of bonds to release attachments in any "suit" we defend, but only for bond amounts within our Limit of Insurance.

(4) All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $100 a day because of time off from work.

(5) All costs taxed against the "insured" in any "suit" we defend.

(6) All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" we defend; but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

b. Out of State Coverage Extensions.

While a covered "auto" is away from the state where it is licensed we will:

(1) Increase the Limit of Insurance for Liability Coverage to meet the limit or limits specified by a compulsory or financial responsibility law in the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

(2) Provide the minimum amounts and types of other coverages such as no-fault, required of out of state vehicles by the jurisdiction where the covered "auto" is being used.

We will not pay anyone more than once for the same elements of loss because of these extensions.

B. EXCLUSIONS

This insurance does not apply to any of the following:

1. EXPECTED OR INTENDED INJURY

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".

2. CONTRACTUAL

Liability assumed under any contract or agreement. This exclusion does not apply to liability for damages:

a. assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract agreement; or

b. that the "insured" would have in the absence of the contract or agreement.

3. WORKERS COMPENSATION

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers compensation, disability benefits or unemployment compensation law or any similar law.

4. EMPLOYEE INDEMNIFICATION AND EMPLOYERS' LIABILITY"

"Bodily injury" to:

a. an employee of the "insured" arising out of and in the course of employment by the "insured"; or

b. the spouse, child, parent, brother or sister of that employee as a consequence of paragraph a. above.

This exclusion applies:

(1) whether the "insured" may be liable as an employer or in any other capacity; and

(2) to any obligation to share damages with or repay someone else who must pay damages because of the injury.

But this exclusion does not apply to "bodily injury" to domestic employees not entitled to workers compensation benefits or to liability assumed by the "insured" under an "insured contract".

5. FELLOW EMPLOYEE

"Bodily injury" to any fellow employee of the "insured" arising out of and in the course of the fellow employee's employment.

6. CARE, CUSTODY OR CONTROL

"Property damage" to or "covered pollution cost or expense" involving property transported by the "insured" or in the "insured's care, custody, or control". But this exclusion does not apply to liability assumed under a sidetrack agreement.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
Copyright, Insurance Services Office, Inc., 1990

2    09/04

EX. 2 - 106

7. HANDLING OF PROPERTY

"Bodily injury" or "property damage" resulting from the handling of property:

a. before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto"; or

b. after it is moved from the covered "auto" to the place where it is finally delivered by the "insured".

8. MOVEMENT OF PROPERTY BY MECHANICAL DEVICE

"Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".

9. OPERATIONS

"Bodily injury" or "property damage" arising out of the operation of any equipment listed in paragraphs 6.b. and 6.c. of the definition of "mobile equipment".

10. COMPLETED OPERATIONS

"Bodily injury" or "property damage" arising out of your work after that work has been completed or abandoned.

In this exclusion, your work means:

a. work or operations performed by you or on your behalf; and

b. materials, parts or equipment furnished in connection with such work or operations.

Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in paragraphs a. and b. above.

Your work will be deemed completed at the earliest of the following times:

(1) When all of the work called for in your contract has been completed.

(2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

(3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

11. POLLUTION

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release, or escape of "pollutants":

a. that are, or that are contained in any property that is:

1. being transported or towed by, handled, or handled for movement into, onto or from the covered "auto";

2. otherwise in the course of transit by or on behalf of the "insured"; or

3. being stored, disposed of, treated or processed in or upon the covered "auto";

b. before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

c. after the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph a. does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic, or mechanical functioning of the covered "auto" or its parts, if:

(1) the "pollutants" escape, seep, migrate, or are discharged, dispersed, or released directly from an "auto" part designed by its manufacturer to hold, store, receive, or dispose of such "pollutants"; and

(2) the "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in paragraphs 6.b. and 6.c. of the definition of "mobile equipment".

Paragraphs b. and c. above of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" not in or upon a covered "auto" if:

(1) the "pollutants" or any property in which the "pollutants" are contained are upset, over-turned, or damaged as a result of the maintenance or use of a covered "auto"; and

(2) the discharge, dispersal, seepage, migration, release, or escape of the "pollutants" is caused directly by such upset, overturn, or damage.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
Copyright, Insurance Services Office, Inc., 1990

12.  WAR

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

C.  LIMIT OF INSURANCE

Regardless of the number of covered "autos", "insureds",

premiums paid, claims made or vehicles involved in the "accident", the most we will pay for he total of all damages and "covered pollution cost or expense" combined, resulting from any one "accident" is the Limit of Insurance for Liability Coverage shown in the Declarations. All "bodily injury", "property damage", and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

## SECTION III - BUSINESS AUTO CONDITIONS

The following conditions apply in addition to the Common Policy Conditions:

A.  LOSS CONDITIONS

1.  DUTIES IN THE EVENT OF ACCIDENT, CLAIM OR SUIT

a.  In the event of "accident", claim or "suit" you must give us or our authorized representative prompt notice of the "accident". Include:

(1)  how, when and where the "accident" occurred;

(2)  the "insured's" name and address; and

(3)  to the extent possible, the names and addresses of any injured persons and witnesses.

b.  Additionally, you and any other involved "insured" must:

(1)  Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

(2)  Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

(3)  Cooperate with us in the investigation, settlement or defense of the claim or "suit".

(4)  Authorize us to obtain medical records or other pertinent information.

(5)  Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

2.  LEGAL ACTION AGAINST US

No one may bring a legal action against us under this Coverage Part until:

a.  There has been full compliance with all the terms of this Coverage Part; and

b.  We agree in writing that the "insured" has an

obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

3.  TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

If any person or organization to or for whom we make payment under this Coverage Part has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after the "accident" to impair them.

B.  GENERAL CONDITIONS

1.  BANKRUPTCY

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligations under this Coverage Part.

2.  CONCEALMENT, MISREPRESENTATION OR FRAUD

This Coverage Part is void in any case of fraud by you at any time as it relates to this Coverage Part. It is also void if you or any other "insured", at any time, intentionally conceal or misrepresent a material fact concerning:

a.  this Coverage Part;

b.  the covered "auto";

c.  your interest in the covered "auto"; or

d.  a claim under this Coverage Part.

3.  LIBERALIZATION

If we revise this Coverage Part to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

4.  NO BENEFIT TO BAILEE

We will not recognize any assignment or grant any coverage for the benefit of any person or organization

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
Copyright, Insurance Services Office, Inc., 1990

EX. 2 - 108

holding, storing or transporting property for a fee regardless of any other provision of this Coverage Part.

5. OTHER INSURANCE

a. For any covered "auto" you don't own, the insurance provided by this Coverage Part is excess over any other collectible insurance.

b. Regardless of the provisions of paragraph a. above, this Coverage Part's Liability Coverage is primary for any liability assumed under an "insured contract".

c. When this Coverage Part and any other Coverage Part or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Part bears to the total of all the limits of all the Coverage Parts and policies covering on the same basis.

6. PREMIUM AUDIT

a. The estimated premium for this Coverage Part is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

b. If this policy is issued for more than one year, the premium for this Coverage Part will be computed

annually based on our rates or premiums in effect at the beginning of each year of the policy.

7. POLICY PERIOD, COVERAGE TERRITORY

Under this Coverage Part, we cover "accidents" occurring:

a. During the policy period shown in the Declarations; and

b. Within the coverage territory.

The coverage territory is:

a. The United States of America;

b. The territories and possessions of the United States of America;

c. Puerto Rico; and

d. Canada.

We also cover "accidents" involving a covered "auto" while being transported between any of these places.

8. TWO OR MORE COVERAGE PARTS OR POLICIES ISSUED BY US

If this Coverage Part and any other Coverage Part or policy issued to you by us or any company affiliated with us apply to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage Parts or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Part or policy. This condition does not apply to any Coverage Part or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Part.

## SECTION IV – DEFINITIONS

A. "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

B. "Auto" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads but does not include "mobile equipment".

C. "Bodily injury" means bodily injury, sickness or disease sustained by a person including death resulting from any of these.

D. "Covered pollution cost or expense" means any cost or expense arising out of:

1. any request, demand, or order; or

2. any claim or "suit" by or on behalf of a governmental authority demanding; that the "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of "pollutants":

a. that are, or that are contained in any property that is:

(1) being transported or towed by, handled, or handled for movement into, onto, or from the covered "auto";

(2) otherwise in the course of transit by or on behalf of the "insured"; or

(3) being stored, disposed of, treated or processed in or upon the covered "auto";

b. before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
Copyright, Insurance Services Office, Inc., 1990

EX. 2 - 109

c. after the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of, or abandoned by the "insured".

Paragraph a. above does not apply to fuels, lubricants, fluids, exhaust gases, or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic, or mechanical functioning of the covered "auto" or of its parts, if:

(1) the "pollutants" escape, seep, migrate, or are discharged, dispersed, or released directly from an "auto" part designed by its manufacturer to hold, store, receive, or dispose of such "pollutants"; and

(2) the "bodily injury", "property damage", or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in paragraphs 6.b. or 6.c. of the definition of "mobile equipment".

Paragraphs b. and c. above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" not in or upon a covered "auto" if:

(1) the "pollutants" or any property in which the "pollutants" are contained are upset, overturned, or damaged as a result of the maintenance or use of a covered "auto"; and

(2) the discharge, dispersal, seepage, migration, release, or escape of the "pollutants" is caused directly by such upset, overturn, or damage.

E. "Insured" means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage part. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or "suit" is brought.

F. "Insured contract" means:

1. a lease of premises;

2. a sidetrack agreement;

3. an easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad.

4. an obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

5. that part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for "bodily injury" or "property

damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement; or

6. that part of any other contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your employees, of any "auto". However, such contract or agreement shall not be considered an "insured contract" to the extent that it obligates you or any of your employees to pay for "property damage" to any "auto" rented or leased by you or any of your employees.

An "insured contract" does not include that part of any contract or agreement:

a. that indemnifies any person or organization for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road beds, tunnel, underpass, or crossing; or

b. that pertains to the loan, lease or rental of an "auto" to you or any of your employees, if the "auto" is loaned, leased, or rented with a driver; or

c. that holds a person or organization engaged in the business of transporting property by "auto" for hire harmless for your use of a covered "auto" over a route or territory that person or organization is authorized to serve by public authority.

G. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

1. bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

2. vehicles maintained for use solely on or next to premises you own or rent;

3. vehicles that travel on crawler treads;

4. vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   a. power cranes, shovels, loaders, diggers or drills; or

   b. road construction or resurfacing equipment such as graders, scrapers or rollers.

5. Vehicles not described in paragraphs 1, 2, 3 or 4 above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   a. air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

6

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
Copyright, Insurance Services Office, Inc., 1990

EX. 2 - 110

b.  cherry pickers and similar devices used to raise or lower workers.

6.  Vehicles not described in paragraphs 1, 2, 3 or 4 above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

a.  equipment designed primarily for:

(1)  snow removal;

(2)  road maintenance, but not construction or resurfacing; or

(3)  street cleaning;

b.  cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

c.  air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well servicing equipment.

H.  "Pollutants" means any solid, liquid, gaseous, or thermal irritants or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste.   Waste includes materials to be recycled, reconditioned, or reclaimed.

"Property damage" means damage to or loss of use of tangible property.

J.  "Suit" means a civil proceeding in which damages because of "bodily injury" or "property damages" or "covered pollution cost or expense", to which this insurance is applies are alleged.    "Suit" includes an arbitration proceeding alleging such damages or "covered pollution cost or expense" to which you must submit or submit with our consent.

K.  "Trailer" includes semi-trailer

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
Copyright, Insurance Services Office, Inc., 1990

EX. 2 - 111

POLICY NUMBER:  6BMAS0000005070100                    COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## AMENDMENT OF LIMITS

This endorsement modifies insurance provided under the following:

HIRED AUTO AND EMPLOYERS' NONOWNERSHIP LIABILITY

The Limits of Insurance shown in the Declarations Page, or wherever they may appear, apply separately to each enrolled member.

The Limits of Insurance do not apply separately to the following:

The individual persons, subsidiaries, affiliates or other entities that are a part of the enrolled member.

If more than one policy or certificate, issued to the same enrolled member, could apply to the same occurrence the most we will pay for that occurrence is the highest limit of liability and aggregate limit of liability on any one policy or certificate issued to that enrolled member.

SRPG26147NOHA                                          09/08

POLICY NUMBER: 6BMAS0000005070100

INTERLINE
IL 12 01 11 85

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## POLICY CHANGES

Policy Change
Number 4

| POLICY NUMBER<br>6BMAS0000005070100 | POLICY CHANGES EFFECTIVE<br>01/01/12 | COMPANY<br>Nationwide Mutual Insurance Company |
|---|---|---|
| NAMED INSURED<br>Sports, Leisure and Entertainment RPG<br>DBA: Martial Arts Schools & Programs | | AUTHORIZED REPRESENTATIVE<br>K&K Insurance Group, Inc. |
| COVERAGE PARTS AFFECTED<br>   COMMERCIAL GENERAL LIABILITY COVERAGE | | |

CHANGES

Form CG2504, Designated Location(s) General Aggregate Limit, is amended to read as follows:

**Designated Location(s):**

Each owned location of enrolled member on file with the company.

_____

Authorized Representative Signature

Copyright, Insurance Services Office, Inc., 1983
Copyright, ISO Commercial Risk Services, Inc., 1983

Page 1 of 1

EX. 2 - 113

POLICY NUMBER:  6BMAS0000005070100

INTERLINE
IL 12 01 11 85

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## POLICY CHANGES

Policy Change
Number  5

| POLICY NUMBER 6BMAS0000005070100 | POLICY CHANGES EFFECTIVE 01/01/12 | COMPANY Nationwide Mutual Insurance Company |
|---|---|---|
| NAMED INSURED Sports, Leisure and Entertainment RPG DBA: Martial Arts Schools & Programs | | AUTHORIZED REPRESENTATIVE K&K Insurance Group, Inc. |

COVERAGE PARTS AFFECTED

   ALL COVERAGE PARTS

CHANGES

The policy is amended as follows:

1. Form SRPG17348, Declarations Extension, Schedule 1, is amended as follows:

Amend:   $100,000 Abuse, Molestation, Harassment or Sexual Conduct Defense Cost Reimbursement Coverage
Optional Coverage:  The minimum advance premium is $100.00.

Add:   $1,000,000 Sexual Abuse or Sexual Molestation Liability Coverage
Optional Coverage:  The minimum advance premium is $150.00.

Premium Payable at Inception:

Add:   For  Sexual Abuse/Sexual Molestation options - 100% of the premium is due upon binding and is fully earned & non-refundable.

2. Form SRPG26148, Earned Premium, is amended to include:

Abuse, Molestation, Harassment or Sexual Conduct Defense Cost Reimbursement premium and Sexual Abuse or Sexual Molestation Liability premium are both 100% fully earned at inception.

3. Form Cas 3203-A, Blanket Protector Commercial General Liability Coverage Part Declarations, is amended to include as an Optional Coverage:

Sexual Abuse or Sexual Molestation Liability                    See SRPG17348-2

4. Form SRPG 17348, Declarations Extension -  Schedule 2, is amended to include the following:

Sexual Abuse or Sexual Molestation Liability – Optional Coverage - Limits of Insurance:
Each Occurrence Limit                                           $1,000,000
Aggregate Limit                                                $1,000,000

Copyright, Insurance Services Office, Inc.,  1983
Copyright, ISO Commercial Risk Services, Inc.,   1983

EX. 2 - 114

5. Form SRPG17486, Liability Schedule and Premium Recap, attached at policy issuance is deleted from the policy and replaced with the revised SRPG17486 attached to this endorsement.

6. Form SRPG7086, Sexual Abuse or Sexual Molestation Liability, is added to the policy.

7. Form SRPG2146, Abuse, Molestation, Harassment or Sexual Conduct Defense Costs Reimbursement, is amended as follows:

Premium charge for this endorsement:  $100.00 per enrolled member

_____
Authorized Representative Signature

Copyright, Insurance Services Office, Inc.,  1983
Copyright, ISO Commercial Risk Services, Inc.,   1983

EX. 2 - 115

## LIABILITY SCHEDULE AND PREMIUM RECAP

**POLICY NUMBER:** 6BMAS0000005070100

| LOC. NO | | | * DESCRIPTION SUBLINE - CLASS CODE | **PREMIUM BASE ACT. EXPOSURE | | RATES | PREMIUMS |
|---------|---|---|---|---|---|---|---|
| | 347 | 40066 | Athletic Programs -- other than not-for-profit Martial Arts Schools & Programs | | | | |
| | 347 | 40067 | Athletic Programs -- not-for-profit Martial Arts Schools & Programs | | | | |
| | 347 | 40066 40067 | Athletic Programs Martial Arts | U | Per student / member | * As on file | As submitted |
| | 347 | 40066 40067 | Athletic Programs Non-registered member activity coverage (optional coverage) | U | Per participant | * As on file | As submitted |
| | 347 | 40066 40067 | Athletic Programs Birthday Parties (optional coverage) | U | Per party | * As on file | As submitted |
| | 347 | 40066 40067 | Athletic Programs Hosted Tournament -- Under 50 non-member participants (optional coverage) | U | Per tournament | * As on file | As submitted |
| | 347 | 40066 40067 | Athletic Programs Hosted Tournament -- 51-100 non-member participants (optional coverage) | U | Per tournament | * As on file | As submitted |
| | 347 | 40066 40067 | Athletic Programs Hosted Tournament -- 101-500 non-member participants (optional coverage) | U | Per tournament | * As on file | As submitted |
| | 347 | 40066 40067 | Athletic Programs Hosted Tournament -- Over 500 non-member participants (optional coverage) | U | Per non-member participant | * As on file | As submitted |
| | 347 | 40066 40067 | Athletic Programs - $100,000 Abuse, Molestation, Harassment or Sexual Conduct Defense Costs Reimbursement (optional coverage) | U | As reported | $100.00 | As submitted |
| | 347 | 40066 40067 | Athletic Programs - $1,000,000 Sexual Abuse or Sexual Molestation Liability (optional coverage) | U | As reported | * As on file | As submitted |
| | | | * As on file with the company | | | | |

| | |
|---|---|
| **TOTAL PREMIUMS** | As submitted |

*SUBLINE KEY
| | | |
|---|---|---|
| 332 | - | Liquor Liability |
| 334 | - | Premises/Operations |
| 335 | - | Owners/Contractors Protective or Principals Protective |
| 336 | - | Products/Completed Operations |
| 350 | - | Pollution Liability |
| 345 | - | Other Composite Rated/Premises/Operations ONLY |
| 346 | - | Other Composite Rated/Product/Completed Operations ONLY |
| 347 | - | Other Composite Rated - BOTH Premises/Operations AND Product/Completed Operations or type in subline |

**PREMIUM/EXPOSURE BASE KEY
| | | |
|---|---|---|
| A | - | Area (per 1,000 square feet) |
| C | - | Total Cost (per $1,000) |
| E | - | Admissions (per head) |
| M | - | Admissions (per 1,000) |
| P | - | Payroll (per $1,000) |
| R | - | Receipts (per $100) |
| S | - | Gross Sales (per $1,000) |
| U | - | Units (per unit) or type in base |

12/02

EX. 2 - 116

POLICY NUMBER:  6BMAS0000005070100

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# SEXUAL ABUSE OR SEXUAL MOLESTATION LIABILITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM CG 00 01

Except to the extent specifically provided within this endorsement, the coverage form to which this endorsement is attached does not apply to any claim or "suit" seeking damages arising out of any actual or threatened sexual abuse, sexual molestation, or any related breach of duty.

## SCHEDULE

| COVERAGES | LIMITS OF INSURANCE | |
|---|---|---|
| Sexual Abuse or Sexual Molestation Liability | $1,000,000 | Each Occurrence Limit |
| | $1,000,000 | **Aggregate Limit** |

## ENDORSEMENT

**SECTION I - COVERAGES** is amended by adding the following:

**COVERAGES - SEXUAL ABUSE OR SEXUAL MOLESTATION LIABILITY**

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "loss" arising out of any actual or threatened sexual abuse or sexual molestation to which this endorsement applies.

   We have the right and duty to defend the insured against any "suit" seeking damages because of "loss" to which this endorsement applies. However, we have no duty under this endorsement to defend any insured against a "suit" seeking damages not covered by this endorsement.

   We may at our discretion investigate and settle any claim or "suit" that may result. But:

   (1) The amount we will pay as damages is limited as described in the Limits of Insurance section of the Schedule of this endorsement; and

   (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under this endorsement.

   No other obligation or liability to pay sums or perform acts or services is covered by this endorsement unless explicitly provided for under Supplementary Payments Coverages **A** and **B.**

   b. This insurance provided by this endorsement applies to "loss" only if:

   (1) The "loss" takes place in the "coverage territory", and

   (2) The "loss" takes place during the endorsement period.

2. **Exclusions**

   This coverage does not apply to:

   a. Any person who personally participated in, directed or knowingly allowed any actual or threatened act of sexual abuse, sexual molestation or sexual misconduct.

   b. The cost of defense of, or the cost of paying any penalties or fines for any person resulting from alleged or actual violation of any penal or criminal statute.

   c. Liability assumed by the insured under any contract or agreement.

   d. Any obligation of the insured under a Workers Compensation, disability benefits or unemployment compensation law or any similar law.

   e. "Loss" to:

   (1) An "employee" arising out of and in the course of his or her employment or while performing duties related to the conduct of the insured's business; or

EX. 2 - 117

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies regardless of the relationship between the insured and any party described in this paragraph.

f.   The ownership, maintenance, operation, use, loading or unloading of any motor vehicle, trailer, semitrailer, watercraft or aircraft.

g.   Any "loss" arising out of any "employment-related practices".

This exclusion applies:

(1) Whether the insured may be liable as employer or in any other capacity; and

(2) To the spouse, child, parent, brother or sister as a consequence of "loss" to that person at whom any of the "employment-related practices" is directed.

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**, except Paragraph **2.**, also applies to Coverage **S.**

**SECTION II – WHO IS AN INSURED** is replaced by the following Coverage **S.**

1.   If you are designated in the Declarations as:

a.   An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b.   A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c.   A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d.   An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

e.   A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2.   Each of the following is also an insured:

a.   Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization

other than a partnership, joint venture or limited liability company) or your mangers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for "loss":

(1) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business;

(2) To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph 1) above;

(3) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1) or (2) above; or

3.   Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a.   Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b.   Coverage S does not apply to "loss" that took place before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE** is replaced by the following for Coverage **S.**

1.   The Limits of Insurance shown in the Schedule of this endorsement and the provisions below will determine the most we will pay regardless of:

a.   The number of acts of actual or threatened sexual abuse or sexual molestation; or

b.   Period of time over which such acts take place; or

c.   The number of policy periods or policy years over which such acts take place; or

d.   Number of persons acted upon.

All damages, including but not limited to emotional distress or mental injury, arising out of all acts of

EX. 2 - 118

actual or threatened sexual abuse or sexual molestation by one person, or by two or more persons acting together, and all breaches of duty giving rise to such acts will be considered one "loss".

All such acts will be deemed to have taken place on the date the first "loss" arising out of sexual abuse or sexual molestation took place or is alleged to have taken place.

2. The Each Occurrence Limit of Insurance shown for Coverage **S** in the Schedule of this endorsement is the most we will pay for the sum of all damages because of "loss" arising out of sexual abuse or sexual molestation because of "loss" to which this endorsement applies.

3. The Each Occurrence Limit of Insurance shown for Coverage **S** in the Schedule of this endorsement:

   a. Is a part of and not in addition to the Each Occurrence Limit shown in the Declarations of the policy to which this endorsement is attached; and

   b. Is also subject to the Aggregate Limit for Coverage **S** which is also a part of and not in addition to the General Aggregate Limit shown in the Declarations of the policy to which this endorsement is attached.

**SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS** is replaced by the following for Coverage **S.**

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this endorsement.

2. **Duties In The Event Of Loss, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of a "loss" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "loss" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "loss" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

   c. You and any other involved insured must:

      (1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

      (2) Authorize us to obtain records and other information;

      (3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

      (4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

   d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Legal Action Against Us**

   No person or organization has a right under this endorsement:

   a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

   b. To sue us on this endorsement unless all of its terms have been fully complied with.

   A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this endorsement or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4. **Other Insurance**

   If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this endorsement, our obligations are limited as follows:

   a. **Primary Insurance**

      This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

   b. **Excess Insurance**

      This insurance is excess over:

      (1) Any of the other insurance, whether

primary, excess, contingent or on any other basis:

(a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section I – Coverage A – Bodily Injury And Property Damage Liability.

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(a) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(b) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Schedule of this endorsement.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also.

Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

a. We will compute all premiums for this endorsement in accordance with our rules and rates.

b. Premium shown in this endorsement as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this endorsement to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this endorsement, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

EX. 2 - 120

9. **When We Do Not Renew**

If we decide not to renew this endorsement, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V - DEFINITIONS** of the Commercial General Liability Coverage Form defines words and phrases appearing in quotation marks that are not otherwise defined in this endorsement, or amended for this endorsement as follows:

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person. This includes mental anguish, mental injury, shock, fright, humiliation, emotional distress or death resulting from bodily injury, sickness or disease arising out of any actual or threatened sexual abuse or sexual molestation.

18. "Suit" means a civil proceeding in which damages because of "loss" to which this endorsement applies are alleged. "Suit" includes:

   a. An arbitration proceeding in which such damages are claimed and to which you submit with our consent; or

   b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

23. "Loss" means: "bodily injury", "personal injury", or a "wrongful act" including continuous or repeated exposure to substantially the same general harmful conditions.

24. "Wrongful act" means:

   a. actual or alleged errors;

   b. misstatements or misleading statements;

   c. act omission or neglect; or

   d. breach of duty.

25. "Employment-related practices" means:

   a. refusal to employ an applicant;

   b. termination of an "employee"; or

   c. employment-related policies, acts or omissions such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at a former "employee", "employee", or applicant for employment.

EX. 2 - 121

POLICY NUMBER:  6BMAS0000005070100

INTERLINE
IL 12 01 11 85

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## POLICY CHANGES

Policy Change
Number  6

| POLICY NUMBER 6BMAS0000005070100 | POLICY CHANGES EFFECTIVE 01/01/12 | COMPANY Nationwide Mutual Insurance Company |
|---|---|---|
| NAMED INSURED Sports, Leisure and Entertainment RPG DBA: Martial Arts Schools & Programs | | AUTHORIZED REPRESENTATIVE K&K Insurance Group, Inc. |

COVERAGE PARTS AFFECTED

   COMMERCIAL GENERAL LIABILITY COVERAGE

CHANGES

Form IL1201, Policy Changes – Policy Change Number 1, is amended to read as follows:

Coverage provided by form SRPG2146, Abuse, Molestation, Harassment or Sexual Conduct Defense Costs Reimbursement endorsement or SRPG7086, Sexual Abuse or Sexual Molestation Liability, applies only when enrolled member applies and pays for the optional Abuse, Molestation, Harassment or Sexual Conduct Defense Costs Reimbursement coverage or Sexual Abuse or Sexual Molestation Liability coverage.  Only one option, per enrolled member is available.  Both options cannot be purchased by the same enrolled member.

If this optional additional coverage is applied for, approved and paid for by the enrolled member, form SRPG8015, Abuse, Molestation, Harassment or Sexual Conduct Exclusion is removed for the enrolled member.

*Scott [signature]*

Authorized Representative Signature

Copyright, Insurance Services Office, Inc.,  1983
Copyright, ISO Commercial Risk Services, Inc.,   1983

Page 1 of 1

EX. 2 - 122

EXHIBIT 3





2012

## WELCOME TO OUR 3RD ANNUAL BIG BEAR RETREAT

### TRAINING SCHEDULE

**Training Program Day 1**

5-7 PM          *White Hooded Sweat Shirts (Apparel Concepts)*

8-9 PM          *Trapping*

**Training Program Day 2**

8-9 AM          *Hike*

9-11 AM         *Gun Concepts*

1-3 PM          *Projectile Weapons*

4-6 PM          *Edged weapon attack (Knife Vs. Empty Hands)*

**Training Program Day 3**

8-11 AM         *Perseverance*

Dragons Martial Arts Studio Inc.

Participants of DMA Retreat . October 2012

Jose Luis

Sarah

Killer

Larry

Josh

Allison

Kathy

Stacy

Kamille

Clelia

Shervin

Jason

Julie

Federico

Corbin


15 total

EXHIBIT 4

PLD-PI-001

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** (Name, Sta... bar number, and address):<br>David Drexler, Esq. SBN: 074335<br>LAW OFFICES OF DAVID DREXLER<br>13808 Ventura Boulevard<br>13808 Ventura Boulevard<br>Sherman Oaks, California 91423<br>TELEPHONE NO: (818)907-7373   FAX NO. (Optional):<br>E MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): PLAINTIFF | **FOR COURT USE ONLY**<br><br>**CONFORMED COPY**<br>**OF ORIGINAL FILED**<br>Los Angeles Superior Court<br><br>**APR 16 2013**<br><br>John A. Clarke, Executive Officer/Clerk<br>By_____ Deputy<br>SHAUNNA WESLEY |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** LOS ANGELES
STREET ADDRESS: 111 NO. HILL STREET
MAILING ADDRESS: 111 NO. HILL STREET
CITY AND ZIP CODE: LOS ANGELES, CALIFORNIA 90012
BRANCH NAME: CENTRAL DISTRICT

PLAINTIFF: JASON COHEN


DEFENDANT: DRAGONS MARTIAL ARTS STUDIO, INC.,


[X] DOES 1 TO 20, INCLUSIVE

| | |
|---|---|
| **COMPLAINT—Personal Injury, Property Damage, Wrongful Death**<br> [ ] AMENDED (Number):<br>Type (check all that apply):<br> [ ] MOTOR VEHICLE       [ ] OTHER (specify):<br>  [ ] Property Damage    [ ] Wrongful Death<br>  [X] Personal Injury     [ ] Other Damages (specify): | |
| **Jurisdiction** (check all that apply):<br> [ ] ACTION IS A LIMITED CIVIL CASE<br>  Amount demanded  [ ] does not exceed $10,000<br>            [ ] exceeds $10,000, but does not exceed $25,000<br> X [ ] ACTION IS AN UNLIMITED CIVIL CASE (exceeds $25,000)<br> [ ] ACTION IS RECLASSIFIED by this amended complaint<br>  [ ] from limited to unlimited<br>  [ ] from unlimited to limited | **CASE NUMBER:**<br><br>**BC505985** |

1. Plaintiff (name or names): JASON COHEN

   alleges causes of action against defendant (name or names): DRAGONS MARTIAL ARTS STUDIO, INC.

2. This pleading, including attachments and exhibits, consists of the following number of pages:
3. Each plaintiff named above is a competent adult
   a. [ ] except plaintiff (name):
      (1) [ ] a corporation qualified to do business in California
      (2) [ ] an unincorporated entity (describe):
      (3) [ ] a public entity (describe):
      (4) [ ] a minor  [ ] an adult
         (a) [ ] for whom a guardian or conservator of the estate or a guardian ad litem has been appointed
         (b) [ ] other (specify):
      (5) [ ] other (specify):

   b. [ ] except plaintiff (name):
      (1) [ ] a corporation qualified to do business in California
      (2) [ ] an unincorporated entity (describe):
      (3) [ ] a public entity (describe):
      (4) [ ] a minor  [ ] an adult
         (a) [ ] for whom a guardian or conservator of the estate or a guardian ad litem has been appointed
         (b) [ ] other (specify):
      (8) [ ] other (specify):

   [ ] Information about additional plaintiffs who are not competent adults is shown in Attachment 3.

| | | |
|---|---|---|
| Form Approved for Optional Use<br>Judicial Council of California<br>PLD-PI-001 [Rev. January 1, 2007] | **COMPLAINT—Personal Injury, Property<br>Damage, Wrongful Death** | Page 1 of 3<br>Code of Civil Procedure, § 425.12<br>Legal<br>Solutions<br>Plus |

EX. 4 - 125

PLD-PI-001

| SHORT TITLE: COHEN VS. DRAGONS MARTIAL ARTS STUDIO, INC., | CASE NUMBER: |
|---|---|

4. [ ] Plaintiff *(name):*

    is doing business under the fictitious name *(specify):*

    and has complied with the fictitious business name laws.

5. Each defendant named above is a natural person

  a. [X] except defendant *(name):*

    DRAGONS MARTIAL ARTS STUDIO, INC.,

    (1) [X] a business organization, form unknown
    (2) [ ] a corporation
    (3) [ ] an unincorporated entity *(describe):*

    (4) [ ] a public entity *(describe):*

    (5) [ ] other *(specify):*

  b. [ ] except defendant *(name):*

    (1) [ ] a business organization, form unknown
    (2) [ ] a corporation
    (3) [ ] an unincorporated entity *(describe):*

    (4) [ ] a public entity *(describe):*

    (5) [ ] other *(specify):*

  c. [ ] except defendant *(name):*

    (1) [ ] a business organization, form unknown
    (2) [ ] a corporation
    (3) [ ] an unincorporated entity *(describe):*

    (4) [ ] a public entity *(describe):*

    (5) [ ] other *(specify):*

  d. [ ] except defendant *(name):*

    (1) [ ] a business organization, form unknown
    (2) [ ] a corporation
    (3) [ ] an unincorporated entity *(describe):*

    (4) [ ] a public entity *(describe):*

    (5) [ ] other *(specify):*

[ ] Information about additional defendants who are not natural persons is contained in Attachment 5.

6. The true names of defendants sued as Does are unknown to plaintiff.

  a. [X] Doe defendants *(specify Doe numbers):* 1 THROUGH 10 were the agents or employees of other named defendants and acted within the scope of that agency or employment.

  b. [X] Doe defendants *(specify Doe numbers):* 11 THROUGH 20 are persons whose capacities are unknown to plaintiff.

7. [ ] Defendants who are joined under Code of Civil Procedure section 382 are *(names):*

8. This court is the proper court because

  a. [ ] at least one defendant now resides in its jurisdictional area.
  b. [X] the principal place of business of a defendant corporation or unincorporated association is in its jurisdictional area.
  c. [ ] injury to person or damage to personal property occurred in its jurisdictional area.
  d. [ ] other *(specify):*

9. Plaintiff is required to comply with a claims statute, and

  a. [ ] has complied with applicable claims statutes, or
  b. [ ] is excused from complying because *(specify):*

**COMPLAINT—Personal Injury, Property Damage, Wrongful Death**

EX. 4 - 126

PLD-PI-001

SHORT TITLE: COHEN VS. DRAGONS MARTIAL ARTS STUDIO, INC.,

CASE NUMBER:

10. The following causes of action are attached and the statements above apply to each *(each complaint must have one or more causes of action attached)*:
   a. [   ]  Motor Vehicle
   b. [ X ]  General Negligence
   c. [   ]  Intentional Tort
   d. [   ]  Products Liability
   e. [   ]  Premises Liability
   f. [   ]  Other *(specify)*:

11. Plaintiff has suffered
   a. [ X ]  wage loss
   b. [   ]  loss of use of property
   c. [ X ]  hospital and medical expenses
   d. [ X ]  general damage
   e. [   ]  property damage
   f. [ X ]  loss of earning capacity
   g. [   ]  other damage *(specify)*:

12. [   ]  The damages claimed for wrongful death and the relationships of plaintiff to the deceased are
   a. [   ]  listed in Attachment 12.
   b. [   ]  as follows:

13. The relief sought in this complaint is within the jurisdiction of this court.

14. Plaintiff prays for judgment for costs of suit; for such relief as is fair, just, and equitable; and for
   a. (1) [ X ]  compensatory damages
      (2) [   ]  punitive damages
      The amount of damages is *(in cases for personal injury or wrongful death, you must check (1))*:
      (1) [ X ]  according to proof
      (2) [   ]  in the amount of: $

15. [   ]  The paragraphs of this complaint alleged on information and belief are as follows *(specify paragraph numbers)*:

Date: APRIL 10, 2013

DAVID DREXLER, ESQ.
(TYPE OR PRINT NAME)

_____
(SIGNATURE OF PLAINTIFF OR ATTORNEY)

PLD-PI-001 [Rev. January 1, 2007]

**COMPLAINT—Personal Injury, Property Damage, Wrongful Death**

Page 3 of 3

EX. 4 - 127

SHORT TITLE: COHEN VS. DRAGONS MARTIAL ARTS STUDIO, INC.,

CASE NUMBER:

PLD-PI-001(2)

FIRST
(number)

CAUSE OF ACTION—General Negligence

Page _____

ATTACHMENT TO [X] Complaint   [ ] Cross - Complaint

*(Use a separate cause of action form for each cause of action.)*

GN-1. Plaintiff *(name)*: JASON COHEN

alleges that defendant *(name)*: DRAGONS MARTIAL ARTS STUDIO, INC.,

[X] Does 1 _____ to 20, INCLUSIVE

was the legal (proximate) cause of damages to plaintiff. By the following acts or omissions to act, defendant negligently caused the damage to plaintiff
on *(date)*: OCTOBER 21, 2012
at *(place)*: DRAGONS MARTIAL ARTS STUDIO, INC., IN THE CITY OF WOODLAND HILLS, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA.
*(description of reasons for liability)*:

On or about October 21, 2012, and, at all relevant times mentioned herein, Defendants, and each of them, owned and operated a Martial Arts Studio, called DRAGONS MARTIAL ARTS STUDIO, INC., located at 6100 Topanga Canyon Boulevard, Suite 2315, in the city of Woodland Hills, in the state of California, 91367. On the weekend of October 19, 2012 through October 21, 2012, Defendants, and each of them, conducted a martial arts training program in Big Bear, California. As part of the training exercises, Defendants conducted simulated weapons-related training. Defendants provided toy pistols to be used in the training exercises, which included simulated attacks by participants who were acting as armed assailants. At all times during said training exercises, Defendants controlled, instructed and supervised all of the participants' activities. At all relevant times, Defendants supervised and controlled the subject BB pistol which caused injury to Plaintiff. Unbeknown to Plaintiff, Defendants negligently, amongst other things, provided students a toy BB pistol which contained at least one (1) BB which was capable of being shot during the training exercise. As a result of Defendants' negligence, Plaintiff was shot in the eye. As a result of being shot in the eye, Plaintiff suffered severe injuries and damages.

Form Approved for Optional Use
Judicial Council of California
PLD-PI-001(2)[Rev. January 1, 2007]

CAUSE OF ACTION—General Negligence

Legal
Solutions
Plus

Page 1 of 1
Code of Civil Procedure 425.12

EX. 4 - 128

EXHIBIT 5




**insuring the world's fun**®

May 31, 2013

Shervin Ilbeig
DBA: Dragon's Martial Arts Studio Inc.
6100 Topanga Canyon Blvd, #2315
Woodland Hills, CA 91367
A Member of the Sports, Leisure & Entertainment RPG

RE:   File No. NW 50378-11
      Date of Loss: October 21, 2012

Dear Mr. Ilbeig:

ird party administrator for Nationwide Mutual
e have been asked to investigate and handle this
ride Mutual Insurance Company has examined
mpany in the April 16, 2013 lawsuit captioned
rts Studio, Inc._, Case No. BC505985, filed in the
nty of Los Angeles.

that Mr. Cohen's allegations against you are
, incomplete, or embellished. Nationwide has
le about the truth of the allegations made in Mr.

red the relevant information, including the
neral Liability Policy No. 6BMAS0000005070100
. Leisure and Entertainment RPG, DBA: Martial
t Wayne, Indiana, under which your certificate of
. this review, Nationwide has identified coverage
en's claim. The purpose of this letter is to notify
erage for Mr. Cohen's claim under the Policy, to
visions that support this premise, and to further
l nonetheless provide you with a defense against
g all of its rights under the Policy and otherwise,

1712 Magnavox Way, P.O. Box 2338
Fort Wayne, IN 46801-2338
800-237-2917 Fax: 260-459-5910
Participant Accident Fax: 260-459-5915
**www.kandkinsurance.com**
California License #0334819

In California: DBA Specialty Benefits Administrator, Inc.
In Texas: DBA Specialty Accident Benefits, Inc.

EJW-000484-4-1

EX. 5 - 129

May 31, 2013


Shervin Ilbeig
DBA: Dragon's Martial Arts Studio Inc.
6100 Topanga Canyon Blvd, #2315
Woodland Hills, CA 91367
A Member of the Sports, Leisure & Entertainment RPG


    RE:    File No. NW 50378-11
           Date of Loss: October 21, 2012


Dear Mr. Ilbeig:

    K & K Insurance is the third party administrator for Nationwide Mutual Insurance Company.  As such, we have been asked to investigate and handle this matter on their behalf.  Nationwide Mutual Insurance Company has examined the claim made against your company in the April 16, 2013 lawsuit captioned *Jason Cohen v. Dragon's Martial Arts Studio, Inc.*, Case No. BC505985, filed in the Superior Court of California, County of Los Angeles.

    Nationwide understands that Mr. Cohen's allegations against you are unproven and may be untrue, incomplete, or embellished. Nationwide has drawn no conclusions at this time about the truth of the allegations made in Mr. Cohen's lawsuit.

    Nationwide has reviewed the relevant information, including the complaint and Commercial General Liability Policy No. 6BMAS0000005070100 (the "Policy") issued to Sports, Leisure and Entertainment RPG, DBA: Martial Arts Schools & Programs of Fort Wayne, Indiana, under which your certificate of coverage was issued.  Based on this review, Nationwide has identified coverage issues with respect to Mr. Cohen's claim. The purpose of this letter is to notify you that you may not have coverage for Mr. Cohen's claim under the Policy, to identify the specific policy provisions that support this premise, and to further notify you that Nationwide will nonetheless provide you with a defense against Mr. Cohen's suit, while reserving all of its rights under the Policy and otherwise, including but not limited to the right to later deny coverage or seek a declaration from a court with respect to the parties' rights under the Policy.

EJW-000484-4-1

including but not limited to the right to later deny coverage or seek a declaration from a court with respect to the parties' rights under the Policy.

Jason Cohen claims that he was an instructor for Dragon's Martial Arts Studio Inc. ("Dragon's") and that on October 19, 2012 through October 21, 2012, Dragon's conducted martial arts training exercises in Big Bear, California. Cohen claims that as part of these exercises, Dragon's conducted weapons training where participants were subject to simulated attacks by instructor-assailants armed with BB guns. The participants were to disarm the attacker.

Cohen claims that, while participating in a simulated attack, a gun discharged and that he was struck in the right eye with a BB. Cohen claims that the BB remains lodged in his eye in close proximity to the optic nerve and that he suffers from blurred vision in that eye, as well as from constant headaches.

The certificate of insurance issued to Dragon's was in effect from November 19, 2011 to November 19, 2012 and provides liability coverage under the Policy with "each occurrence" and "legal liability to participants" limits of $1,000,000 subject to a General Aggregate of $5,000,000.

Under Coverage A, "Bodily Injury and Property Damage Liability," the Policy obligates Nationwide to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." Nationwide has the further obligation to "defend the insured against any 'suit' seeking those damages." However, Nationwide has "no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply." The endorsement expanding the Policy to provide coverage for "Liability to Participants" under Coverage D is similarly worded. Note that the endorsement incorporating Coverage D into the Policy also incorporates an additional exclusion under Coverage A for "Bodily Injury" to a "participant."

The Policy includes Endorsement SRPG26154 ("the Endorsement") which states in pertinent part:

LIMITATIONS OF COVERAGE TO DESIGNATED PREMISES,
ACTIVITES OR OPERATIONS

This endorsement modifies insurance provided under the following:

ALL LIABILITY COVERAGES

This insurance applies to:

1.     The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises;     or

2.     The activities or operations shown in the Schedule.

SCHEDULE

Premises:

•

Activities or Operations:

For those schools, organizations and programs reported to the company, covered operations consists of premises, operations and activities involving registered participants of those activity(s) under your direct supervision or organized by you, which have been reported, paid for and approved by the company along with any ancillary event or activity held directly with the activity(s) at your location(s) or at approved off-site locations on your behalf.

* * *

The K&K Enrolment Form executed by Dragon's on November 18, 2011 includes the following inquiry:

Do you have any activities that occur away from the facility/premises other than competition, demonstrations, parades or fundraising activities?

If yes, please describe: _____
(Activities held off-site must be reported prior to occurring and approved by us except for competitions, demonstrations, parades and fundraising activities.)

Dragon's answered "No" to this inquiry.

The above cited policy provisions form the basis for Nationwide's coverage concerns. Nationwide specifically reserves its right to cite and invoke other coverage defenses should their applicability become apparent. No action heretofore or hereafter taken by the company shall be construed as a waiver of Nationwide's rights under the Policy, including the right to deny coverage and withdraw from the case.

Notwithstanding the foregoing, and in view of the fact that both your interests and the interest of Nationwide may be better served and protected by Nationwide's further investigation and defense of the underlying claim, Nationwide hopes to work with you to bring this matter to a speedy and fair resolution for all parties. To that end,

Nationwide will continue to investigate this claim and will provide you with a defense in this litigation under a reservation of rights. The attorney Nationwide has assigned to defend you against Cohen's suit is Mr. Jeffrey Lenkov of Manning & Kass located at 801 South Figueroa Street in Los Angeles CA 90017. The office phone number is (213) 624-6900. If he has not done so already, he will contact you shortly to coordinate your defense.

Under California law, an insured is entitled to independent counsel, where a conflict exists because of an insurers' control over the litigation. Cal. Civ. Code § 2860. "A mere possibility of an unspecified conflict does not require independent counsel." *Dynamic Concepts, Inc. v. Truck Ins. Exch.*, 61 Cal. App. 4th 999, 1007, 71 Cal. Rptr. 2d 882 (Cal. Ct. App. 1998). The coverage issue identified in this case does not give rise to a conflict requiring independent counsel.

In addition to continuing its investigation of the liability and damage issues raised by Cohen's suit, Nationwide may participate in settlement negotiations, contribute to a settlement, or undertake other actions to bring the litigation filed against you to a close, without prejudice to its rights under the Policy. Nationwide reserves the right to assert coverage issues and to do the following:

- Recover from the insured the cost of settlement or payment of judgment to the extent that the settlement or judgment exceeds covered damages;

- Recover defense costs, settlements, or judgments from any other carriers, and from any third-party liable for the injury or damages;

- File a declaratory judgment action to determine Nationwide's duties owed to you, although Nationwide is not obligated to do so; and

- Withdraw from the defense of this action upon development of information which establishes that there is no duty to defend or coverage

after giving any legally required notice of Nationwide's intent to withdraw.

To the extent California law governs this claim, you may have this matter reviewed by the California Department of Insurance. Their contact information is as follows: Claims Services Bureau, California Department of Insurance, 300 South Spring Street, Los Angeles, CA 90013; phone 800-927-4357 or 213-897-8921.

Please advise if you have any questions or if you believe there are additional facts or information that we should consider.

Very truly yours,

Joseph A. Baughman
Claims Litigation Analyst on behalf of
Nationwide Mutual Insurance Company

EXHIBIT 6

# SELMAN BREITMAN LLP

ATTORNEYS

11766 Wilshire Boulevard, Sixth Floor
Los Angeles, CA 90025-6538

Telephone 310.445.0800
Facsimile  310.473.2525

www.selmanbreitman.com

Eldon S. Edson
310.689.7023
eedson@selmanbreitman.com

December 2, 2013

**Via Certified Mail, Return Receipt Requested**

Edward C. Stark, Esq.
Cron, Israels & Stark
1541 Ocean Avenue, Suite 200
Santa Monica, CA 90401

Re:   *Cohen v. Dragon's Martial Arts Studio, Inc.*
      Los Angeles County Superior Court, State of California, Case No. BC505985
      Our File No.    :  1080.35368
      Insured         :  Shervin Ilbeig dba Dragon's Martial Arts Studio Inc.
      Claimant        :  Jason Cohen
      Policy No.      :  6BMAS0000005070100 (11/19/11 – 11/19/12)
      Date of Loss    :  October 21, 2012
      Claim No.       :  NW 50378-11

Dear Mr. Stark:

This is to inform you that Selman Breitman LLC has been retained to represent Nationwide Mutual Insurance Company ("Nationwide") with respect to insurance coverage issues arising from the above referenced matter.  We are aware that a claim was made against your client, Nationwide's insured, Shervin Ilbeig dba Dragon's Martial Arts Studio Inc. ("Dragon's"), which resulted in the April 16, 2013 lawsuit captioned *Jason Cohen v. Dragon's Martial Arts Studio, Inc.*, Case No. BC505985, filed in the Superior Court of California for the County of Los Angeles (the "Cohen Action").  The initial investigation of this claim was conducted by K&K Insurance ("K&K") as the third party administrator ("TPA") for Nationwide.  Please note that nstead, K&K operates in an agency capacity and, as such, btaining enrollment information to underwrite and issue sisting with claims investigation on Nationwide's behalf.

has conducted additional analysis of relevant materials ped information from the Cohen Action, in relation to Commercial General Liability Policy No. issued to Sports, Leisure and Entertainment RPG, dba t Wayne, Indiana, under which the Dragon's certificate of iew, we are informing you that the purpose of this letter on of rights letter dated May 31, 2013, which was sent to &K.

U.S. Postal Service ™
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*
For delivery information visit our website at www.usps.com ®

**OFFICIAL USE**

Postage $

Certified Fee

Return Receipt Fee

Postmark
Here

Edward C. Stark, Esq.
Cron, Israels & Stark
1541 Ocean Avenue, Suite 200
Santa Monica, CA 90401

Street, Apt. No.;
or PO Box No.
City, State, ZIP+4

ge County/Inland Empire   •   San Diego   •   Las Vegas   •   Chicago

EX 6-135



**SELMAN**
**&BREITMAN** LLP
ATTORNEYS

11766 Wilshire Boulevard, Sixth Floor
Los Angeles, CA 90025-6538

Telephone 310.445.0800
Facsimile  310.473.2525

www.selmanbreitman.com

Eldon S. Edson
310.689.7023
eedson@selmanbreitman.com

December 2, 2013

<u>**Via Certified Mail, Return Receipt Requested**</u>

Edward C. Stark, Esq.
Cron, Israels & Stark
1541 Ocean Avenue, Suite 200
Santa Monica, CA 90401

Re:     *Cohen v. Dragon's Martial Arts Studio, Inc.*
        Los Angeles County Superior Court, State of California, Case No. BC505985
        Our File No.      :  1080.35368
        Insured           :  Shervin Ilbeig dba Dragon's Martial Arts Studio Inc.
        Claimant          :  Jason Cohen
        Policy No.        :  6BMAS0000005070100 (11/19/11 – 11/19/12)
        Date of Loss      :  October 21, 2012
        Claim No.         :  NW 50378-11

Dear Mr. Stark:

This is to inform you that Selman Breitman LLC has been retained to represent Nationwide
Mutual Insurance Company ("Nationwide") with respect to insurance coverage issues arising
from the above referenced matter.  We are aware that a claim was made against your client,
Nationwide's insured, Shervin Ilbeig dba Dragon's Martial Arts Studio Inc. ("Dragon's"), which
resulted in the April 16, 2013 lawsuit captioned *Jason Cohen v. Dragon's Martial Arts Studio,*
*Inc.*, Case No. BC505985, filed in the Superior Court of California for the County of Los
Angeles (the "Cohen Action").  The initial investigation of this claim was conducted by K&K
Insurance ("K&K") as the third party administrator ("TPA") for Nationwide.  Please note that
K&K is not the insurance company.  Instead, K&K operates in an agency capacity and, as such,
conducted activity for Nationwide in obtaining enrollment information to underwrite and issue
Dragon's insurance policy as well as assisting with claims investigation on Nationwide's behalf.

Per request by Nationwide, our firm has conducted additional analysis of relevant materials
regarding this claim and newly developed information from the Cohen Action, in relation to
Plaintiff   Cohen's   complaint   and   Commercial   General   Liability   Policy   No.
6BMAS0000005070100 (the "Policy") issued to Sports, Leisure and Entertainment RPG, dba
Martial Arts School & Programs of Fort Wayne, Indiana, under which the Dragon's certificate of
coverage was issued.  Based on this review, we are informing you that the purpose of this letter
is to supplement Nationwide's reservation of rights letter dated May 31, 2013, which was sent to
the insured by Joseph Baughman of K&K.

584434.1A  1080.35368

Los Angeles  •  San Francisco  •  Orange County/Inland Empire  •  San Diego  •  Las Vegas  •  Chicago



SELMAN
BREITMAN LLP
ATTORNEYS

Edward C. Stark, Esq.
December 2, 2013
Page 2

We have identified further coverage issues with respect to Plaintiff Cohen's claim; thus, we want to notify you of these supplemental issues and explain once again why Dragon's may not have coverage for Plaintiff Cohen's claims under the Policy. We incorporate herein all of the coverage positions and specific policy provisions set out in the May 31, 2013 letter. We also confirm that Nationwide will continue to provide Dragon's with a defense for the Cohen Action, while reserving all rights under the Policy set out previously, as well the additional rights set out herein. These rights include, but are not limited to, the right to later deny coverage, to seek a declaration from a court with respect to the parties' rights under the Policy, to seek reimbursement of the sums paid on Dragon's behalf, and/or to seek rescission of the Policy.

In addition, we set out herein the provisions of the Policy which document the cooperation requirements of the insured, Shervin Ilbeig/Dragon's. Not only are these requirements upheld under California law, their enforcement is consistent. Also, under the circumstances of this matter, Nationwide's right to control the defense of the Cohen Action is supported by California precedent and the right to independent counsel is not triggered under this reservation of rights, or other circumstances. Moreover, so long as the insurer is defending the action against the insured, California courts recognize that the insured has no right to settle directly with the injured party.

Please note that Nationwide understands Plaintiff Cohen's allegations against Dragon's are unproven and may be untrue, incomplete, or embellished. Thus, Nationwide will draw no conclusions at this time about the truth of the allegations made in the Cohen's Action; we use the allegations herein only to address the coverage issues which are raised.

## FACTUAL BACKGROUND

### A.   Renewal Of The Policy For November 19, 2011 – November 19, 2012

On or about November 18, 2011, underwriters on behalf of Nationwide at K&K received an "Enrollment Form Martial Arts Schools & Programs" ("K&K Enrollment Form") filled out by Barry S. Cohen of Delcourt Insurance, 7625 Woodlake Avenue, West Hills, California, 91304, as the insurance agent on behalf of Dragon's Martial Arts Studio, Inc.[1] The K&K Enrollment Form requested renewal coverage for Dragon's effective November 19, 2011 to November 19, 2012. Mr. Cohen submitted the K&K Enrollment Form indicating that he was a Licensed Insurance Agent and the broker/owner of his insurance agency. The Enrollment Form confirmed Dragon's desire to obtain insurance through the Sports, Leisure and Entertainment Risk Purchasing Group for its premises and operations at 6100 Topanga Canyon Blvd., Space #2315, Woodland Hills, California 91367.

---

[1] Please see Exhibit A attached hereto. Mr. Cohen provided his telephone number as 818-347-7800 and his Tax ID number as 356381796.

584434.1A   1080.35368



**SELMAN BREITMAN** LLP
ATTORNEYS

Edward C. Stark, Esq.
December 2, 2013
Page 3

Page 14 of 14 on the K&K Enrollment Form contained a "Warranty and Disclosure Statement" which was executed by Barry S. Cohen on behalf of Dragon's.  That statement avers:

> I understand that the insurance company, in determining whether to provide insurance coverage, will rely on the information contained in this form and all other information being submitted.  I hereby warrant, represent and confirm that, to the best of my knowledge, all information provided is complete, true and accurate.

*                    *                    *

> I am aware that the insurance company expects accurate reporting for my premium calculation.  I understand that my books and records may be examined or audited by the insurance company at any time during the coverage period and up to three years thereafter, intentional misrepresentation or misreporting may jeopardize coverage.

> I further acknowledge that I have reviewed all information provided with this enrollment form and understand the exclusions which apply, as well as the activities and operations for which coverage is not provided.

> Applicant or agent signature: <u>*Barry S. Cohen*</u>          Date:  <u>11/18/11</u>
> Printed name:  <u>Barry S. Cohen</u>          Title: <u>Broker/owner</u>

> If an agent: Check here to acknowledge you are signing on behalf of the named insured.          X

> Named Insured (from page 6): <u>Shervin Ilbeig</u>

*                    *                    *

The K&K Enrolment Form executed by Barry S. Cohen on behalf of Dragon's on November 18, 2011 included the following inquiry:

> Do you have any activities that occur away from the facility/premises other than competition, demonstrations, parades or fundraising activities:

> If yes, please describe:_____ (**Activities held off-site must be reported prior to occurring and approved by us except for competitions, demonstrations, parades and fundraising activities.**) (emphasis added)

584434.1A   1080.35368



**SELMAN**
**BREITMAN** LLP
ATTORNEYS

Edward C. Stark, Esq.
December 2, 2013
Page 4

Dragon's answered "No" to this inquiry.

**B.**   **Dragon's Third Annual Big Bear Retreat**

The information gathered in this matter indicates that Plaintiff Cohen was a instructor for Dragon's, perhaps a volunteer, at the studio since 2007.[2]  The named insured, Mr. Ilbeig, has known Plaintiff Cohen since 1992; they remain friends and also maintain family friendships.

On October 19, 2012 through October 21, 2012, Dragon's conducted its Third Annual Retreat, including martial arts training exercises, in Big Bear, California, at an off-site facility.  The insured indicated that Plaintiff Cohen organized the event and rented the premises. There were twelve students in attendance, two Dragon's employees – the insured and Corbin Williams – and Plaintiff Cohen. As part of the training schedule, Dragon's conducted weapons disarmament exercises wherein participants were subject to simulated attacks by instructor "assailants" armed with either a BB gun or a dull knife.[3]

As to the specific incident, Plaintiff Cohen, in his capacity as mock assailant/instructor, was attempting an "attack" on a female adult student with what was believed to be an unloaded BB gun.  Evidently, the student was successful in wresting the gun from Plaintiff Cohen; however, he then attempted to get the gun back.  It was at that point that the BB gun discharged, striking Plaintiff Cohen in the right eye.

**C.**   **Payments From K&K's Participant Accident Claim Division**

Upon tender on January 18, 2013, the original K&K adjuster on the tort claim referred this matter to K&K's Participant Accident Claim  Division ("PA") where a separate file was opened for payment of Cohen's actual medical "out of pocket" expenses under the policy's excess/secondary coverage for such uncovered expenses, Medical Payments For Participants Coverage. The PA adjuster corresponded with attorney Drexler on January 24, 2013 explaining the excess/secondary coverage over Cohen's own health or accident insurance.  She sent an Accident Insurance Claim Form to be filled out. She also requested that attorney Drexler submit itemized statements from Cohen's medical providers as well as the Explanation of Benefits Payments forms from Cohen's primary health/accident carrier.

On February 14, 2013, attorney Drexler corresponded with the initial claims adjuster at K&K and the independent investigator explaining the medical treatment Cohen had sought for his

---

[2] Nationwide reserves its right to dispute the volunteer instructor status of Plaintiff Cohen.
[3] There is also information that other weaponry may have been used at the Third Annual Retreat, including a bow and arrow, knives, ninja stars, a sling shot and a paint ball gun.

SELMAN
BREITMAN LLP
ATTORNEYS

Edward C. Stark, Esq.
December 2, 2013
Page 5

injury and alleging that Cohen was "disabled and unable to perform his work responsibilities as a self-employed attorney." Drexler stated that copies of "all medical records and bills will be provided ... as soon as they are obtained from the medical providers." He then demanded the immediate release of the "medical payments limit" under Dragon's policy.

This letter was forwarded to the PA Division for response by the PA adjuster. On March 1, 2013, the PA adjuster wrote again to attorney Drexler explaining the process of payments under the Nationwide policy's excess/secondary Medical Payments For Participants Coverage. She sent another Accident Insurance Claim Form to be completed and returned. She also again requested copies of the itemized bills and the corresponding Explanation of Benefits forms from Cohen's primary insurer.

That request may have crossed in the mail because, on February 28, 2013, attorney Drexler sent a letter to the PA adjuster with copies of invoices which he stated showed Cohen's "out of pocket expenses" for medical costs, totaling $1,885.91. He again asked for a med-pay draft. On March 12, 2013, attorney Drexler returned the completed and executed Accident Insurance Claim Form, but sent no other records with the form. Instead, he demanded a "med-pay draft payable to our client." On March 22, 2013, the PA adjuster once again responded explaining the process to obtain payments under the excess/secondary insurance provided by the Nationwide policy. She requested all itemized statements and the Explanation of Benefits forms from the primary insurer.

Some of the requested forms were forwarded by attorney Drexel on March 27, 2013. On the same date, personnel from attorney Drexel's office spoke with the PA adjuster to confirm that Cohen had primary medical coverage through Anthem and again explain the submittal process for the excess/secondary coverage under the Nationwide policy.

On April 15, 2013, personnel from Drexel's office called to express concerns about the claims handling. The PA adjuster's supervisor spoke with the caller to explain the difference between the Participant Accident Coverage and the typical "med pay" coverage. Subsequently, some itemized invoicing statements were forwarded by Drexel's office and payments were made where no coverage under the primary coverage was documented. In total, $6,837.69 of excess medical payments were made to Cohen and his counsel by K&K's PA Division through November of 2013.

**D.    Investigation Of The Tort Claim**

As noted, the tort claim was tendered by Cohen's attorney, David Drexler, on January 18, 2013, and acknowledged by K&K via letter of January 23, 2013. The K&K tort adjuster promptly agreed to investigate the matter and requested that attorney Drexler provide his theory of liability and documentation of same; a statement by Cohen; all evidentiary information indicating damages and their causal relationship to the incident; and any diagnosis/prognosis regarding the

SELMAN
BREITMAN LLP
ATTORNEYS

Edward C. Stark, Esq.
December 2, 2013
Page 6

degree of disability and residual injury, if any. The next day, K&K retained an independent
investigator to obtain further information and documents on the factual background of the claim.
Between the dates of January 25, 2013 and April 17, 2013, this investigator was actively
involved in obtaining information along with the K&K adjuster on this matter.

On April 29, 2013, attorney Drexler forwarded correspondence to K&K with a copy of the
summons and complaint by Plaintiff Cohen. On May 9, 2013, attorney Drexler forwarded a $1
million policy limits demand contending that Nationwide through K&K should have made an
offer to settle Plaintiff Cohen's claim. He contended that liability of the insured was clear and set
out a list of medical specialists who had treated Plaintiff Cohen; however, no medical records
were included. Attorney Drexler also asserted that Plaintiff Cohen was disabled and unable to
perform his work responsibilities as a self-employed attorney. He claimed Plaintiff Cohen's
practice was valued at "over $2 million." Again, no documents were forwarded to document that
claim. Attorney Drexler claimed that "copies of all medical records and bills documenting Mr.
Cohen's injuries/damages have been available to you for some time."[4]

### E.   The Lawsuit Filed By Jason Cohen

On April 16, 2013, Plaintiff Cohen filed a complaint in the Superior Court for the County of Los
Angeles, Case No. BC505985 naming Dragon's as the sole defendant and bringing one cause of
action for general negligence. Plaintiff Cohen alleges that on or about October 21, 2012,
Dragon's owned and operated a martial arts studio located in Woodland Hills, California.
Plaintiff asserts that on the weekend of October 19, 2012 through October 21, 2012, Dragon's
conducted a martial arts training program off-site in Big Bear, California.

As part of the training exercises, Plaintiff Cohen alleges that Dragon's conducted weapons
disarmament related training. He claims that Dragon's negligently provided students at the
training program with a BB pistol which contained at least one BB that discharged into his eye
during an exercise with a student. As a result, Cohen asserts the BB remains lodged in his eye in
close proximity to the optic nerve and that he suffers from blurred vision in that eye, as well as
constant headaches. Mr. Cohen alleges that this incident caused him to suffer severe injuries and
he seeks damages for wage loss, hospital and medical expenses, and loss of earning capacity.

### RELEVANT PROVISIONS IN THE NATIONWIDE POLICY

Nationwide issued to Dragon's policy number 6BMAS0000005070100, effective from
November 19, 2011 to November 19, 2012. The policy provides commercial general liability
("CGL") coverage pursuant to ISO form CG 00 01 12 04, under Coverage A. However, given

---

[4] Subsequent discovery by defense counsel in the litigation proved this statement to be entirely
inaccurate.

**SELMAN**
**SBREITMAN** LLP
ATTORNEYS

Edward C. Stark, Esq.
December 2, 2013
Page 7

the circumstances of this claim, it appears that Coverage D providing coverage for "bodily injury" and/or "property damage" as to "Liability to Participants" would be the applicable form.

The certificate of insurance issued to Dragon's was in effect from November 19, 2011 to November 19, 2012 and provided liability coverage under the Policy with "each occurrence" and "Legal Liability to Participants" limits of $1,000,000, under Coverage D, subject to General Aggregate of $5,000.000.

Nationwide has applied Coverage D because Plaintiff Cohen appears to fall within the definition of "participant":[5]

> "Participant" means a person injured while practicing, instructing, or participating in any physical exercises or games, sports or athletic contests. Participant does not include any compensated member of your staff including employees or independent contractors.

The full text of Coverage D for "Liability to Participants" is set out with other relevant Policy language in the attached Policy Language Appendix. (See Exhibit B)

The Policy also includes Endorsement SRPG26154 ("the Endorsement") which states in pertinent part:

LIMITATIONS OF COVERAGE TO DESIGNATED
PREMISES, ACTIVITIES OR OPERATIONS

This endorsement modifies insurance provided under the following:

ALL LIABILITY COVERAGES

This insurance applies to:

1.      The ownership, maintenance or use of the premises, shown in the Schedule and operations necessary or incidental to those premises; or

2.      The activities or operations shown in the Schedule.

SCHEDULE

Premises:

---

[5] This is also the reason that the Medical Payments For Participants Coverage was triggered for Plaintiff Cohen.



**SELMAN**
**BREITMAN** LLP
ATTORNEYS

Edward C. Stark, Esq.
December 2, 2013
Page 8

Activities or Operations:

For those schools, organizations and programs reported to the company, covered operations consists of premises, operations and activities involving registered participants of those activity(s) under your direct supervision or organized by you, which have been reported, paid for and approved by the company along with any ancillary event or activity held directly with the activity(s) at your location(s) or at approved off-site locations on your behalf.

\* \* \*

## NATIONWIDE'S COVERAGE POSITIONS

Nationwide herein incorporates the May 31, 2013 reservation of rights letter sent to the insured as if set forth herein in its entirety. In addition, Nationwide is asserting the following coverage positions.

    **A.**    **The Limitation Of Coverage Endorsement Bars Insurance Under Coverage D For Legal Liability To Participants Because Dragon's Did Not Obtain Approval For Off-Site Activities Before They Occurred.**

Per the May 31, 2013 reservation of rights letter, K&K, on behalf of Nationwide, asserted the endorsement entitled "Limitation of Coverage to Designated Premises, Activities Or Operations" ("Limitation Endorsement"). As set out above, this endorsement modifies all liability coverages in the Nationwide policy. California courts frequently acknowledge that endorsements may provide for limitations on the coverage provided under the basic insuring form of a policy. Notably, "if there is a conflict in the meaning between an endorsement and the body of the policy, the endorsement controls." *Aerojet-General Corp. v. Transport Indem. Co.* (1997) 17 Cal. 4th 38, 50.

As set out above, the endorsement entitled "Limitations Of Coverage To Designated Premises, Activities Or Operations" contains two types of "covered operations": 1) premises, operations and activities involving registered participants of those activity(s) under your direct supervision or organized by you, which have been reported, paid for and approved by the company ; and 2) *any ancillary event or activity held directly with the activity(s) at your location(s) or at approved off-site locations on your behalf.*

**SELMAN
⟜BREITMAN** LLP
ATTORNEYS

Edward C. Stark, Esq.
December 2, 2013
Page 9

The first type of "covered operations" consist of Dragon's regular business conduct regarding the teaching of martial arts, in particular "karate," to registered participants as disclosed in the Enrollment Form. The second type of "covered operations" denotes: a) "ancillary events or activities"; b) "held directly with the activities at your location", or c) "at approved off-site locations on your behalf." As applied to Dragon's Third Annual Retreat at Big Bear, California, in order to be a "covered operation," the activity would had to have been an "ancillary event" held "at an approved off-site location." Dragon's has never asserted that it obtained approval for the Third Annual Retreat held at a Big Bear location, or even attempted to obtain approval. Further, K&K's records, kept on behalf of Nationwide, indicate that there was no report of, or approval sought, by Dragon's for that off-site "ancillary event or activity." Of significance, the Enrollment Form states as follows:

> Activities held off-site must be reported prior to occurring and approved by us except for competitions, demonstrations, parades and fundraising activities.

According to the "3RD Annual Big Bear Retreat Training Schedule," none of the activities which occurred at the retreat in Big Bear would fall into any of the four categories above which are exempt from pre-approval by the company, "competitions, demonstrations, parades and fundraising activities." Instead, the Training Schedule indicates that the plans for each day were solely for "training" purposes of the participants. (See Exhibit C attached.) Therefore, since there was no report by Dragon's prior to the "ancillary event," or pre-approval obtained from K&K/Nationwide, it is Nationwide's position that there can be no coverage under the Policy for any activities occurring at Dragon's Third Annual Retreat.

  **B.    No Coverage Is Provided Under The Professional Liability Form Because
        Any Negligent Act, Or "Wrongful Act," Was Not "In The Discharge Of
        Covered Activities."**

The Nationwide Policy contains Professional Liability Coverage, Coverage G, which agrees to insure sums that the insured becomes legally obligated to pay as damages because of a "wrongful act" to which the insurance applies. In this circumstance, any negligent acts which occurred at Dragon's Third Annual Retreat at Big Bear, California do not fall within the Policy's definition of "wrongful act." That definition states:

  G.    For purposes of this endorsement, the following are added to **SECTION
        IV – DEFINITIONS**:

    1.

      'Wrongful act" means any negligent act, negligent error, negligent breach
        of duty in the discharge of covered activities or operations of the
        named insured.   Any negligent act, negligent error, negligent



SELMAN
BREITMAN LLP
ATTORNEYS

Edward C. Stark, Esq.
December 2, 2013
Page 10

omission, or negligent breach of duty arising out of the same or
related facts, circumstances, situations, transactions or events shall
be deemed as arising out of the same "wrongful act."

Pursuant to the discussion above, the training exercises and instruction at Dragon's Third Annual
Big Bear Retreat do not constitute "covered activities or operations of the named insured." There
was no report to K&K/Nationwide of the activities prior to the occurrence of the retreat which is
required for any "covered operation" off-site. Further, Dragon's did not obtain approval from the
company for this ancillary event or activities held at an off-site location on behalf of Dragon's.

**C.      Nationwide Reserves Its Rights To Rescind Dragon's Policy**

Misstatements or concealment of any material facts in an application for insurance, even if
unintentional, entitle the insurer to rescind the insurance policy. *LA Sound USA, Inc. v. St. Paul
Fire & Marine Ins. Co.* (2007) 156 Cal.App.4th 1259, 1267. <u>A policyholder is responsible for
misrepresentations, even if their broker prepared the application.</u> *Id.* The insurer has a right to
know all that the applicant for insurance knows regarding the risk to be assumed. Cal. Ins. Code
§332. Therefore, misstatement or concealment of "material" facts are grounds for rescission
even if unintentional. The insurer need not prove that the applicant-insured actually intended to
deceive the insurer. Cal. Ins. Code §§ 331, 359; *O'Riordan v. Federal Kemper Life Assur.* (2005)
36 Cal.4th 281, 286–287.

Information is material if it would have caused this insurer's underwriter to reject the application
or to charge a higher premium for the policy or to amend the policy terms. *Imperial Cas. &
Indem. Co., supra*, 198 Cal.App.3d at 181; *Mitchell v. United Nat'l Ins. Co.* (2005) 127
Cal.App.4th at 474; *LA Sound USA, Inc., supra*, 156 Cal.App.4th at 1268–1269. The California
Insurance Code clearly authorizes rescission under these circumstances and expressly provides
Nationwide with this remedy.

California Insurance Code §330 states:

**"Concealment Defined.**

Neglect to communicate that which a party knows, and ought to communicate is
concealment."

California Insurance Code §331 provides:

**"Effect of Concealment.**

Concealment, whether intentional or unintentional, entitles the injured party to
rescind insurance."

SELMAN
BREITMAN LLP
ATTORNEYS

Edward C. Stark, Esq.
December 2, 2013
Page 11

California Insurance Code §332 provides:

> **"Required Disclosure.**
>
> Each party to a contract of insurance shall communicate to the other in good faith, all facts within her knowledge which are or which he believes to be material to the contract and as to which he makes no warranty, and which the other has not the means of ascertaining."

Insurance Code §334 defines materiality as follows:

> **"Materiality.**
>
> Materiality is to be determined not by the event, but solely by the probable and reasonable influence of the facts upon the party to whom the communication is due, in forming her estimate of the disadvantages of the proposed contract, or in making her inquiries."

Insurance Code §359 states:

> **"Effect of Material False Representation.**
>
> If a representation is false in a material point, whether affirmative or promissory, the injured party is entitled to rescind the contract from the time the representation becomes false."

On behalf of Shervin Ilbeig dba Dragon's Martial Arts Studio Inc., agent/broker Barry S. Cohen materially misrepresented that Dragon's conducted no off-site training or instruction activities. (See Exhibit A) This constitutes a material omission of a required disclosure regarding Dragon's Annual Retreat. Plainly, it was not Dragon's first retreat, or even the second one. In order to have insurance for this retreat, disclosure to K&K/Nationwide about its nature and occurrence was absolutely necessary before it took place to obtain approval of the company. Furthermore, such a disclosure would have allowed K&K, on behalf of Nationwide, to inquire about the activities planned for such an event and evaluate whether additional premium would be required, or whether Nationwide would insure that event at all.

Nationwide issued the subject insurance policy to Dragon's and computed the premium for this policy based on the representations of Dragon's agent/broker, Barry S. Cohen, that Dragon's did not conduct off-site training or instruction activities, such as the Third Annual Big Bear Retreat. Had Nationwide known of this off-site retreat, or had Dragon's personnel sought approval for this ancillary off-site event, K&K, on behalf of Nationwide, would have conducted an

**SELMAN**
**BREITMAN** LLP
ATTORNEYS

Edward C. Stark, Esq.
December 2, 2013
Page 12

investigation on what kind of activities were planned to determine if coverage could or would be provided.

In retrospect, which is the only view available at this point, had a description of the Training Schedule been provided to K&K before the Third Annual Retreat, this event would not have met underwriting standards in several respects. First, there is an exclusion for training activities using "bladed weapons" such as knives or arrows. (See Policy Language Appendix, page 4) The "Knife Vs. Empty Hands" training exercise shown on the Third Annual Big Bear Retreat Training Schedule would have been excluded. Secondly, the use of "Projectile Weapons" or "Guns" would bar any coverage for this event unless K&K was assured beforehand that such weapons were replica only. (See Exhibit C)

Nationwide, via its agent K&K, asked questions on the Enrollment Form which are fundamental to its ability to establish the insurability of any insured, particularly as to off-site activities. Truthful and accurate information on the form was imperative for Nationwide to determine the scope of the risk to be insured and the extent of any off-site activities. Nationwide specifically asked Dragon's on the form whether it planned any off-site activities and was provided with an answer in the negative. (See Exhibit A) This question was part of the K&K underwriting process for Nationwide so that the risks could be properly evaluated and premium could be adequately calculated to cover the acceptable risks. Because the question was asked, accurate information about off-site activities was a required disclosure. The failure to disclose the accurate information constitutes a material misrepresentation.[6]

Nationwide plainly needed to know about Dragon's off-site activities before they occurred. Moreover, Nationwide made clear that it not only had to know, but it had to approve of said off-site activities if Dragon's wanted insurance for them. Under California law, the lack of such information on the Enrollment Form constitutes a material false representation. "[T]he materiality is evident from the terms of the policy and the fact the question was asked." *Williamson and Vollmer Engineering, Inc. v. Sequoia Insurance Company* (1976) 134 Cal.Rptr. 427, 433. Thus, Nationwide reserves its right to bring a rescission action.

---

[6] Even if Dragon's was unsure of its plans for the 2012 Big Bear retreat at the time that its agent/broker, Barry S. Cohen, filled out the Enrollment Form, there is an alternative process for pre-approval of off-site activities/ancillary events. This can be accomplished by contacting K&K to discuss the plans with the underwriting department prior to the ancillary event. However, Dragon's also failed to utilize this process.



**SELMAN BREITMAN** LLP
ATTORNEYS

Edward C. Stark, Esq.
December 2, 2013
Page 13

      **D.**     **Under California Law, Cooperation Provisions In The Policy Bar The Insured From Collusively Stipulating To A Judgment And Limits Assignments.**

Recent letters from Plaintiff Cohen's counsel stridently accuse K&K of claims mishandling and request that defense counsel relay this matter to you to enter into "a reasonable, stipulated judgment." Initially, we strongly assert that Mr. Drexler's claims of mishandling and bad faith are invalid and ill-founded. Moreover, he is evidently not cognizant of California law on the duties of cooperation required of an insured. In that vein, the Nationwide Policy contains conditions with provisions on the required cooperation of an insured. This condition includes the following:

    **2.**    **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

              *              *              *

    c.     You and any other involved insured must:

        (1)     Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

        (2)     Authorize us to obtain records and other information;

        (3)     Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

        (4)     Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

    d.     No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

    **3.**    **Legal Action Against Us**

    No person or organization has a right under this Coverage Part:

              *              *              *

    b.     To sue on this Coverage Part unless all of its terms have been fully complied with.

SELMAN
BREITMAN LLP
ATTORNEYS

Edward C. Stark, Esq.
December 2, 2013
Page 14

> A person or organization may sue us to recover on an agreed settlement or
> on a final judgment against an insured; but we will not be liable for
> damages that are not payable under the terms of this Coverage Part or that
> are in excess of the applicable limit of insurance.  An agree settlement
> means a settlement and release of liability signed by us, the insured and
> the claimant or the claimant's legal representative.

Mr. Drexler is encouraging a dangerous strategy which could leave Dragon's without coverage.
As stated in *Span, Inc. v. Associated International Ins. Co.* (2d Dist. 1991) 227 Cal. App. 3d 463,
a breach of cooperation can be found where an insured assists in a collusive judgment:

> Collusive assistance in the procurement of a judgment not only constitutes a
> breach of the cooperation clause but also is a breach of the covenant of good faith
> and fair dealing. "[A] duty of good faith and fair dealing in an insurance policy is
> a two-way street, running from the insured to his insurer as well as vice versa
> [citations.]" ( Commercial Union Assurance Companies v. Safeway Stores, Inc.
> (1980) 26 Cal.3d 912, 918. Collusion in this context is not necessarily tantamount
> to the tort of fraud in that there need not be a misrepresentation of a material fact.

"Collusion has been variously defined as (1) 'a deceitful agreement or compact between two or
more persons, for the one party to bring an action against the other for some evil purpose, as to
defraud a third party of his right'; (2) 'a secret arrangement between two or more persons, whose
interests are apparently conflicting, to make use of the forms and proceedings of law in order to
defraud a third person, or to obtain that which justice would not give them, by deceiving a court
or its officers'; and (3) 'a secret combination, conspiracy, or concert of action between two or
more persons for fraudulent or deceitful purposes." *Span, Inc., supra*, 227 Cal. App. 3d at 484-
485.

Further, according to the California Supreme Court, as long as an insurer is defending the lawsuit
against its insured, the insured has no right to settle directly with the injured party. *Hamilton v.
Maryland Cas. Co.* (2002) 27 Cal. 4th 718, 726.  Thus, a stipulated judgment between the injured
party and the insured to which the insurer did not consent is ineffective to impose liability on the
insurer in any later action under Insurance Code section 11580.  *Pruyn v. Agricultural Ins. Co.*
(1995) 36 Cal. App. 4th 500, 516.

Even if counsel for Plaintiff Cohen is requesting only an assignment of rights, rather than a
stipulated judgment, Dragon's runs quite a risk since there are strong limitations on this act.

> Assignments that are the product of fraud or collusion between the insured and
> injured party convey no rights against the insurer. E.g., Insured agrees to give
> false testimony that he or she was at fault to facilitate Injured Party recovering

SELMAN
BREITMAN LLP
ATTORNEYS

Edward C. Stark, Esq.
December 2, 2013
Page 15

excess judgment, which will then be the basis for an assigned "bad faith" claim against the carrier. *Critz v. Farmers Ins. Group*, (1964) 230 CA2d 788, 802.

Nationwide reserves its rights to assert a lack of cooperation and/or a lack of compliance under the policy provisions should this become necessary.

    **E.**    **Attorney Drexler's Claims Regarding Independent Counsel Are Not Correct Under California Law**

Under California law, an insured is entitled to independent counsel, where a conflict exists because of an insurers' control over the litigation. California Civil Code §2860. The fact that a complaint contains both covered and noncovered claims does not automatically entitle the insured to appointment of independent counsel. Rather, under Civil Code §2860, the focus is on whether "the outcome of the coverage dispute can be controlled" by the defense counsel retained by the insurer. Civil Code §2860(b); *Dynamic Concepts, Inc. v. Truck Ins. Exch.* (1998) 61 Cal.App.4th 999, 1006, fn. 5. "A mere possibility of an unspecified conflict does not require independent counsel." *Dynamic Concepts, supra,* 61 Cal.App.4th at 1007. The conflict must be "significant, not merely theoretical, actual, not merely potential." *Id.* The coverage issues identified in this case do not give rise to a conflict requiring independent counsel.

As discussed in *James 3 Corp. v. Truck Ins. Exchange* (2001) 91 Cal.App.4th 1093, the mere fact that the insurer disputes coverage does not entitle the insured to independent counsel. Civil Code §2860(b) itself states, in pertinent part (emphasis added):

> "(b)    For purposes of this section, <u>a conflict of interest does not exist as to allegations or facts in the litigation for which the insurer denies coverage;</u> however, when an insurer reserves its rights on a given issue and the <u>outcome of that coverage issue can be controlled by counsel</u> first retained by the insurer for the defense of the claim, <u>a conflict of interest may exist.</u>"

The California courts have held that whether a reservation of rights triggers the right to independent counsel "depends upon the nature of the coverage issue, as it relates to the issues in the underlying case." See, e.g., *Blanchard v. State Farm Fire & Casualty Co.* (1991) 2 Cal.App.4th 345, 350; *Gafcon, Inc. v. Ponsor & Associates* (2002) 98 Cal.App.4th 1388, 1421; *Golden Eagle Ins. Co. v. Foremost Ins. Co.* (1993) 20 Cal.App.4th 1372, 1395-1396. When the insurer-retained defense attorney can "control the outcome of the [coverage] issue to [the insured's] detriment, or ha[s] incentive to do so," independent counsel is required. *Blanchard, supra,* 2 Cal.App.4th at p. 350. Or, as another court stated: "'when the basis for the reservation of rights is such as to cause assertion of factual or legal theories which undermine or are contrary to the positions to be asserted in the liability case . . . a conflict of interest sufficient to require independent counsel, to be chosen by the insured, will arise.' (*State Farm Fire & Casualty Co. v.*

# SELMAN
# BREITMAN LLP
#### ATTORNEYS

Edward C. Stark, Esq.
December 2, 2013
Page 16

*Superior Court* [(1989) 216 Cal.App.3d 1222,] 1226, fn. 3.)"   *Gafcon, supra*, 98 Cal.App.4th at pp. 1421-1422.

Here, Nationwide's reservation of rights does not create contrary factual or legal positions regarding the underlying action brought by Plaintiff Cohen.   Nationwide has asserted a Limitation Endorsement which restricts "covered operations" under the policy; the lack of covered activities for Professional Liability; and, reserved rights to rescind the policy. Neither application of the endorsements, nor the issue of policy rescission, are related to the crux of the underlying suit – whether Dragon's was negligent with regard to the BB gun used at the retreat. Defense counsel, attorney Gobel, cannot control the issue of whether the endorsements apply, or whether rescission of the Nationwide policy is appropriate.   Therefore, Civil Code section 2860 is not triggered. "Where the reservation of rights is based on coverage disputes which have nothing to do with the issues being litigated in the third party action, there is no conflict of interest requiring independent counsel." *Native Sun Invest. Group v. Ticor Title Ins. Co. of Calif.* (1987) 189 Cal App. 3d 1265, 1277.

Furthermore, defense counsel for Dragon's has conducted an active and capable defense of Dragon's.   Mr. Drexler's diatribe in letters asserting bad faith and conflict of interest is not based on legal precepts and he cites none.   He may be expressing his own opinions, but one must balance such bias on what he stands to gain.

Perhaps attorney Drexler is not aware that even the issue of a policy limit demand does not implicate Civil Code section 2860.   As noted in *Merritt v. Reserve Ins. Co.*, (1973) 34 Cal. App. 3d 858, 874,

> In most legal relationships determination of the merits of conflicting interests by one of the parties to the conflict is forbidden. No man can be judge in his own case; no trustee may weigh his personal interest against that of his beneficiary . . . Yet the carrier who receives an offer to settle an excess claim within policy limits is instructed to weigh its own interest on the scales along with those of its assured in order to make a good faith determination whether to accept or reject the offer. . . Necessarily, the carrier must make the best of these instructions, must conscientiously try to strike a balance between conflicting interests, and must attempt to evaluate the merits of an offer to settle within policy limits both from its own point of view and from that of the assured.

## F.   Nationwide Reserves The Following General Rights

Based on the foregoing, Nationwide asserts the following additional reservations of rights:

1.   The right to seek a declaration of Nationwide's rights and duties under the policy regarding defense, indemnity and contribution;

**SELMAN**
**BREITMAN** LLP
ATTORNEYS

Edward C. Stark, Esq.
December 2, 2013
Page 17

2.      The right to seek reimbursement and/or indemnity for any judgment or settlement paid by Nationwide pursuant to the reservations stated herein;

3.      The right to seek an allocation and/or reimbursement of defense costs paid to defend allegations, claims and causes of action not covered under the policies;

4.      In the event it is determined that some or all of the claims in this action are not covered under the policies, Nationwide expressly reserves its right to allocate between covered and non-covered claims any payment of settlement and judgment;

5.      The right to withdraw from the defense should facts or circumstances arise indicating that this matter presents no potential for liability subject to the coverage afforded by Nationwide;

6.      The right to pay only the attributable percentage share of any judgment, settlement or costs of defense;

7.      The right to file an action for rescission of the policy; and

8.      The right to amend and/or supplement this reservation of rights letter if it becomes necessary due to circumstances or additional information obtained.

**G.      Nationwide Reserves The Following Specific Rights**

Nationwide is specifically reserving its rights with respect to the following policy provisions and terms as to coverage issues:

1.      Nationwide's obligation to pay for damages is limited to the applicable limit of liability and Nationwide's defense obligation, if any, ends when the applicable limit of liability is exhausted in payment of judgments or settlements.  Nationwide hereby specifically reserves its rights pursuant to this insuring language and pursuant to the limits of liability contained in the applicable policy.

2.      Nationwide respectfully declines any coverage obligations for economic damages that do not correspond to covered "bodily injury."

3.      Nationwide respectfully declines any coverage obligations for punitive or exemplary damages that the Plaintiff recovers.

4.      Nationwide respectfully declines any coverage obligations for attorney's fees which might be awarded to the Plaintiff.



SELMAN
❖BREITMAN LLP
ATTORNEYS

Edward C. Stark, Esq.
December 2, 2013
Page 18

5.      Nationwide reserves the right to apply the appropriate deductible amounts per the deductible endorsement.

6.      Nationwide respectfully declines to provide the insured with independent counsel, as there are no reservations asserted herein, or other circumstances, which trigger that right.

7.      Nationwide reserves its right to decline coverage under the "Limitation of Coverage to Designated Premises, Activities Or Operations."

8.      Nationwide reserves its right to decline coverage under the "Professional Liability Coverage Form because there has been no "wrongful act" as defined in the Policy.

9.      Nationwide reserves its rights under the Conditions in the policy regarding cooperation of the insured.

10.     Nationwide reserves its rights under the Conditions in the policy regarding any legal action brought against Nationwide.

**CONCLUSION**

Nationwide will continue to participate in the defense of Dragon's through defense counsel from Manning & Kass, Ellrod, Ramirz, Trester LLP, subject to the reservations in this letter, the letter of May 31, 2013, and existing under California law.

Nothing in this letter should be deemed a waiver of any terms or conditions of Nationwide's policy.  Nationwide expressly reserves the right to rely upon any term or condition of its policy, or any other legal basis that may impact the scope of coverage for this claim, whether or not those terms or conditions are discussed in this letter.

Nationwide will reconsider its position in light of any additional information you may have or any analysis you may wish to present that, in your opinion, shows there is a potential for coverage for this claim.  If you want Nationwide to re-examine this matter on that basis, please write to the undersigned, setting out any such additional information or analysis.  If such additional information is included in documents that have not already been supplied to Nationwide, please enclose copies of those documents.

If you believe that all or part of this claim has been wrongfully denied or rejected, the insured may have the matter reviewed by the California Department of Insurance.  The address and telephone number of the appropriate unit for the California Department of Insurance is:

**SELMAN**
**BREITMAN** LLP
ATTORNEYS

Edward C. Stark, Esq.
December 2, 2013
Page 19

CALIFORNIA DEPT. of INSURANCE
300 Capital Mall # 1500
Sacramento, California 95814
(800) 927-HELP (In State)
(213) 897-8921

If you have any questions, please feel free to contact the undersigned.

Very truly yours,

***ELDON S. EDSON***

ELDON S. EDSON

ESE/JLP/bb

Attachments:   Exhibit A – K&K Enrollment Form
                       Exhibit B – Policy Language Appendix
                       Exhibit C – Third Annual Big Bear Retreat Training Schedule

cc:      K&K Insurance Group, Inc.

584434.1A   1080.35368

EX. 6 - 154

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### CENTRAL DISTRICT OF CALIFORNIA

)
)
NATIONWIDE MUTUAL INSURANCE )
COMPANY )
)
*Plaintiff(s)* )
v. ) Civil Action No. CV14-00522-GW(AGRx)
SHERVIN ILBEIG DBA DRAGON'S MARTIAL )
ARTS STUDIO, INC.; DRAGON'S MARTIAL ARTS )
STUDIO, INC. SHERVIN ILBEIG; JASON COHEN, )
and DOES 1 through 10, inclusive )
*Defendant(s)* )

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Eldon S. Edson, Esq.
Jan L. Pocaterra, Esq.
SELMAN BREITMAN LLP
11766 Wilshire Blvd., 6th Floor
Los Angeles, CA 90025
Tel: 310-445-0800; Fax: 310-473-2525

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

CLERK OF COURT

Date: 1/22/2014

Signature of Clerk or Deputy Clerk

1202


American LegalNet, Inc.
www.FormsWorkFlow.com

7.1  1080.35368

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge _____ George H. Wu _____ and the assigned Magistrate Judge is _____ Alicia G. Rosenberg _____ .

The case number on all documents filed with the Court should read as follows:

## 2:14-cv-00522-GW(AGRx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U. S. District Court

| January 22, 2014 | By | APEDRO |
|---|---|---|
| Date | | Deputy Clerk |

---

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

| [x] Western Division | [ ] Southern Division | [ ] Eastern Division |
|---|---|---|
| 312 N. Spring Street, G-8 | 411 West Fourth St., Ste 1053 | 3470 Twelfth Street, Room 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701 | Riverside, CA 92501 |

**Failure to file at the proper location will result in your documents being returned to you.**

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )
NATIONWIDE MUTUAL INSURANCE COMPANY, an Ohio insurance Company

**DEFENDANTS** ( Check box if you are representing yourself ☐ )
SHERWIN ILBEIG DBA DRAGON'S MARTIAL ARTS STUDIO, INC.; DRAGON'S MARTIAL ARTS STUDIO, INC. SHERVIN ILBEIG, JASON COHEN ; and DOES 1 through 10, Inclusive

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Los Angeles
*(IN U.S. PLAINTIFF CASES ONLY)*

**(c) Attorneys** *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.
Eldon S. Edson, Esq.; Jan L. Pocaterra, Esq.
Selman Breitman LLP
11766 Wilshire Blvd., 6th Floor
Los Angeles, CA  90025
Tel:  310.445.0800; Fax:  310.473.2525

**Attorneys** *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff
☐ 3. Federal Question (U.S. Government Not a Party)
☐ 2. U.S. Government Defendant
☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)
☒ 1. Original Proceeding
☐ 2. Removed from State Court
☐ 3. Remanded from Appellate Court
☐ 4. Reinstated or Reopened
☐ 5. Transferred from Another District (Specify)
☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☒ No  (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No     ☐ **MONEY DEMANDED IN COMPLAINT: $**

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. § 1332

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☒ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | | | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **TORTS** **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | **PERSONAL INJURY** | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 161 Medicare Act | ☐ 310 Airplane | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 315 Airplane Product Liability | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 320 Assault, Libel & Slander | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 330 Fed. Employers' Liability | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 340 Marine | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 345 Marine Product Liability | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 350 Motor Vehicle | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 355 Motor Vehicle Product Liability | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/ Accomodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII. VENUE:** Your answers to the questions below will determine the division of the Court to which this case will most likely be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| Question A: Was this case removed from state court? ☐ Yes ☒ No  If "no," go to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| | ☐ Los Angeles | Western |
| | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| Question B: Is the United States, or one of its agencies or employees, a party to this action? ☐ Yes ☒ No  If "no," go to Question C. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | If the United States, or one of its agencies or employees, is a party, is it: | | INITIAL DIVISION IN CACD IS: |
|---|---|---|---|
| | A PLAINTIFF? Then check the box below for the county in which the majority of DEFENDANTS reside. | A DEFENDANT? Then check the box below for the county in which the majority of PLAINTIFFS reside. | |
| | ☐ Los Angeles | ☐ Los Angeles | Western |
| | ☐ Ventura, Santa Barbara, or San Luis Obispo | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | ☐ Riverside or San Bernardino | Eastern |
| | ☐ Other | ☐ Other | Western |

| Question C: Location of plaintiffs, defendants, and claims? (Make only one selection per row) | A. Los Angeles County | B. Ventura, Santa Barbara, or San Luis Obispo Counties | C. Orange County | D. Riverside or San Bernardino Counties | E. Outside the Central District of California | F. Other |
|---|---|---|---|---|---|---|
| Indicate the location in which a majority of plaintiffs reside: | ☐ | ☐ | ☐ | ☐ | ☒ | ☐ |
| Indicate the location in which a majority of defendants reside: | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Indicate the location in which a majority of claims arose: | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |

| C.1. Is either of the following true? If so, check the one that applies: | C.2. Is either of the following true? If so, check the one that applies: |
|---|---|
| ☐ 2 or more answers in Column C | ☐ 2 or more answers in Column D |
| ☐ only 1 answer in Column C and no answers in Column D | ☐ only 1 answer in Column D and no answers in Column C |
| Your case will initially be assigned to the SOUTHERN DIVISION. Enter "Southern" in response to Question D, below.  If none applies, answer question C2 to the right. ➤ | Your case will initially be assigned to the EASTERN DIVISION. Enter "Eastern" in response to Question D, below.  If none applies, go to the box below. ↓ |

Your case will initially be assigned to the
WESTERN DIVISION.
Enter "Western" in response to Question D below.

| Question D: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, or C above: ➤ | **WESTERN DIVISION** |

.35368

American LegalNet, Inc.
www.FormsWorkFlow.com

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**IX(a). IDENTICAL CASES**: Has this action been previously filed **in this court** and dismissed, remanded or closed?    ☒ NO    ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES**: Have any cases been previously filed **in this court** that are related to the present case?    ☒ NO    ☐ YES

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)    ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**X. SIGNATURE OF ATTORNEY
(OR SELF-REPRESENTED LITIGANT):** *[signature]*    DATE: 1/22/14

Attorneys for Plaintiff

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |


American LegalNet, Inc.
www.FormsWorkFlow.com